Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas   75242
(214) 767-1075
Stephen P. McKitt
For the United States Trustee
stephen.mckitt@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 18-33678** |
| | § | |
| **TACO BUENO RESTAURANTS, INC.,** | § | **(Chapter 11)** |
| *et al.*, | § | |
| | § | **(Joint Administration Pending)** |
| **Debtors.**[1] | § | |

**United States Trustee's Objection to Debtors' Chapter 11 Plan and Plan Supplement**

TO THE HONORALBLE STACY G. JERNINGAN, UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 6 objects to the Debtors' Chapter 11 Plan and Plan Supplement. The United States Trustee would show:

**Overview**

The United States Trustee (the "UST") objects to the Debtor's Chapter 11 Plan and Plan Supplement. Specifically, the UST the UST objects to Article VIII of the Plan to the extent that it is not explicit that the releases do not apply to the Unsecured Creditors Committee and general

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677);  Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189);  Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

unsecured claims holders. The UST also objects to Exhibit A of the Plan Supplement because it seems to allow for severance payments that violates §1129(a)(1) and § 503(c)(2) of the Bankruptcy Code. Finally, the UST objects to Exhibit C of the Plan Supplement because it assumes the retention agreements of Debtors' professionals in violation of § 329 and §330 which provides that professionals fees are reviewable by the Court.

## Background

1. The jointly administered Debtors filed these cases on November 6, 2018.

2. The Debtors' filed a Joint Pre-packaged Chapter 11 Plan of Reorganization (the "Plan") on November 7, 2018.

3. On November 30, 2018, the Debtors' filed a Supplement to the Plan.

Article VIII of the Plan

4. Article VIII of the Plan contains the following releases, exculpations, and injunctions for the benefit of the "Released Party":

E. *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

F.  *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided, however,* that except as expressly provided under the Plan, the foregoing releases shall not release obligations arising under agreements among the Releasing Parties and the Released Parties other than the Debtors. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found,

38

pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

G.  *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, liability, or remedy for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in- or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission by such Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.  *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

5. Article I of the plan defines "Released Party" as: the Debtors and the Debtors' current officers, directors, and managers as of the Petition Date; the Reorganized Debtors; the Pre-petition Agent and the Pre-petition Lender; Taco Supremo; the DIP Agent and the DIP Lender; and the Consenting Equity Holders.

6. Article I of the plan does not include the Unsecured Creditor's Committee (the "UCC") and general unsecured claim holders as a "Releasing Party."

Exhibit A of the Plan Supplement

7. Exhibit A of the Plan Supplement is three "Consulting and Separation Agreements" for three Executives of the Debtors': Omar Janjua, Phillip Parsons, and Tony Darden.

8. Each of the agreements contemplates that the effective date of the Plan will result in termination of the Executive that is the subject of the Agreement.

9. The Agreements provide that, upon termination, each Executive will be given a single lump sum cash payment equal to between two and six months base salary, depending on the executive.

10. These single lump sum payments appear to be severance payments to the three Executives.

Exhibit C of the Plan Supplement

11. Exhibit C of the Plan Supplement is a schedule of executory contracts and unexpired leases that the Debtors' will assume upon the effective date of the plan.

12. Among the contracts to be assumed, are the retention agreements of several Debtors' professionals. The Debtors' retention agreements of these professionals have already been approved by the Court under 11 U.S.C. § 327.

## Argument

Article VIII of the Plan contains releases and exculpations that do not seem to comply with 11 U.S.C. §524(e) and applicable Fifth Circuit authority.

13. 11 U.S.C. § 524(e) of the Bankruptcy Code states "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

14. In *Pacific Lumber*, the Fifth Circuit held that 11 U.S.C. § 524(e) was never intended to protect non-debtor parties from "any negligent conduct that occurred during the course of the bankruptcy." *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) ("*Pacific Lumber*"). The Court in that case disallowed the release of the debtors' officers, directors, and professionals because there was no evidence that they "were jointly liable for any…pre-petition debt. They are not guarantors or sureties, nor are they insurers." *Id.*

15. The Fifth Circuit struck down all non-debtor releases except those releasing the unsecured creditors' committee and its members because "its members are the only disinterested volunteers" seeking release. *Id.* at 253.

