

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 19, 2018**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-33678 |
| | § | |
| **TACO BUENO RESTAURANTS, INC., et al.,** | § | (Chapter 11) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

### FINDINGS OF FACT, CONCLUSIONS
### OF LAW, AND ORDER (I) APPROVING THE DEBTORS'
### DISCLOSURE STATEMENT AND (II) CONFIRMING THE DEBTORS'
### JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:

    a.   distributed, through Prime Clerk, LLC (the "***Notice and Claims Agent***"), on or about November 6, 2018 (i) the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 22] (the "***Disclosure Statement***"); (ii) the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 21] (as amended on December 18, 2018 [Docket No.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677); Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189); Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158). The location of the Debtors' corporate headquarters and the Debtors' service address is: 300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

219], and as further modified, amended, or supplemented from time to time, the "*Plan*"), a copy of which is annexed hereto as **Exhibit A**; and (iii) a ballot for voting on the Plan to the holder of Class 3 Prepetition Lender Secured Claims in accordance with title 11 of the United States Code (the "*Bankruptcy Code*"), the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "*Local Rules*"), and applicable nonbankruptcy law, as evidenced by the *Affidavit of Service of Solicitation Materials* [Docket No. 7] (the "*Solicitation Affidavit*");[2]

b.   commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November 6, 2018 (the "*Petition Date*") after the conclusion of the prepetition solicitation described in the preceding paragraph;

c.   filed,[3] on November 6, 2018, the Plan and the Disclosure Statement;

d.   filed, on November 6, 2018, the *Motion for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Prepackaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline; and (IV) Granting Related Relief* [Docket No. 12] (the "*Scheduling Motion*"), which, among other things, requested approval of the Debtors' prepetition solicitation procedures (the "*Solicitation Procedures*") with respect to the Plan, including the form of ballot (the "*Ballot*")[4] transmitted to the class of Claims for voting on the Plan;

e.   filed, on November 6, 2018, the *Declaration of Haywood Miller in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 5] and the *Declaration of Adam Dunayer in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 4], detailing certain facts and circumstances of the Chapter 11 Cases;

f.   filed, on November 6, 2018, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 17] (the "*Voting Certification*"), which detailed the results of the Plan solicitation and voting process;

g.   filed, on November 9, 2018, the *Notice of (A) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (B) Combined Hearing on the Disclosure Statement,*

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply.

[3]   Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in the Chapter 11 Cases, as applicable.

[4]   The Ballot was attached as Exhibit 2 to the Scheduling Order.

2

*Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, (C) Objection Deadlines, and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 60] (the "**Combined Notice**"), which, *inter alia*, contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "**Confirmation Hearing**"), and the deadline for filing objections to the Plan and the Disclosure Statement, and which provided excerpts of, and advised parties to carefully review, the release, exculpation, and injunction provisions in the Plan, as evidenced by the *Affidavit of Service* [Docket No. 88] and the *Supplemental Affidavit of Service* [Docket No. 93] (collectively, the "**Combined Notice Affidavit**"), consistent with the order approving the Scheduling Motion [Docket No. 56] (the "**Scheduling Order**");

h.  caused the Combined Notice, as modified for publication, to be published in *USA Today* (National Edition) on November 12, 2018, and in the *Dallas Morning News* on November 12, 2018, as evidenced by the *Affidavit of Publication* [Docket No. 80] (the "**Publication Affidavit**" and, together with the Combined Notice Affidavit, the "**Service Affidavits**"), consistent with the Scheduling Order;

i.  filed, on November 30, 2018, the *Notice of Filing Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 161], on December 4, 2018, the *Notice of Filing Second Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 172], on December 7, 2018, the *Notice of Filing Third Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 183], on December 18, 2018, the *Notice of Filing Fourth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 222] and the *Notice of Filing Fifth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 229], and on December 19, 2019 the *Notice of Filing Sixth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 232] (as the documents therein have been or may be modified, amended, or supplemented from time to time, collectively, the "**Plan Supplement**" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

j.  filed, on November 30, 2018, and supplemented on December 7, 2018, as an exhibit to the Plan Supplement, the Schedule of Assumed Executory Contracts and Unexpired Leases, as such schedule was replaced and superseded in its entirety by **Exhibit C** to the Plan Supplement filed on December 18, 2018;

k.  filed, on December 4, 2018, the *Notice of (I) Proposed Cure Amounts Associated with Possible Assumption of Executory Contracts and Unexpired Leases, and (II) Deadline to Object Thereto* [Docket No. 175], (the "**Cure Notice**"), notifying all non-Debtor parties to Executory Contracts and Unexpired Leases being assumed by the Debtors of such assumption and the estimated amounts necessary to cure any defaults thereunder (the "**Proposed Cure Amounts**"), and further notifying such parties of the deadline to object to such cure amounts;

l.       filed, on December 17, 2018, the *Declaration of Haywood Miller in Support of Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 213], the *Declaration of Adam Dunayer in Support Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 214], and the *Declaration of Guillermo Perales in Support of Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 215] (collectively, the "***Confirmation Affidavits***");

m.      filed, on December 17, 2018, the *Debtors' Memorandum of Law in Support of (I) Approval of Disclosure Statement, and (II) Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 212] (the "***Confirmation Brief***"); and

n.      continued to operate their businesses and manage their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.      entered, on November 8, 2018, the Scheduling Order;

b.      set December 19, 2018, at 9:30 a.m. (prevailing Central Time) as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

c.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, the Voting Certification, the Confirmation Affidavits, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of right filed by parties in interest on the docket of the Chapter 11 Cases;

d.      held the Confirmation Hearing;

e.      heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

f.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

g.      taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases; and

h.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

**NOW**, **THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing and the entire record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  The findings and conclusions of the Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the

Disclosure Statement, including the associated Solicitation Procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code and the Court may enter a final order consistent with Article III of the United States Constitution.

**C.** **Eligibility for Relief.**

3. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.** **Commencement and Joint Administration of the Chapter 11 Cases.**

4. On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 39]. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 16, 2018, the U.S. Trustee (as defined below) appointed an Official Unsecured Creditors' Committee (the "*Committee*") in the Chapter 11 Cases.

**E.** **Judicial Notice.**

5. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.** **Notice.**

6. As evidenced by the Service Affidavits, due, timely, proper, and adequate notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan,

has been provided to the Core/2002 Service List, including: (a) the Office of the United States Trustee for the Northern District of Texas (the "*U.S. Trustee*"), (b) the Debtors' 30 largest unsecured creditors on the Petition Date (on a consolidated basis); (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (f) Taco Supremo; (g) Scheef and Stone, L.L.P., as counsel to Taco Supremo; (h) the Committee; and (i) all parties in interest listed on the Debtors' creditor matrix.

7.     Given the expedited nature of the Chapter 11 Cases, the Debtors have gone to great lengths to ensure that all parties in interest received sufficient due process.  As a direct result of these efforts, all impaired creditors have either:  (a) cast a vote to accept the Plan; (b) received actual notice of the Disclosure Statement and Plan and provided no indication that they object to confirmation of the Plan; or (c) asserted an objection to the Plan that is, to the extent not withdrawn, overruled on the merits herein.  Further, the Combined Notice, as modified for publication, was published in *USA Today* (National Edition) on November 12, 2018 and in the *Dallas Morning News* on November 12, 2018 in accordance with the Scheduling Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient based upon the facts and circumstances of the Chapter 11 Cases and pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**G.     Disclosure Statement.**

8.     The Disclosure Statement contains (a) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act (to the extent applicable), and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the

Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and is approved in all respects.