16. Article VIII of the Plan in this case would provide releases and exculpations for several non-Debtor parties such as: current officers, directors, and managers as of the Petition Date; the Reorganized Debtors; the Pre-petition Agent and the Pre-petition Lender; Taco Supremo; the DIP Agent and the DIP Lender; and the Consenting Equity Holders.

17. While Article I of the Plan does not list the UCC and general unsecured claim holders as parties that are releasing their claims, the UST requests that the Plan and order make explicit that unsecured creditors are not releasing parties in the Plan.

18. The United States Trustee further requests that the confirmation order provide that no party shall be released from any causes of action or proceedings brought by any governmental agencies pursuant to their regulatory functions, including but not limited to criminal and environmental matters. The United States Trustee requests that the Debtors include the following language in the confirmation order:

> *Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.*

<u>Exhibit A of the Plan Supplement seems to contain impermissible severance payments to insiders.</u>

19. 11 U.S.C. § 503(c)(2) of the Bankruptcy Code prohibits severance payments to insiders of the Debtor unless: "(A) the payment is part of a program that is generally applicable to all full time employees; and (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to non-management employees during the calendar year in which the payment is made."

20. Exhibit A of the Plan supplement provides for single lump sum payments to Executives of the Debtors' upon their termination, which would occur on the effective date of the plan. These payments appear to be severance payments to the Executives.

21. The severance agreements should not be approved absent a showing that they meet the requirements of section 503(c)(2), which governs approval of severance plans. The approval of a severance plan should be subject to separate motion and hearing, and not simply incorporated into a plan. *See, e.g., In re AMR Corp.,* 490 B.R. 158, 169 (Bankr. S.D. N.Y. 2013)(holding debtors could not seek approval of severance payment under § 363 but instead under § 503(c) standards) ("*AMR I*") and *In re AMR Corp.*, 497 B.R. 690 (Bankr. S.D.N.Y. 2013) ("*AMR II*"). Such payments to insiders also may not be approved under the more general provision of section 1129(a)(4). *See AMR II*, 497 B.R. at 696. "If Section 1129(a)(1)'s instruction that a plan must comply with all applicable provisions of the Bankruptcy Code means anything, the Court cannot approve a payment that is clearly prohibited by another, more specific part of the Bankruptcy Code." *Id*. at 696-97 (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065 (2012) ("*RadLAX*")). In *RadLAX*, the Supreme Court held that a bankruptcy court could not confirm a plan that proposed to circumvent a Bankruptcy Code provision giving specific protections to secured creditors by, instead, relying on a more general provision that did

not provide those same protections. *RadLAX*, 132 S.Ct. at 2071-72. Supreme Court noted that "it is a commonplace statutory construction that the specific governs the general," *Id*. 2071 (citations omitted), and that it is "particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id*.

<u>Exhibit C of the Plan Supplement unnecessarily assumes the retention agreements of the Debtors' professionals.</u>

22. Exhibit C of the Debtors' schedules lists the Debtors' professionals' retention agreements as executory contracts to be assumed by the Debtors'. Each of these professionals retention agreements were approved under § 327 by the Court previously. Professional fees incurred in this case should be, and are reviewable by this Court under §329 and §330.

## **Conclusion**

Wherefore, the United States Trustee requests that the Court sustain his objection, and grant to the United States Trustee such other and further relief as is just and proper.

DATED: December 12, 2018            Respectfully submitted,

WILLIAM T. NEARY
UNITED STATES TRUSTEE
<u>/s/ Stephen P. McKitt</u>
Stephen P. McKitt
Trial Attorney
Ohio Bar No. 96017
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas  75242

(214) 767-1073

Stephen.McKitt@usdoj.gov

Certificate of Service

I certify that I sent copies of the foregoing document on December 12, 2018 to all parties requesting notice via ECF.

/s/ Stephen P. McKitt
Stephen P. McKitt