**H.  Solicitation.**

9.     Prior to the commencing these Chapter 11 Cases, the Debtors, through the Notice and Claims Agent, caused the Plan, the Disclosure Statement (which included as exhibits thereto, the Plan, a corporate structure chart, a Liquidation Analysis, Financial Projections, a Valuation Analysis, and the Restructuring Support Agreement (as each term is defined in the Disclosure Statement), a Ballot, the proposed Interim DIP Order,[5] and a cover letter (collectively the "***Solicitation Package***"), to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

10.     As set forth in the Solicitation Affidavit, on November 6, 2018, the Solicitation Package was transmitted to and served on the eligible holder of Claims of the Class of Claims entitled to vote to accept or reject the Plan (the "***Voting Class***").  Taco Supremo, the only eligible holder of a Claim in the Voting Class, received a Ballot.  The form of the Ballot adequately addressed the particular needs of the Chapter 11 Cases and was appropriate for Taco Supremo. The instructions on the Ballot advised Taco Supremo that for the Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the Notice and Claims Agent so that it was actually received by the Notice and Claims Agent no later than 1:00 p.m. (prevailing Central Time) on November 6, 2018 (the "***Voting Deadline***"), unless such time was extended by the Debtors.

---

[5]  "***Interim DIP Order***" shall mean the Interim Order Authorizing Debtors to Utilize Cash Collateral, Obtain Postpetition Credit Secured by Senior Liens, Granting Adequate Protection to Prepetition Secured Parties, Scheduling a Final Hearing, and Granting Related Relief [Docket No. 41].

The period during which the Debtors solicited Taco Supremo's acceptance to the Plan was a reasonable period of time for Taco Supremo to make an informed decision to accept or reject the Plan.

11.     The Debtors were not required to solicit votes from the holders of Claims in Class 1—Other Priority Claims and Class 2—Other Secured Claims (collectively, the "*Unimpaired Classes*"), as each such class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Debtors were not required to solicit votes from the holders of Claims and Interests in Class 5—Intercompany Claims and Class 6—Intercompany Interests (collectively, the "*Unimpaired or Deemed Rejecting Classes*"), as each such class is either Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors also were not required to solicit votes from the holders of Claims in Class 4—General Unsecured Claims and Interests in Class 7—TB Holdings Interests (the "*Deemed Rejecting Classes*"), as such classes are Impaired and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

12.     No other or further solicitation was or shall be required on account of the global settlement reached among the Debtors, Taco Supremo, TPG, senior management, and the Committee (the "*Committee Settlement*"). Taco Supremo, which holds valid liens on substantially all of the Debtors' assets, is owed approximately $140 million on account of its Prepetition Lender Claim and DIP Facility Claim, and is expected to recover between 24.3% and 31.4% on account of such Claims under the Plan. No Class of Claims or Interests junior to the Voting Class,

including Class 4—General Unsecured Claims, is entitled to receive any recovery under the Bankruptcy Code, and section 1126(g) of the Bankruptcy Code provides that creditors who are entitled to no recovery are deemed to reject and their votes are not required. The opportunity for holders of Class 4—General Unsecured Claims to receive a distribution from the GUC Cash Pool under the Committee Settlement embodied in the Plan does not entitle such holders to vote. Even if votes were solicited from holders of Class 4—General Unsecured Claims, and the Class voted to reject the Plan, the Plan could be confirmed over any such objection by "cram down" under section 1129(b) of the Bankruptcy Code since the Debtors have received acceptance of the Plan by the Voting Class and have satisfied the other requirements for Confirmation, so no further solicitation is necessary.

13.     As described in and as evidenced by the Voting Certification and the Solicitation Affidavit, the transmittal and service of the Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and any other applicable rules, laws, and regulations.

## I.     Voting.

14.     On November 6, 2018, the Voting Certification was filed with the Court, certifying the method and results of the Ballots tabulated for the Voting Class. As of the Voting Deadline, 100% in number and 100% in dollar amount of the holders of claims in the Voting Class that timely voted, voted to accept the Plan, without counting the votes of any insider (as such term is defined in section 101(31) of the Bankruptcy Code). As evidenced by the Voting Certification,

votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

## J. Plan Supplement.

15. The Debtors filed the Plan Supplement consisting of: (a) the Consulting Agreements; (b) the form of the New Organizational Documents of Reorganized Taco Bueno; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the identity of the member of the New Board and the officers of Reorganized Taco Bueno as of the Effective Date; (e) the List of Retained Causes of Action; (f) the Financial Projections; (g) the Opt-In Procedures; and (h) the Opt-In Notice.

16. All such materials comply with the terms of the Plan, and the filing and notice of the Plan Supplement was proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan as if set forth in full therein. The Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date (subject, in each case, to any consultation and approval rights and conditions set forth in the Plan and the Restructuring Support Agreement).

## K. Modifications of the Plan.

17. Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein and/or in the amended Plan filed with the Court prior to entry of this Confirmation Order (collectively, the "***Plan Modifications***"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of

the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims, (iv) require re-solicitation of any holders of any Claims or Interests, or (v) require that Taco Supremo, as the sole holder of a Claim in the Voting Class, be afforded an opportunity to change its previously cast acceptance of the Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. Taco Supremo, as the sole holder of a Claim in the Voting Class, shall not be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

**L.  Resolution of Objections and Other Issues.**

18.  To the extent that any objections, reservations of rights, statements or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

19.  <u>Rosebriar Stipulation</u>.  The Debtors and Rosebriar/Caruth Haven, L.P. ("***Rosebriar/Caruth***") have consensually resolved disputes (the "***Rosebriar Disputes***") regarding: (a) the alleged termination, prior to the Petition Date, of a Net Land and Building Lease applicable to 7940 N Central Expressway, Dallas, Texas 75206 (as amended, the "***Store 3177 Lease***"), and (b) Debtor Taco Bueno Restaurants, L.P.'s ability to assume the Store 3177 Lease.  The resolution of such disputes is hereby approved on the following terms:

      a.  This Confirmation Order approves Taco Bueno Restaurants, L.P.'s assumption of the Store 3177 Lease as of the Effective Date, and constitutes the Court's findings that: (i) the Store 3177 Lease has not terminated; and (ii) Taco Bueno's leasehold interest under the Store 3177 Lease became property of Debtor Taco Bueno Restaurants, L.P.'s bankruptcy Estate on the Petition Date;

b. Rosebriar/Caruth shall have an Allowed Cure Claim of $32,167.00, and shall have no further Claim or Claims against the Debtors;

c. The Debtors shall return Check No. 11478 (dated October 5, 2018, in the amount of $12,166.67, made by Rosebriar/Caruth and payable to Taco Bueno Restaurants, L.P.), undeposited, to Rosebriar/Caruth within five days after entry of this Confirmation Order;

d. All claims asserted by Taco Bueno Restaurants, L.P. and/or Rosebriar/Caruth in Adv. Proc. No. 18-03344 shall be dismissed with prejudice by stipulation within five days after entry of this Confirmation Order, with each party to bear its own attorneys' fees, costs, and expenses;

e. Rosebriar/Caruth shall dismiss, with prejudice, Case No. JE18-02597A in the Justice Court, Precinct 3, Place 1 (Dallas County, Texas) within five days after entry of this Confirmation Order, with each party to bear its own attorneys' fees, costs, and expenses;

f. Rosebriar/Caruth, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Rosebriar Releasors***"), hereby releases and discharges the Debtors, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Debtor Releasees***"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown (each a "***Rosebriar Released Claim***") which any Rosebriar Party has or may have had based on any facts or circumstances existing, in whole or in part, through midnight on the date of the entry of this Confirmation Order, including without limitation any claim alleging that the Store 3177 Lease terminated prior to the Petition Date. Notwithstanding anything to the contrary in this subparagraph, nothing in this Confirmation Order shall be construed to release any of the Debtors from its or their obligations to comply, after entry of this Confirmation Order, with the Store 3177 Lease or any other lease or contract between one or more Debtors and one or more Rosebriar Releasors,

including without limitation the Reverse Build to Suit Lease Agreement between Rosebriar Prosper Plaza, L.P. and Taco Bueno Restaurants, L.P., dated as of March 21, 2013 (as amended, the "***Prosper Lease***").

g. Each Debtor, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Debtor Releasors***"), hereby releases and discharges Rosebriar/Caruth, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Rosebriar Releasees***"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown (each a "***Debtor Released Claim***") which any Debtor has or may have had based on any facts or circumstances existing, in whole or in part, through midnight on the date of the entry of this Confirmation Order. Notwithstanding anything to the contrary in this subparagraph, nothing in this Confirmation Order shall be construed to release any of the Rosebriar Releasees from its or their obligations to comply, after entry of this Confirmation Order, with the Store 3177 Lease or any other lease or contract between one or more Debtors and one or more Rosebriar Releasees, including without limitation the Prosper Lease.

20. <u>Taxing Authorities</u>. Angelina County, Arlington ISD, Bell County Tax Appraisal District, Brown Central Appraisal District, City of Burleson, Burleson ISD, City of Carrollton, Carrollton-Farmers Branch ISD, City of Cleburne, Cleburne ISD, Crowley ISD, Dallas County, Denton County, Ellis County, City of Garland, Garland ISD, City of Grapevine, Grapevine-Colleyville ISD, Grayson County, City of Greenville, Greenville ISD, Gregg County, City of Haltom City, City of Haslet, Hood CAD, Hopkins County, Hunt County, Irving ISD, Johnson County, Kaufman County, City Lake Worth, Lewisville ISD, Mansfield ISD, McLennan County,

Northwest ISD, Town of Pantego, Parker CAD, Potter County Tax Office, City of Roanoke, Richardson ISD, Rockwall CAD, City of Sulphur Springs, Sulphur Springs ISD, Tarrant County, Taylor County Central Appraisal District, Valwood Improvement Authority, City Of Waco, Wichita County, City of Wichita Falls, Wichita Falls ISD, and Williamson County (collectively, the "*Texas Tax Authorities*") assert that they are the holders of prepetition claims for unpaid 2018 ad valorem real and business personal property taxes. The Debtors/Reorganized Debtors shall pay all amounts owed to the Texas Tax Authorities in the ordinary course of business no later than January 31, 2019. In the event the Claims are paid after January 31, 2019, regardless of whether the Claims are disputed or undisputed, the Texas Tax Authorities shall receive interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511, and 1129. The Texas Tax Authorities shall retain the liens that secure all amounts ultimately owed on their Claims as well as the state law priority of those liens until the Claims are paid in full. In the event that collateral that secures the Claim of one or more of the Texas Tax Authorities is returned to a creditor that is junior to the Texas Tax Authorities, the Debtor/Reorganized Debtor shall first pay all ad valorem property taxes that are secured by the collateral.

21.     In the event the Confirmation Order is entered on the docket after December 31, 2018, the Texas Tax Authorities will be the holders of Administrative Claims for year 2019 ad valorem real and business personal property taxes; *provided*, *however*, that notwithstanding any other deadlines in this Confirmation Order for the payment of other administrative expenses, the Texas Tax Authorities shall receive payment of such taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an Administrative Claim and request for payment as a condition of allowance as provided in 11 U.S.C. Section

503(b)(1)(D).  The Texas Tax Authorities shall retain the liens that secure all amounts ultimately owed for year 2019 along with the state law priority of those liens.  The Texas Tax Authorities' Administrative Claims, if any, for year 2019 ad valorem real and business personal property taxes shall not be discharged until such time as the amounts owed are paid in full.  In the event of a default in the payment of the tax Claims as provided herein, the Texas Tax Authorities shall provide notice to counsel for the Debtors/Reorganized Debtors who shall have twenty (20) days from the date of the notice to cure the default.  If the default is not cured, the Texas Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law outside this Court.  Failure to pay the 2019 ad valorem taxes prior to the state law delinquency date shall constitute an event of default only as to the relevant Texas Tax Authority. The Debtors'/Reorganized Debtors' rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

22.    <u>Cure Claim Objections</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay the parties below the following payments as full and final satisfaction of any Cure Claim associated with the assumption of each party's applicable Unexpired Lease(s) on the Effective Date in compliance with section 365(b)(1) of the Bankruptcy Code, provided that the Unexpired Lease(s) below shall not be deemed assumed until such Cure Claims are paid in full.  Accordingly, the following parties' objections are resolved and withdrawn.

    a.  <u>National Retail Properties, LP</u>
- i.  4500 Long Prairie Road, Flower Mound, TX 75028 - $39,184.50
- ii.  1324 S Broadway Street, Sulphur Springs, TX 75482 – $16,169.11
- iii.  2004  S Service Road, Moore, OK 73160 – $16,046.51

    b.  <u>JAHCO Virginia Square, LP</u>
- i.  302 N. Central Expressway, McKinney, TX 75069  – $18,322.02

    c.  <u>Hiser Lane LLC</u>

                i. 1380 FM 148, Terrell, TX 75160 - $20,500 for obligations owed as of the date of confirmation of the Plan, and all other amounts then due and payable by the Debtors as of the Effective Date pursuant to Section 4.04 of the applicable Unexpired Lease and the Plan.

23. <u>Chymiak Investments KS, LLC</u>. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay Chymiak Investments KS, LLC ("***Chymiak***") the amount of $37,913.32 as full and final satisfaction of any Cure Claim associated with the assumption of Chymiak's Unexpired Lease located at 18016 W. 119th Street, Olathe, KS 66061 (the "***Chymiak Lease***") on the Effective Date or as soon as reasonably practicable thereafter in compliance with section 365(b)(1) of the Bankruptcy Code.[6] Following assumption of the Chymiak Lease, any other obligations, including, but not limited to, rent or other obligations accruing after the confirmation date, owed to Chymiak in connection with the Chymiak Lease, and all real estate taxes, and interest, payable under the Chymiak Lease to taxing entities with respect to the leased property, shall be paid in the ordinary course of business, with any dispute to be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. Accordingly, Chymiak's objection [Docket No. 190] is resolved and withdrawn.

24. <u>Oracle</u>. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay Oracle America, Inc. ("***Oracle***") the amount of $16,514.48 as full and final satisfaction of any Cure Claim associated with the assumption of the Cloud Services Agreement, inclusive of the Universal Credits and the CPQ #784424, between Oracle and Taco Bueno Restaurants, Inc. (collectively, the "***CSA***") on the Effective Date or as soon as reasonably practicable thereafter in compliance with

---

[6] This payment includes rent obligations owed by the Debtors for the month of December 2018.

section 365(b)(1) of the Bankruptcy Code, but in no event later than fourteen (14) days after the Effective Date. Following assumption of the CSA, any other obligations, accruing after the Confirmation Date owed to Oracle in connection with the CSA shall be paid in the ordinary course of business, with any dispute to be determined in accordance with the CSA and applicable nonbankruptcy law. Any other executory contracts between Oracle and any Debtor shall be deemed rejected under the Plan.

25. <u>Spirit</u>. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors and Spirit Master Funding III, LLC ("*Spirit III*") and Spirit Master Funding X, LLC (as assignee from TABU Property I, LLC) ("*Spirit X*" and, collectively with Spirit III, "*Spirit*") agree that the assumption or rejection of the Master Lease agreement between Spirit and the Taco Bueno Restaurants, Inc. (the "*Spirit Master Lease*") and the individual leases between Spirit and the Debtors (collectively the "*Spirit Leases*") are deferred pending the filing of a notice with the Court executed by or on behalf of both Spirit and the Debtors assuming or rejecting the Spirit Leases, at which time the assumption or rejection, as applicable, of the Spirit Master Lease and/or Spirit Leases, as applicable, shall be deemed approved pursuant to this Confirmation Order. The Debtors and Spirit reserve all rights, claims and defenses with respect to assumption or rejection of the Spirit Leases, including with respect to the amounts of any cure payments or cure obligations and neither the Plan or this Order shall be construed as an order assuming the Spirit Leases, pending filing of the notice as described in this paragraph. In the event that no notice of assumption is filed by the Effective Date with respect to any particular Spirit Lease, such Spirit Lease shall be deemed rejected unless otherwise agreed to by the parties. Accordingly, Spirit's objection [Docket No. 195] is withdrawn.

26.    <u>U.S. Realty</u>.   Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors and U.S. Realty Advisors, LLC ("***U.S. Realty***") agree that (a) the Master Lease agreement between TABU Property II, LLC and Taco Bueno Restaurants, Inc. and (b) the Master Lease agreement between TABU Property III, LLC and Taco Bueno Restaurants, Inc. ((a) and (b) together, the "***U.S. Realty Master Leases***") are assumed as amended pursuant to the Plan and this Confirmation Order, subject to execution of all final documentation and agreement in writing by the Debtors and U.S. Realty prior to the Effective Date; nothwithstanding the foregoing, if the parties do not execute all final documentation and agree in writing prior to the Effective Date, the Debtors and U.S. Realty reserve all rights related to assumption, assignment, and/or rejection of the U.S. Realty Master Leases, including the amount of any cure payment in compliance with section 365(b)(1) of the Bankruptcy Code and the Plan.

27.    <u>Lehigh Hanson, Inc.</u>   Subject to the occurrence of the Effective Date, entry of this Confirmation Order shall constitute approval of the assumption of the Sublease Agreement, dated November 30, 2016 between Lehigh Hanson, Inc. ("***Lehigh***") and Taco Bueno Restaurants, L.P. ("***Taco Bueno***") pursuant to sections 365(a) and 1123 of the Bankruptcy Code as provided for in the Plan and the approval of the First Amendment to Sublease Agreement dated as of December 6, 2018 (the "***First Amendment***") between Lehigh and Taco Bueno and authorization of Taco Bueno to execute the First Amendment.

28.    <u>Windstream</u>.   Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the agreements (collectively, the "***Windstream Agreements***") among any of the Debtors and Windstream and/or its affiliates, as applicable, shall not be rejected on the Effective Date, but shall be rejected effective as of 11:59 p.m. Central Time

on January 31, 2019 (as may be extended from time to time in accordance with the terms of this Confirmation Order, the "***Windstream Rejection Date***"), or such other date as agreed to by the Reorganized Debtors and Windstream in writing prior to the Windstream Rejection Date; *provided, however*, that (a) the Debtors reserve all rights with respect to the effective date of rejection of any of the Windstream Agreements through and including the Effective Date, (b) the Debtors or the Reorganized Debtors, as applicable, shall pay all allowed post-Petition Date Administrative Claims of Windstream against the Debtors, and (c) the Reorganized Debtors and Windstream and/or its affiliates, as applicable, shall remain subject to the terms of the Windstream Agreements through and including the Windstream Rejection Date.

**M.      Bankruptcy Rule 3016.**

29.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**N.      Burden of Proof—Confirmation of the Plan.**

30.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**O.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

31.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

   (i)  Proper Classification—Sections 1122 and 1123(a)(1).

32. In addition to Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which need not be classified, Article III of the Plan provides for the separate classification of Claims and Interests into seven Classes at each Debtor (as applicable). Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to other Claims or Interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

   (ii)  Specified Unimpaired Classes—Section 1123(a)(2).

33. Article III of the Plan specifies that Class 1—Other Priority Claims and Class 2—Other Secured Claims are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

   (iii)  Specified Treatment of Impaired Classes—Section 1123(a)(3).

34. Article III of the Plan specifies that Class 3—Prepetition Lender Secured Claims, Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests are Impaired (holders of Claims or Interests in Classes 5 and 6 are either Unimpaired or Impaired) under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

   (iv)  No Discrimination—Section 1123(a)(4).

35. Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

US 5969520

(v)      Adequate Means for Plan Implementation—Section 1123(a)(5).

36.     The Plan, including the various documents and agreements in the Plan Supplement,

provides adequate and proper means for implementation of the Plan, including, without limitation:

(a) the restructuring of the Debtors' balance sheet and other financial transactions provided for by

the Plan; (b) the adoption, filing, and implementation of the New Organizational Documents;

(c) the consummation of the Restructuring Transactions in accordance with the Plan; (d) the

general authority for the Debtors to take all actions necessary or appropriate to effect any

transaction described in, approved by, or necessary or appropriate to effectuate Plan, as set forth

more fully in Article IV of the Plan; (e) the issuance of securities, including the New Common

Stock; (f) the cancellation of certain existing agreements, obligations, instruments, and Interests;

(g) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors; (h) the

execution, delivery, filing, or recording of all contracts, instruments, releases, and other

agreements or documents in furtherance of the Plan, including those certain Consulting

Agreements filed in the Plan Supplement and any other Definitive Documentation; and (i)

provisions governing distributions under the Plan, thereby satisfying section 1123(a)(5) of the

Bankruptcy Code.

(vi)      Voting Power of Equity Securities—Section 1123(a)(6).

37.     The New Organizational Documents, as applicable, of each Debtor have been or

will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity

securities.  In addition, the New Common Stock is being issued pursuant to the Plan and does not

constitute non-voting equity securities within the meaning of section 1123(a)(6).  As such, the Plan

satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)     Designation of Directors and Officers—Section 1123(a)(7).

38.     The Debtors' initial director and officer, to the extent known, has been disclosed in the Plan Supplement and, to the extent not known, will be determined in accordance with the New Organizational Documents and the Plan, which is consistent with the interests of creditors and equity holders and with public policy, and, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

(viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1).

39.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix)     Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

40.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V.A of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, (a) except as otherwise provided in the Plan or this Confirmation Order and (b) except for those Executory Contracts or Unexpired Leases: (1) that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (2) that have been previously rejected by a Final Order.

(x)     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

41.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of

all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan, including the Committee Settlement, are in the best interests of the Debtors, the Estates, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

42.     Article VIII.E of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***"). The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, such releases are a necessary and integral part of the Plan, and are fair and equitable and in the best interests of the Debtors, the Estates, and the holders of Claims and Interests. The Debtor Releases are "fair and equitable" and "in the best interests of the estate" considering the (i) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (ii) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; and (iii) the arm's-length negotiations which produced the settlement embodied in the Plan. Additionally, the Debtor Releases are: (a) a good-faith settlement and compromise of the Claims and Causes of Action released by Article VIII.E of the Plan; (b) given, and made, after due notice and opportunity for hearing; and (c) a bar to any of the Debtors or the Reorganized Debtors asserting any Claim or Cause of Action released by Article VIII.E of the Plan.

43.     Article VIII.F of the Plan describes certain consensual releases granted by the Releasing Parties (the "***Third-Party Releases***"). The Third-Party Releases provide finality for the

Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Ballot sent to all holders of Claims entitled to vote on the Plan unambiguously stated that the Plan contains the Third-Party Releases and set forth the terms of the Third-Party Releases. The Combined Notice sent to holders of Claims and Interests included the terms of the Third-Party Releases and an explanation of how to object to the Plan, including the Third-Party Release provisions thereof. In addition, the Combined Notice advised careful review of the release, exculpation, and injunction provisions and emphasized in bold and capitalized typeface that any party should file a timely objection if they oppose the Plan, including the Third-Party Releases. And, the Combined Notice published in the each of *USA Today* (National Edition) and the *Dallas Morning News* similarly highlighted the Third-Party Releases and provided an explanation of how to object to the Plan, including the Third-Party Release provisions thereof.

44.     The Third-Party Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; and (e) given for consideration and not violative of the bankruptcy Code. The Third-Party Releases are fully consensual because all parties in interest, including all Releasing Parties, were provided with extensive notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan, and were properly informed that the Plan contained release provisions that could affect such parties' rights.

45.     The Third-Party Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Third-Party Releases are conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballot, and the Combined Notice.

46.     Like the Debtor Releases, the Third-Party Releases are integral to the Plan because they facilitated participation in both the formation of the Plan and the chapter 11 process generally and were critical in incentivizing the parties to support the Plan.  The Third-Party Releases were an important point of negotiation in connection with the Restructuring Support Agreement that formed the basis for the Plan, which equitizes a significant portion of the Debtors' prepetition indebtedness and maximizes value for, and is overwhelmingly supported by, all of the Debtors' key stakeholders.  As such, the Third-Party Releases offer certain protections to parties, including Taco Supremo, that participated constructively in the Debtors' restructuring process by, among other things, supporting the Plan and the Restructuring Transactions.

47.     The Third-Party Releases are given in exchange for good and valuable consideration provided by the Released Parties.  Each of the Released Parties provided for a corresponding release under the Plan and provided other benefits to these Chapter 11 Cases, such as providing, or agreeing to provide, valuable services or financing to the Debtors during these Chapter 11 Cases and upon emergence.  The Consenting Equity Holders, the Committee and its members, and Taco Supremo provided further consideration by consenting to their treatment under the Plan.  Further, the Consenting Equity Holders, Taco Supremo, and certain members of the Debtors' senior management team that are entering into Consulting Agreements are waiving any recovery from the GUC Cash Pool on account of their TPG Claim, Prepetition Lender Deficiency Claim, and Employee Claims, respectively, in connection with the Committee Settlement, constituting additional consideration to support the Third-Party Releases.

48.     The Third-Party Releases are therefore: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims and Causes of Action released thereby; (c) in the best interests of the Debtors, their Estates,

and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases. The Third-Party Releases are consistent with established practice in this jurisdiction and others.

49. The exculpation, described in Article VIII.G of the Plan (the "***Exculpation***"), is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party is appropriately released and exculpated from any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, liability or remedy for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan (including the Committee Settlement embodied therein), the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in- or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property

under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission by such Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpation, including its carve-out for actual fraud, gross negligence, and willful misconduct, is consistent with established practice in this jurisdiction and others.

50.     The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Releases, and the Exculpation and by extension the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

51.     Article IV.L of the Plan appropriately provides that in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action other than the Avoidance Actions, whether arising before or after the Petition Date.  The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

52.     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.D of the Plan (the "*Lien Release*") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

(xi)     Modification of Rights—Section 1123(b)(5).

53.     The Plan modifies the rights of holders of Claims or Interests, as applicable, in Class 3—Prepetition Lender Secured Claims, Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests (holders of Claims or Interests in Classes 5 and 6 are either Unimpaired or Impaired), and leaves Unimpaired the rights of holders of Claims in Class 1—Other Priority Claims and Class 2—Other Secured Claims, and as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)     Additional Plan Provisions—Section 1123(b)(6).

54.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to holders of Claims and Interests, (b) allowance of certain Claims, (c) Indemnification Obligations, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)     Cure of Defaults—Section 1123(d).

55.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter in the amounts set forth on the Cure Notice or as otherwise agreed by the Debtors and any non-Debtor counterparty to any assumed Executory Contract or Unexpired Lease.  Any disputed Cure Claims will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to

assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**P. Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

56. The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

> a. is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;
>
> b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and
>
> c. complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Q. Plan Proposed in Good Faith—Section 1129(a)(3).**

57. The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to Confirmation, including the overwhelming support from the Voting Class, the Committee, and other stakeholders for the Plan. The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from chapter 11 with a financially deleveraged capital structure, which will allow them to conduct their businesses and satisfy their

ongoing obligations with adequate liquidity and capital resources. The Plan (including all documents necessary to effectuate the Plan), the Plan Supplement, and the Plan Documents (as defined below) were negotiated in good faith and at arm's length among the Debtors, Taco Supremo, and the Committee. Additionally, the deal that the Debtors negotiated with Taco Supremo and the Committee that is embodied in the Plan, including the Committee Settlement and support for the Consulting Agreements, reflects the best possible compromise that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization.

**R.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

58.      The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

59.      All payments to be made by the Reorganized Debtors on the Effective Date pursuant to the Consulting Agreements are hereby approved as reasonable.

**S.      Directors, Officers, and Insiders—Section 1129(a)(5).**

60.      The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement discloses the identity and affiliations of the individual proposed to serve as the initial director and officer of the Reorganized Debtors, to the extent such

information is available, and the identity, title, and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The proposed director and officer for the Reorganized Debtors is qualified, and the appointment to such offices by the proposed director and officer is consistent with the interests of the holders of Claims and Interests and with public policy. Such person shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor. Additionally, the Debtors have filed Consulting Agreements as **Exhibit A** to the Plan Supplement wherein the Debtors disclosed the identities of, and described the nature of compensation for, certain members of the Debtors' existing senior management team who have agreed to provide post-Effective Date consulting services to the Reorganized Debtors.

**T.      No Rate Changes—Section 1129(a)(6).**

61.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**U.      Best Interest of Creditors—Section 1129(a)(7).**

62.      The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not

less than the amount that such holder would receive or retain if such Debtors were liquidated under chapter 7 of the Bankruptcy Code.

## V. Acceptance by Certain Classes—Section 1129(a)(8).

63. The Unimpaired Classes are Unimpaired by the Plan and, accordingly, holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Voting Class is Impaired and has voted to accept the Plan, as established by the Voting Certification. The Unimpaired or Deemed Rejecting Classes are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated), pursuant to section 1126(f) of the Bankruptcy Code, or are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and, in either event, are not entitled to vote to accept or reject the Plan. Holders of Claims or Interests of the Deemed Rejecting Classes will not receive or retain any property on account of their Claims or Interests and, accordingly, such holders are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan. Therefore, the Plan does not satisfy the requirements of section 1129(a)(8), solely with respect to the Deemed Rejecting Classes. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and, with respect to the Deemed Rejecting Classes, 1129(b) of the Bankruptcy Code.

## W. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

64. The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**X.     Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

65.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Certification, the Voting Class, which is Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**Y.     Feasibility—Section 1129(a)(11).**

66.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections filed with the Plan Supplement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**Z.     Payment of Fees—Section 1129(a)(12).**

67.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.E of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**AA.     Continuation of Employee Benefits—Section 1129(a)(13).**

68.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.N of the Plan provides that, on and after the Effective Date, all retiree benefits, as

defined in section 1114 of the Bankruptcy Code, shall continue to be paid in accordance with applicable law.

**BB. Non-Applicability of Certain Sections— 1129(a)(14), (15), and (16).**

69. Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**CC. "Cram Down" Requirements—Section 1129(b).**

70. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests have been or may be deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the Plan satisfies the

requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**DD.    Only One Plan—Section 1129(c).**

71.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**EE.    Principal Purpose of the Plan—Section 1129(d).**

72.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**FF.    Not Small Business Cases—Section 1129(e).**

73.    The Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**GG.    Good Faith Solicitation—Section 1125(e).**

74.    Based on the record before the Court in these Chapter 11 Cases, including evidence proffered or adduced at or prior to the Confirmation Hearing, the Debtors and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the

solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article VIII.G of the Plan.

**HH. Satisfaction of Confirmation Requirements.**

75. Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II. Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

76. Without limiting or modifying the rights of any party set forth in Article IX.B or Article IX.C of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**JJ. Implementation.**

77. The terms of the Plan, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order. Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and holders of Claims and Interests, and such Plan Documents are hereby approved. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length,

are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**KK.** **Binding and Enforceable.**

78. The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**LL.** **New Organizational Documents.**

79. The New Organizational Documents are necessary for Confirmation and Consummation of the Plan, and are critical to the overall success and feasibility of the Plan. Entry into the New Organizational Documents is in the best interests of the Debtors, their Estates, and all holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the New Organizational Documents and have provided sufficient and adequate notice of the material terms of the New Organizational Documents, which material terms were filed in the Plan Supplement. The terms and conditions of the New Organizational Documents are fair and reasonable, and were negotiated in good faith and at arm's-length.

**MM. Consulting Agreements.**

80.     The Debtors have provided sufficient and adequate notice of the terms of the Consulting Agreements.  The terms and conditions of the Consulting Agreements have been negotiated in good faith and at arm's length.  The Consulting Agreements are essential elements of the Plan, and the terms of the Consulting Agreements and the payments contemplated therein are reasonable and comparable or better than terms otherwise available in the market.  The Consulting Agreements (which shall be effective as executed on the Effective Date of the Plan) are hereby approved in their entirety.

**NN. Employment Agreement.**

81.     On the Effective Date, the Debtors will reject Tony Darden's employment agreement, and Tony Darden will enter into a new employment agreement with Sun Holdings, Inc.

**OO. Issuance of the New Common Stock.**

82.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock, whether on the Effective Date or any other date of a distribution thereafter, pursuant to the terms of the Plan and/or in accordance with this Confirmation Order, comply with section 1145 of the Bankruptcy Code and shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  The issuance of the New Common Stock is or was in exchange for a portion of an Allowed Claim.

83.     In addition, under section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Common Stock shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code

relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

**PP.    Executory Contracts and Unexpired Leases.**

84.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article V of the Plan.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan, including any amendments to each such Executory Contract or Unexpired Lease, shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  The Cure Notice constituted good, proper, and sufficient notice to Non-Debtor counterparties to Executory Contracts and Unexpired Leases that are being assumed by the Debtors, including notice of the deadline to object to the assumption of such Executory Contracts or Unexpired Leases and the Proposed Cure Amounts.  Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

**QQ.  Good Faith.**

85.  The Debtors and the Released Parties have been acting in good faith and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

**RR.  Disclosure of Facts.**

86.  The Debtors have disclosed all material facts regarding the Plan, the Plan Documents, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**SS.  Retention of Jurisdiction.**

87.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

88.  **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

89.  **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement and Plan Documents, are hereby

authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

90. **Objections**. All objections to Confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order. To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan or other responses, comments, statements, or reservation of rights with respect to Confirmation of the Plan have not been withdrawn prior to entry of this Confirmation Order, such objections or other responses, comments, statements, or reservations of rights shall be, and hereby are, overruled on the merits.

91. **Combined Notice**. The Combined Notice complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

92. **Solicitation**. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and applicable nonbankruptcy law. To the extent that the Debtors' solicitation was deemed to constitute an offer of new securities, such solicitation was exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act. Specifically, section 4(a)(2) and Regulation D of the Securities Act create an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering." 15 U.S.C. § 77d(a)(2). The Debtors have complied with the requirements of section

4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances was made in a manner that would not constitute a public offering. The solicitation was made only to holders of Class 3—Prepetition Lender Secured Claims, and the sole such holder was understood to be a sophisticated investor as of the Voting Record Date. *See* Regulation D, 17 C.F.R.

93. **Solicitation of Disclosure Statement**. The Disclosure Statement (a) contains adequate information of a kind that is consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects.

94. **Plan Modifications**. The modifications, amendments, and supplements made to the Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the treatment of any Claims or Interests. After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing of the amended Plan and this Confirmation Order with the Court on December 18, 2018, which contain such modifications, and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof. Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that Taco Supremo, as the sole holder of a Class 3—Prepetition Lender Secured Claim be afforded an opportunity to change its previously cast vote on the Plan. Taco Supremo, as the sole holder of a Class 3—Prepetition Lender Secured Claim, who voted to accept the solicitation version of the Plan is deemed to accept the Plan as modified. The Plan, as modified, is, therefore,

properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

95.    **Binding Effect**.  On the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all holders of Claims or Interests and such holder's respective successors and assigns (regardless of whether or not (a) the holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article VIII of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

96.    **No Action Required**.  No action of the respective directors, boards of directors, equity holders, managers, officers, or members of the Debtors or the Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute,

deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

97.     **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

98.     **Plan Implementation**.

(a)     In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "***Reorganization Effectuation Statutes***"), without further action by the Court or the equity holders, managers, officers, or directors of any of the Debtors or Reorganized Debtors, the Debtors and the Reorganized Debtors, as well as the managers and officers of the Debtors or Reorganized Debtors are authorized to:  (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Supplement, the Plan Documents, this Order, and the transactions contemplated thereby or hereby, including the transactions identified in Article IV of the Plan, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and

consummate the Plan, the Plan Supplement, and the Plan Documents, including those contracts, instruments, releases, agreements, and documents identified in Article IV of the Plan.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the adoption or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, (ii) issuances and distributions of the New Common Stock, and (iii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, including, without limitation, those contracts, instruments, releases, agreements, and documents identified in Article IV of the Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of this Court, or further action by the respective managers, officers, directors, members, or equity holders of the Debtors or Reorganized Debtors.

(c)     To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, members, and equity holders of the appropriate Debtors or Reorganized Debtors, as applicable.

(d)     All such transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

99. **Vesting of Assets in the Reorganized Debtors**. Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Plan Documents), on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property in each Estate, including all Causes of Action, and any property acquired by any of the Debtors shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. To the extent that the retention by the Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Reorganized Debtors (a) is or shall be a legal, valid and effective transfer, (b) vests or shall vest the Reorganized Debtors with good title to such property, free and clear of all Liens, Claims, changes or other encumbrances, except as provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable or fraudulent transfer under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) does not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under nonbankruptcy law, including by laws relating to successor or transferee liability.

100. **Cancellation of Existing Securities and Agreements**. On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or Interest, including the obligation of the Debtors under the Prepetition Credit Agreement and all TB Holdings Interests,

shall be deemed cancelled and the obligations of the Debtors or Reorganized Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding the releases set forth in Article VIII.F of the Plan, Confirmation, or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided therein; *provided*, *however*, that nothing in the Plan or Confirmation Order shall effectuate a cancellation of any New Common Stock.

101. **New Organizational Documents**. The New Organizational Documents are approved in all respects. The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court, to make modifications to the New Organizational Documents in accordance with the Plan and the Restructuring Support Agreement, and to execute and deliver all agreements, documents, instruments, and certificates relating to the New Organizational Documents and take such other actions as deemed reasonably necessary and appropriate to perform their obligations thereunder. Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the New Organizational Documents will be governed by the choice of law and jurisdictional provisions therein.

102. **Directors and Officers of Reorganized Debtors**. In accordance with Article IV.H of the Plan and the Plan Supplement, the New Board shall consist of one member, composed of Guillermo Perales as the Chairman. The identity of the director of the New Board has been disclosed prior to the Confirmation Hearing. The director of the New Board shall be deemed elected or appointed, as applicable, and authorized to serve as the director of Reorganized Taco

Bueno pursuant to the terms of the applicable New Organizational Documents of Reorganized Taco Bueno. Mr. Perales shall also be the sole director of each of the subsidiaries of Reorganized Taco Bueno as of the Effective Date. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such director and officer hereby is deemed elected and appointed, as applicable, to serve in such capacity as of the Effective Date without further action of the Court, the Reorganized Debtors, or their equity holders.

103. **Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of

any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

104. **Exemption from Registration Requirements**. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution of the New Common Stock, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities. The issuance of the New Common Stock is or was in exchange for a portion of an Allowed Claim.

105. Pursuant to section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Common Stock, shall be freely tradable by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

106. **Preservation of Rights of Action.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized

Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the List of Retained Causes of Action, as set forth in the Plan. The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the Debtors' failure to specify a Cause of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as an indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

107. Notwithstanding the foregoing, the Debtors shall retain and release all Avoidance Actions. For the avoidance of doubt, the Avoidance Actions shall be released and waived on the Effective Date by the Debtors and shall not vest in the Reorganized Debtors, and the Debtors and the Plan Administrator shall not pursue or prosecute any Avoidance Actions; *provided*, *however*, that notwithstanding anything to the contrary, neither the Debtors nor the Plan Administrator shall waive Avoidance Actions as a defense to any General Unsecured Claims asserted against the Debtors, their Estates, or the Reorganized Debtors, pursuant to section 502(d) of the Bankruptcy Code.

108. **Professional Compensation**. The provisions governing compensation of Professionals set forth in Article II.B and Article IX.B of the Plan are approved in their entirety.

All final requests for Professional Fee Claims through and including the Effective Date shall be Filed no later than 45 days after the Effective Date.  Any objections to Professional Fee Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Fee Claims.

109.    **Subordination.**    Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court: (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

110.    **Release of Liens.**    Except  as  otherwise  provided  in  the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors.  In addition, on or after the Effective Date, the Agent shall execute and deliver all documents reasonably requested by the Reorganized Debtors to

evidence the release of all mortgages, deeds of trust, Liens, pledges, and other security interests, and authorize the Reorganized Debtors to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.

111. **Assumption of Contracts and Leases.** Pursuant to Article V of the Plan, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtors are party shall be deemed rejected (a) except as otherwise provided in the Plan or this Confirmation Order or (b) except for any Executory Contract or Unexpired Lease that (i) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (ii) has been previously rejected by a Final Order, in each case of (i) and (ii), subject to the consent of Taco Supremo. Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Court shall constitute approval of the assumptions provided for in the Plan, including any amendments agreed to by the Debtors during these Chapter 11 Cases to any Executory Contracts or Unexpired Leases being assumed by the Debtors, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Court that the Reorganized Debtors have provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan, as each such Executory Contract and Unexpired Lease may have been amended by agreement of the Debtors during these Chapter 11 Cases, shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, this Confirmation Order, or any Final Order of the Court authorizing and providing for its assumption, or applicable law.

112. Subject to resolution of any dispute regarding any Cure Claims and except as otherwise provided herein, all Cure Claims shall be satisfied by the Debtors or Reorganized

Debtors, as the case may be, upon assumption or assignment, as applicable, of the underlying contracts and unexpired leases. Except as otherwise provided herein, assumption or assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, if any, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assigned shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

113. Executory Contracts or Unexpired Leases entered into by the Debtors after the Petition Date remain enforceable after the Effective Date by all parties pursuant to their terms.

114. **Indemnification**. Pursuant to Article V.D of the Plan, the Indemnification Obligations shall apply only following the prior exhaustion or unavailability of all D&O Insurance Policies, including any Side A coverage thereunder. For purposes of such D&O Liability Insurance Policies, any claims or causes of action against the Debtors' directors and officers shall be deemed to be "Non-Indemnifiable Loss" until all limits, including any Side A excess limits, have been exhausted through payment by the insurers of such D&O Liability Insurance Policies. For the avoidance of doubt, any claims or causes of action against any of the Debtors' directors and/or officers shall not give rise to any Indemnification Obligations unless and until the limits under all Side A coverage of all D&O Liability Insurance Policies have been exhausted or are otherwise unavailable; *provided*, *however*, that to the extent such coverage under such D&O Liability Insurance Policies has been exhausted or is otherwise unavailable, such claims or causes

of action shall constitute Indemnification Obligations, and the Indemnification Obligations shall not be discharged or impaired by Confirmation of the Plan, and, notwithstanding anything in the Plan to the contrary, the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Debtors under the Plan effective as of the Effective Date and shall continue as obligations of the Reorganized Debtors. No assumption of an Indemnification Obligation shall in any way extend the scope or term of any Indemnification Obligation beyond that contemplated in the applicable agreement governing such Indemnification Obligation.

115. **Insurance**. As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (including all D&O Liability Insurance Policies) shall be deemed to be assumed by the Reorganized Debtors under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be Executory Contracts. Such insurance policies and any agreements, documents, and instruments related thereto shall be assumed by the applicable Debtors or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.

116. **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved. For the avoidance of doubt, except as otherwise provided in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall affect the Debtors' or the Reorganized Debtors' rights regarding any Claim or Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Claim or Unimpaired Claim, and the right to dispute or object to any such Claim or Unimpaired Claim.

117. **Issuance of New Common Stock**. On the Effective Date, Reorganized Taco Bueno is authorized to and shall issue the New Common Stock in accordance with the terms of

the Plan and without the need for any further corporate or shareholder action. All of the New Common Stock when so issued, shall be duly authorized, validly issued, enforceable, and fully paid and non-assessable.

118. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the Committee Settlement, constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies (including the Committee Settlement), as well as a finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

119. **Opt-In Procedures**. The procedures for holders of Allowed Class 4—General Unsecured Claims to elect to opt-in to the Committee Settlement, including the election to opt-in to certain third-party releases as set forth in the Opt-In Procedures in the form attached as **Exhibit G** to the Plan Supplement, the form used to effectuate such process, and the notice of such Opt-In Procedures in the form attached as **Exhibit H** to the Plan Supplement (the "*Opt-In Notice*") are hereby approved in all respects. The Opt-In Notice and the Opt-In Procedures shall be served by the Reorganized Debtors upon the Debtors' known holders of General Unsecured Claims, which service will occur within three (3) Business Days following the Effective Date. The Reorganized Debtors shall cause the Opt-In Notice to be published in *USA Today* (National Edition), and *The*

*Dallas Morning News* in Dallas, Texas, within five (5) Business Days following the Effective Date, and shall make all reasonable payments required for such publication. The provision of notice in accordance with this paragraph shall be deemed good and sufficient notice of the Opt-In Procedures.

120. **Release, Exculpation, Discharge, and Injunction Provisions**. All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Articles VIII.B, VIII.C, VIII.D, VIII.E, VIII.F, VIII.G, and VIII.H of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein, and as if fully set forth herein.

121. **Discharge of Claims and Termination of Interests**. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy

Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

122. **Tax Withholding**. Pursuant to the Plan, including Article VI.C thereof, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors or Reorganized Debtors, as applicable, are authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors or the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

123. **Payment of Statutory Fees**. On the Effective Date and thereafter as may be required, the Reorganized Debtors shall pay all fees incurred pursuant to sections 1911 through

1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Chapter 11 Cases.

124. **Documents, Mortgages and Instruments**. Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

125. **Return of Deposits**. All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "**Deposits**"), whether pursuant to the *Order (I) Approving Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (III) Approving Debtors' Proposed Procedures Resolving Additional Assurance Requests* [Docket No. 155] (the "**Utilities Order**") or otherwise, including, but not limited to, gas, electric, telephone, data, cable, trash, freight, and waste management services, are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, within thirty (30) days following the Effective Date or as otherwise specifically provided in the Utilities Order. Additionally, the Debtors or Reorganized Debtors, as applicable, are hereby authorized to close the Adequate Assurance Account (as defined in the Utilities Order) and utilize such funds in the operation of their businesses.

126. **Committee Objections Withdrawn**. All objections filed by the Committee in these Chapter 11 Cases are hereby deemed withdrawn with prejudice.

127. **Filing and Recording**. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

128. **Continued Effect of Stays and Injunctions**. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

129. **Debtors' Actions Post-Confirmation Through the Effective Date**. During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

130. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan and the Restructuring Transactions at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article IX.C of the Plan, of the conditions precedent to Consummation set forth in Article IX of the Plan.

131.    **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.  The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed mutually nonseverable and mutually dependent.

132.    **Post-Confirmation Modifications**.    Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and the Restructuring Support Agreement, in each case, subject to any applicable consultation and approval rights and conditions set forth therein.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve their respective rights prior to the Effective Date to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor or Reorganized Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

133.    **Conditions to the Effective Date**.  The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied pursuant to Article IX.C of the Plan.

134.    **Plan Administrator**.  Upon the Effective Date, the Plan Administrator shall be appointed to reconcile General Unsecured Claims, effectuate distributions on account thereof from the GUC Cash Pool, and conduct all related services.  The Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) make distributions from the GUC Cash Pool as contemplated in the Plan, (b) establish and administer any necessary reserves from the GUC Cash Pool for Disputed Claims that may be required; and (c) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Court such Disputed Claims.  The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.  For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Allowed General Unsecured Claims.  The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid solely from the GUC Cash Pool.  The Reorganized Debtors shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties.  For the avoidance of doubt, the Plan Administrator may not pursue any Claims or Causes of Action against any of the Released Parties.

135. **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

136. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

137. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

138. **Governmental Agencies.** Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or

operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected.

139. **Waiver of Filings**. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

140. **Waiver of Stay.** This Confirmation Order is a Final Order. For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court. The Debtors and the Reorganized Debtors are authorized to consummate the Plan at any time.

141. **Notice of Entry of the Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **Exhibit B** to all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and other parties in interest. Such notice is

hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

142. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

143. **Termination of Restructuring Support Agreement**. On the Effective Date, the Restructuring Support Agreement will terminate in accordance with sections 11 and 12 thereof.

144. **References to and Omissions of Particular Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

145. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

146. **Effect of Conflict**. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

147. **Closure of Chapter 11 Cases**. As soon as practicable after the Effective Date, the Reorganized Debtors are authorized to submit an order to the Court that closes and issues a final decree for each of the Chapter 11 Cases.

US 5969520

148. **Final Order.** This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

149. **Retention of Jurisdiction**. Except as set forth in the Plan or this Confirmation Order, the Court may properly, and upon the Effective Date shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

Submitted by:

**VINSON & ELKINS LLP**

*/s/ Paul E. Heath*
Paul E. Heath (TX 09355050)
Garrick C. Smith (TX 24088435)
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
pheath@velaw.com; gsmith@velaw.com;

- and -

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com

**COUNSEL FOR THE DEBTORS**

## Exhibit A

**Plan of Reorganization**

## Exhibit B

### Proposed Confirmation Order Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 18-33678** |
| **TACO BUENO RESTAURANTS, INC.,** | § | **(Chapter 11)** |
| ***et al.*,** | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |
| | § | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING
## THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN
## OF REORGANIZATION AND (II) OCCURRENCE OF THE EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on December [•], 2018, the Honorable Stacey G. C. Jernigan , United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "***Court***"), entered the order [Docket No. __] (the "***Confirmation Order***") confirming the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 21] (as amended, modified, or supplemented, the "***Plan***") and approving the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 22].[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____], 201[8].

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in the Chapter 11 Cases can be found on the docket of the Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at https://cases.primeclerk.com/tacobueno.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against or Interest in the Debtors and such holder's respective successors, assigns, and designees,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677); Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189);  Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

[2]     Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

US 5969520

whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity voted to accept the Plan.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Claims shall be 30 days after the Effective Date and the deadline for filing requests for payment of Professional Fee Claims shall be 45 days after the Effective Date.

      **PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Court and serve a copy of such request for notice on counsel to the Reorganized Debtors, listed below.  You must do this even if you filed such a notice prior to the Effective Date.

      **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: December [___], 2018
Dallas, Texas

**VINSON & ELKINS LLP**
*/s/*
Paul E. Heath (TX 09355050)
Garrick C. Smith (TX 24088435)
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
pheath@velaw.com; gsmith@velaw.com;

- and -

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel: 212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com

**COUNSEL FOR THE DEBTORS**