

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 19, 2018**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 18-33678** |
| | § | |
| **TACO BUENO RESTAURANTS, INC., et al.,** | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

## FINDINGS OF FACT, CONCLUSIONS
## OF LAW, AND ORDER (I) APPROVING THE DEBTORS'
## DISCLOSURE STATEMENT AND (II) CONFIRMING THE DEBTORS'
## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:

a.  distributed, through Prime Clerk, LLC (the "***Notice and Claims Agent***"), on or about November 6, 2018 (i) the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 22] (the "***Disclosure Statement***"); (ii) the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 21] (as amended on December 18, 2018 [Docket No.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677); Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189);  Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

219], and as further modified, amended, or supplemented from time to time, the "***Plan***"), a copy of which is annexed hereto as **Exhibit A**; and (iii) a ballot for voting on the Plan to  the holder of Class 3 Prepetition Lender Secured Claims in accordance with title 11 of the United States Code (the "***Bankruptcy Code***"), the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Rules***"), and applicable nonbankruptcy law, as evidenced by the *Affidavit of Service of Solicitation Materials* [Docket No. 7] (the "***Solicitation Affidavit***");[2]

b.  commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code on November 6, 2018 (the "***Petition Date***") after the conclusion of the prepetition solicitation described in the preceding paragraph;

c.  filed,[3] on November 6, 2018, the Plan and the Disclosure Statement;

d.  filed, on November 6, 2018, the *Motion for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Prepackaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline; and (IV) Granting Related Relief* [Docket No. 12] (the "***Scheduling Motion***"), which, among other things, requested approval of the Debtors' prepetition solicitation procedures (the "***Solicitation Procedures***") with respect to the Plan, including the form of ballot (the "***Ballot***")[4] transmitted to the class of Claims for voting on the Plan;

e.  filed, on November 6, 2018, the *Declaration of Haywood Miller in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 5] and the *Declaration of Adam Dunayer in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 4], detailing certain facts and circumstances of the Chapter 11 Cases;

f.  filed, on November 6, 2018, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 17] (the "***Voting Certification***"), which detailed the results of the Plan solicitation and voting process;

g.  filed, on November 9, 2018, the *Notice of (A) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (B) Combined Hearing on the Disclosure Statement,*

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan.  The rules of interpretation set forth in Article I.B of the Plan apply.

[3]  Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in the Chapter 11 Cases, as applicable.

[4]  The Ballot was attached as Exhibit 2 to the Scheduling Order.

*Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, (C) Objection Deadlines, and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 60] (the "***Combined Notice***"), which, *inter alia*, contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "***Confirmation Hearing***"), and the deadline for filing objections to the Plan and the Disclosure Statement, and which provided excerpts of, and advised parties to carefully review, the release, exculpation, and injunction provisions in the Plan, as evidenced by the *Affidavit of Service* [Docket No. 88] and the *Supplemental Affidavit of Service* [Docket No. 93] (collectively, the "***Combined Notice Affidavit***"), consistent with the order approving the Scheduling Motion [Docket No. 56] (the "***Scheduling Order***");

h.      caused the Combined Notice, as modified for publication, to be published in *USA Today* (National Edition) on November 12, 2018, and in the *Dallas Morning News* on November 12, 2018, as evidenced by the *Affidavit of Publication* [Docket No. 80] (the "***Publication Affidavit***" and, together with the Combined Notice Affidavit, the "***Service Affidavits***"), consistent with the Scheduling Order;

i.      filed, on November 30, 2018, the *Notice of Filing Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 161], on December 4, 2018, the *Notice of Filing Second Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 172], on December 7, 2018, the *Notice of Filing Third Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 183], on December 18, 2018, the *Notice of Filing Fourth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 222] and the *Notice of Filing Fifth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 229], and on December 19, 2019 the *Notice of Filing Sixth Supplement to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 232] (as the documents therein have been or may be modified, amended, or supplemented from time to time, collectively, the "***Plan Supplement***" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

j.      filed, on November 30, 2018, and supplemented on December 7, 2018, as an exhibit to the Plan Supplement, the Schedule of Assumed Executory Contracts and Unexpired Leases, as such schedule was replaced and superseded in its entirety by **Exhibit C** to the Plan Supplement filed on December 18, 2018;

k.      filed, on December 4, 2018, the *Notice of (I) Proposed Cure Amounts Associated with Possible Assumption of Executory Contracts and Unexpired Leases, and (II) Deadline to Object Thereto* [Docket No. 175], (the "***Cure Notice***"), notifying all non-Debtor parties to Executory Contracts and Unexpired Leases being assumed by the Debtors of such assumption and the estimated amounts necessary to cure any defaults thereunder (the "***Proposed Cure Amounts***"), and further notifying such parties of the deadline to object to such cure amounts;

l.  filed, on December 17, 2018, the *Declaration of Haywood Miller in Support of Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 213], the *Declaration of Adam Dunayer in Support Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 214], and the *Declaration of Guillermo Perales in Support of Confirmation of Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 215] (collectively, the "***Confirmation Affidavits***");

m.  filed, on December 17, 2018, the *Debtors' Memorandum of Law in Support of (I) Approval of Disclosure Statement, and (II) Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 212] (the "***Confirmation Brief***"); and

n.  continued to operate their businesses and manage their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.  entered, on November 8, 2018, the Scheduling Order;

b.  set December 19, 2018, at 9:30 a.m. (prevailing Central Time) as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

c.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, the Voting Certification, the Confirmation Affidavits, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of right filed by parties in interest on the docket of the Chapter 11 Cases;

d.  held the Confirmation Hearing;

e.  heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

f.  considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

g.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases; and

h.  overruled any and all objections to the Plan and to Confirmation and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

NOW, **THEREFORE**, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing and the entire record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  The findings and conclusions of the Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the

Disclosure Statement, including the associated Solicitation Procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code and the Court may enter a final order consistent with Article III of the United States Constitution.

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 39].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 16, 2018, the U.S. Trustee (as defined below) appointed an Official Unsecured Creditors' Committee (the "*Committee*") in the Chapter 11 Cases.

**E.      Judicial Notice.**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

**F.      Notice.**

6.      As evidenced by the Service Affidavits, due, timely, proper, and adequate notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan,

has been provided to the Core/2002 Service List, including: (a) the Office of the United States Trustee for the Northern District of Texas (the "*U.S. Trustee*"), (b) the Debtors' 30 largest unsecured creditors on the Petition Date (on a consolidated basis); (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (f) Taco Supremo; (g) Scheef and Stone, L.L.P., as counsel to Taco Supremo; (h) the Committee; and (i) all parties in interest listed on the Debtors' creditor matrix.

7.      Given the expedited nature of the Chapter 11 Cases, the Debtors have gone to great lengths to ensure that all parties in interest received sufficient due process.  As a direct result of these efforts, all impaired creditors have either:  (a) cast a vote to accept the Plan; (b) received actual notice of the Disclosure Statement and Plan and provided no indication that they object to confirmation of the Plan; or (c) asserted an objection to the Plan that is, to the extent not withdrawn, overruled on the merits herein.  Further, the Combined Notice, as modified for publication, was published in *USA Today* (National Edition) on November 12, 2018 and in the *Dallas Morning News* on November 12, 2018 in accordance with the Scheduling Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient based upon the facts and circumstances of the Chapter 11 Cases and pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**G.      Disclosure Statement.**

8.      The Disclosure Statement contains (a) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act (to the extent applicable), and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the

Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and is approved in all respects.

**H.     Solicitation.**

9.      Prior to the commencing these Chapter 11 Cases, the Debtors, through the Notice and Claims Agent, caused the Plan, the Disclosure Statement (which included as exhibits thereto, the Plan, a corporate structure chart, a Liquidation Analysis, Financial Projections, a Valuation Analysis, and the Restructuring Support Agreement (as each term is defined in the Disclosure Statement), a Ballot, the proposed Interim DIP Order,[5] and a cover letter (collectively the "***Solicitation Package***"), to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

10.     As set forth in the Solicitation Affidavit, on November 6, 2018, the Solicitation Package was transmitted to and served on the eligible holder of Claims of the Class of Claims entitled to vote to accept or reject the Plan (the "***Voting Class***").  Taco Supremo, the only eligible holder of a Claim in the Voting Class, received a Ballot.  The form of the Ballot adequately addressed the particular needs of the Chapter 11 Cases and was appropriate for Taco Supremo. The instructions on the Ballot advised Taco Supremo that for the Ballot to be counted, the Ballot must be properly executed, completed, and delivered to the Notice and Claims Agent so that it was actually received by the Notice and Claims Agent no later than 1:00 p.m. (prevailing Central Time) on November 6, 2018 (the "***Voting Deadline***"), unless such time was extended by the Debtors.

---

[5]   "***Interim DIP Order***" shall mean the Interim Order Authorizing Debtors to Utilize Cash Collateral, Obtain Postpetition Credit Secured by Senior Liens, Granting Adequate Protection to Prepetition Secured Parties, Scheduling a Final Hearing, and Granting Related Relief [Docket No. 41].

The period during which the Debtors solicited Taco Supremo's acceptance to the Plan was a reasonable period of time for Taco Supremo to make an informed decision to accept or reject the Plan.

11. The Debtors were not required to solicit votes from the holders of Claims in Class 1—Other Priority Claims and Class 2—Other Secured Claims (collectively, the "***Unimpaired Classes***"), as each such class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Debtors were not required to solicit votes from the holders of Claims and Interests in Class 5—Intercompany Claims and Class 6—Intercompany Interests (collectively, the "***Unimpaired or Deemed Rejecting Classes***"), as each such class is either Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors also were not required to solicit votes from the holders of Claims in Class 4—General Unsecured Claims and Interests in Class 7—TB Holdings Interests (the "***Deemed Rejecting Classes***"), as such classes are Impaired and not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

12. No other or further solicitation was or shall be required on account of the global settlement reached among the Debtors, Taco Supremo, TPG, senior management, and the Committee (the "***Committee Settlement***"). Taco Supremo, which holds valid liens on substantially all of the Debtors' assets, is owed approximately $140 million on account of its Prepetition Lender Claim and DIP Facility Claim, and is expected to recover between 24.3% and 31.4% on account of such Claims under the Plan. No Class of Claims or Interests junior to the Voting Class,

9

including Class 4—General Unsecured Claims, is entitled to receive any recovery under the Bankruptcy Code, and section 1126(g) of the Bankruptcy Code provides that creditors who are entitled to no recovery are deemed to reject and their votes are not required. The opportunity for holders of Class 4—General Unsecured Claims to receive a distribution from the GUC Cash Pool under the Committee Settlement embodied in the Plan does not entitle such holders to vote. Even if votes were solicited from holders of Class 4—General Unsecured Claims, and the Class voted to reject the Plan, the Plan could be confirmed over any such objection by "cram down" under section 1129(b) of the Bankruptcy Code since the Debtors have received acceptance of the Plan by the Voting Class and have satisfied the other requirements for Confirmation, so no further solicitation is necessary.

13.    As described in and as evidenced by the Voting Certification and the Solicitation Affidavit, the transmittal and service of the Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and any other applicable rules, laws, and regulations.

## I.    Voting.

14.    On November 6, 2018, the Voting Certification was filed with the Court, certifying the method and results of the Ballots tabulated for the Voting Class. As of the Voting Deadline, 100% in number and 100% in dollar amount of the holders of claims in the Voting Class that timely voted, voted to accept the Plan, without counting the votes of any insider (as such term is defined in section 101(31) of the Bankruptcy Code). As evidenced by the Voting Certification,

votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, and the Local Rules.

**J.    Plan Supplement.**

15.    The Debtors filed the Plan Supplement consisting of: (a) the Consulting Agreements; (b) the form of the New Organizational Documents of Reorganized Taco Bueno; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the identity of the member of the New Board and the officers of Reorganized Taco Bueno as of the Effective Date; (e) the List of Retained Causes of Action; (f) the Financial Projections; (g) the Opt-In Procedures; and (h) the Opt-In Notice.

16.    All such materials comply with the terms of the Plan, and the filing and notice of the Plan Supplement was proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan as if set forth in full therein.  The Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date (subject, in each case, to any consultation and approval rights and conditions set forth in the Plan and the Restructuring Support Agreement).

**K.    Modifications of the Plan.**

17.    Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected herein and/or in the amended Plan filed with the Court prior to entry of this Confirmation Order (collectively, the "***Plan Modifications***").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of

the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims, (iv) require re-solicitation of any holders of any Claims or Interests, or (v) require that Taco Supremo, as the sole holder of a Claim in the Voting Class, be afforded an opportunity to change its previously cast acceptance of the Plan. Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. Taco Supremo, as the sole holder of a Claim in the Voting Class, shall not be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

**L.     Resolution of Objections and Other Issues.**

18.     To the extent that any objections, reservations of rights, statements or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

19.     <u>Rosebriar Stipulation</u>.     The Debtors and Rosebriar/Caruth Haven, L.P. ("***Rosebriar/Caruth***") have consensually resolved disputes (the "***Rosebriar Disputes***") regarding: (a) the alleged termination, prior to the Petition Date, of a Net Land and Building Lease applicable to 7940 N Central Expressway, Dallas, Texas 75206 (as amended, the "***Store 3177 Lease***"), and (b) Debtor Taco Bueno Restaurants, L.P.'s ability to assume the Store 3177 Lease. The resolution of such disputes is hereby approved on the following terms:

> a.    This Confirmation Order approves Taco Bueno Restaurants, L.P.'s assumption of the Store 3177 Lease as of the Effective Date, and constitutes the Court's findings that: (i) the Store 3177 Lease has not terminated; and (ii) Taco Bueno's leasehold interest under the Store 3177 Lease became property of Debtor Taco Bueno Restaurants, L.P.'s bankruptcy Estate on the Petition Date;

b. Rosebriar/Caruth shall have an Allowed Cure Claim of $32,167.00, and shall have no further Claim or Claims against the Debtors;

c. The Debtors shall return Check No. 11478 (dated October 5, 2018, in the amount of $12,166.67, made by Rosebriar/Caruth and payable to Taco Bueno Restaurants, L.P.), undeposited, to Rosebriar/Caruth within five days after entry of this Confirmation Order;

d. All claims asserted by Taco Bueno Restaurants, L.P. and/or Rosebriar/Caruth in Adv. Proc. No. 18-03344 shall be dismissed with prejudice by stipulation within five days after entry of this Confirmation Order, with each party to bear its own attorneys' fees, costs, and expenses;

e. Rosebriar/Caruth shall dismiss, with prejudice, Case No. JE18-02597A in the Justice Court, Precinct 3, Place 1 (Dallas County, Texas) within five days after entry of this Confirmation Order, with each party to bear its own attorneys' fees, costs, and expenses;

f. Rosebriar/Caruth, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Rosebriar Releasors***"), hereby releases and discharges the Debtors, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Debtor Releasees***"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown (each a "***Rosebriar Released Claim***") which any Rosebriar Party has or may have had based on any facts or circumstances existing, in whole or in part, through midnight on the date of the entry of this Confirmation Order, including without limitation any claim alleging that the Store 3177 Lease terminated prior to the Petition Date. Notwithstanding anything to the contrary in this subparagraph, nothing in this Confirmation Order shall be construed to release any of the Debtors from its or their obligations to comply, after entry of this Confirmation Order, with the Store 3177 Lease or any other lease or contract between one or more Debtors and one or more Rosebriar Releasors,

including without limitation the Reverse Build to Suit Lease Agreement between Rosebriar Prosper Plaza, L.P. and Taco Bueno Restaurants, L.P., dated as of March 21, 2013 (as amended, the "***Prosper Lease***").

g. Each Debtor, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Debtor Releasors***"), hereby releases and discharges Rosebriar/Caruth, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively, the "***Rosebriar Releasees***"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown (each a "***Debtor Released Claim***") which any Debtor has or may have had based on any facts or circumstances existing, in whole or in part, through midnight on the date of the entry of this Confirmation Order. Notwithstanding anything to the contrary in this subparagraph, nothing in this Confirmation Order shall be construed to release any of the Rosebriar Releasees from its or their obligations to comply, after entry of this Confirmation Order, with the Store 3177 Lease or any other lease or contract between one or more Debtors and one or more Rosebriar Releasees, including without limitation the Prosper Lease.

20. <u>Taxing Authorities</u>. Angelina County, Arlington ISD, Bell County Tax Appraisal District, Brown Central Appraisal District, City of Burleson, Burleson ISD, City of Carrollton, Carrollton-Farmers Branch ISD, City of Cleburne, Cleburne ISD, Crowley ISD, Dallas County, Denton County, Ellis County, City of Garland, Garland ISD, City of Grapevine, Grapevine-Colleyville ISD, Grayson County, City of Greenville, Greenville ISD, Gregg County, City of Haltom City, City of Haslet, Hood CAD, Hopkins County, Hunt County, Irving ISD, Johnson County, Kaufman County, City Lake Worth, Lewisville ISD, Mansfield ISD, McLennan County,

Northwest ISD, Town of Pantego, Parker CAD, Potter County Tax Office, City of Roanoke, Richardson ISD, Rockwall CAD, City of Sulphur Springs, Sulphur Springs ISD, Tarrant County, Taylor County Central Appraisal District, Valwood Improvement Authority, City Of Waco, Wichita County, City of Wichita Falls, Wichita Falls ISD, and Williamson County (collectively, the "**Texas Tax Authorities**") assert that they are the holders of prepetition claims for unpaid 2018 ad valorem real and business personal property taxes. The Debtors/Reorganized Debtors shall pay all amounts owed to the Texas Tax Authorities in the ordinary course of business no later than January 31, 2019. In the event the Claims are paid after January 31, 2019, regardless of whether the Claims are disputed or undisputed, the Texas Tax Authorities shall receive interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511, and 1129. The Texas Tax Authorities shall retain the liens that secure all amounts ultimately owed on their Claims as well as the state law priority of those liens until the Claims are paid in full. In the event that collateral that secures the Claim of one or more of the Texas Tax Authorities is returned to a creditor that is junior to the Texas Tax Authorities, the Debtor/Reorganized Debtor shall first pay all ad valorem property taxes that are secured by the collateral.

21. In the event the Confirmation Order is entered on the docket after December 31, 2018, the Texas Tax Authorities will be the holders of Administrative Claims for year 2019 ad valorem real and business personal property taxes; *provided*, *however*, that notwithstanding any other deadlines in this Confirmation Order for the payment of other administrative expenses, the Texas Tax Authorities shall receive payment of such taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an Administrative Claim and request for payment as a condition of allowance as provided in 11 U.S.C. Section

503(b)(1)(D). The Texas Tax Authorities shall retain the liens that secure all amounts ultimately owed for year 2019 along with the state law priority of those liens. The Texas Tax Authorities' Administrative Claims, if any, for year 2019 ad valorem real and business personal property taxes shall not be discharged until such time as the amounts owed are paid in full. In the event of a default in the payment of the tax Claims as provided herein, the Texas Tax Authorities shall provide notice to counsel for the Debtors/Reorganized Debtors who shall have twenty (20) days from the date of the notice to cure the default. If the default is not cured, the Texas Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law outside this Court. Failure to pay the 2019 ad valorem taxes prior to the state law delinquency date shall constitute an event of default only as to the relevant Texas Tax Authority. The Debtors'/Reorganized Debtors' rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

22.     <u>Cure Claim Objections</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay the parties below the following payments as full and final satisfaction of any Cure Claim associated with the assumption of each party's applicable Unexpired Lease(s) on the Effective Date in compliance with section 365(b)(1) of the Bankruptcy Code, provided that the Unexpired Lease(s) below shall not be deemed assumed until such Cure Claims are paid in full. Accordingly, the following parties' objections are resolved and withdrawn.

    a.  <u>National Retail Properties, LP</u>
  i.   4500 Long Prairie Road, Flower Mound, TX 75028 - $39,184.50
  ii.  1324 S Broadway Street, Sulphur Springs, TX 75482 – $16,169.11
  iii. 2004  S Service Road, Moore, OK 73160 – $16,046.51

    b.  <u>JAHCO Virginia Square, LP</u>
  i.   302 N. Central Expressway, McKinney, TX 75069  – $18,322.02

    c.  <u>Hiser Lane LLC</u>

          i.   1380 FM 148, Terrell, TX 75160 - $20,500 for obligations owed as of the date of confirmation of the Plan, and all other amounts then due and payable by the Debtors as of the Effective Date pursuant to Section 4.04 of the applicable Unexpired Lease and the Plan.

23.    <u>Chymiak Investments KS, LLC</u>. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay Chymiak Investments KS, LLC ("***Chymiak***") the amount of $37,913.32 as full and final satisfaction of any Cure Claim associated with the assumption of Chymiak's Unexpired Lease located at 18016 W. 119th Street, Olathe, KS 66061 (the "***Chymiak Lease***") on the Effective Date or as soon as reasonably practicable thereafter in compliance with section 365(b)(1) of the Bankruptcy Code.[6] Following assumption of the Chymiak Lease, any other obligations, including, but not limited to, rent or other obligations accruing after the confirmation date, owed to Chymiak in connection with the Chymiak Lease, and all real estate taxes, and interest, payable under the Chymiak Lease to taxing entities with respect to the leased property, shall be paid in the ordinary course of business, with any dispute to be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. Accordingly, Chymiak's objection [Docket No. 190] is resolved and withdrawn.

24.    <u>Oracle</u>. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors or the Reorganized Debtors shall pay Oracle America, Inc. ("***Oracle***") the amount of $16,514.48 as full and final satisfaction of any Cure Claim associated with the assumption of the Cloud Services Agreement, inclusive of the Universal Credits and the CPQ #784424, between Oracle and Taco Bueno Restaurants, Inc. (collectively, the "***CSA***") on the Effective Date or as soon as reasonably practicable thereafter in compliance with

---

[6] This payment includes rent obligations owed by the Debtors for the month of December 2018.

section 365(b)(1) of the Bankruptcy Code, but in no event later than fourteen (14) days after the Effective Date. Following assumption of the CSA, any other obligations, accruing after the Confirmation Date owed to Oracle in connection with the CSA shall be paid in the ordinary course of business, with any dispute to be determined in accordance with the CSA and applicable nonbankruptcy law. Any other executory contracts between Oracle and any Debtor shall be deemed rejected under the Plan.

25. <u>Spirit</u>. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors and Spirit Master Funding III, LLC ("**Spirit III**") and Spirit Master Funding X, LLC (as assignee from TABU Property I, LLC) ("**Spirit X**" and, collectively with Spirit III, "**Spirit**") agree that the assumption or rejection of the Master Lease agreement between Spirit and the Taco Bueno Restaurants, Inc. (the "**Spirit Master Lease**") and the individual leases between Spirit and the Debtors (collectively the "**Spirit Leases**") are deferred pending the filing of a notice with the Court executed by or on behalf of both Spirit and the Debtors assuming or rejecting the Spirit Leases, at which time the assumption or rejection, as applicable, of the Spirit Master Lease and/or Spirit Leases, as applicable, shall be deemed approved pursuant to this Confirmation Order. The Debtors and Spirit reserve all rights, claims and defenses with respect to assumption or rejection of the Spirit Leases, including with respect to the amounts of any cure payments or cure obligations and neither the Plan or this Order shall be construed as an order assuming the Spirit Leases, pending filing of the notice as described in this paragraph. In the event that no notice of assumption is filed by the Effective Date with respect to any particular Spirit Lease, such Spirit Lease shall be deemed rejected unless otherwise agreed to by the parties. Accordingly, Spirit's objection [Docket No. 195] is withdrawn.

26.    U.S. Realty.   Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the Debtors and U.S. Realty Advisors, LLC ("**U.S. Realty**") agree that (a) the Master Lease agreement between TABU Property II, LLC and Taco Bueno Restaurants, Inc. and (b) the Master Lease agreement between TABU Property III, LLC and Taco Bueno Restaurants, Inc. ((a) and (b) together, the "**U.S. Realty Master Leases**") are assumed as amended pursuant to the Plan and this Confirmation Order, subject to execution of all final documentation and agreement in writing by the Debtors and U.S. Realty prior to the Effective Date; notwithstanding the foregoing, if the parties do not execute all final documentation and agree in writing prior to the Effective Date, the Debtors and U.S. Realty reserve all rights related to assumption, assignment, and/or rejection of the U.S. Realty Master Leases, including the amount of any cure payment in compliance with section 365(b)(1) of the Bankruptcy Code and the Plan.

27.    Lehigh Hanson, Inc.   Subject to the occurrence of the Effective Date, entry of this Confirmation Order shall constitute approval of the assumption of the Sublease Agreement, dated November 30, 2016 between Lehigh Hanson, Inc. ("**Lehigh**") and Taco Bueno Restaurants, L.P. ("**Taco Bueno**") pursuant to sections 365(a) and 1123 of the Bankruptcy Code as provided for in the Plan and the approval of the First Amendment to Sublease Agreement dated as of December 6, 2018 (the "**First Amendment**") between Lehigh and Taco Bueno and authorization of Taco Bueno to execute the First Amendment.

28.    Windstream.   Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the agreements (collectively, the "**Windstream Agreements**") among any of the Debtors and Windstream and/or its affiliates, as applicable, shall not be rejected on the Effective Date, but shall be rejected effective as of 11:59 p.m. Central Time

on January 31, 2019 (as may be extended from time to time in accordance with the terms of this Confirmation Order, the "***Windstream Rejection Date***"), or such other date as agreed to by the Reorganized Debtors and Windstream in writing prior to the Windstream Rejection Date; *provided*, *however*, that (a) the Debtors reserve all rights with respect to the effective date of rejection of any of the Windstream Agreements through and including the Effective Date, (b) the Debtors or the Reorganized Debtors, as applicable, shall pay all allowed post-Petition Date Administrative Claims of Windstream against the Debtors, and (c) the Reorganized Debtors and Windstream and/or its affiliates, as applicable, shall remain subject to the terms of the Windstream Agreements through and including the Windstream Rejection Date.

**M.      Bankruptcy Rule 3016.**

29.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**N.      Burden of Proof—Confirmation of the Plan.**

30.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**O.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

31.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

        (i)       Proper Classification—Sections 1122 and 1123(a)(1).

32. In addition to Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which need not be classified, Article III of the Plan provides for the separate classification of Claims and Interests into seven Classes at each Debtor (as applicable). Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to other Claims or Interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

        (ii)      Specified Unimpaired Classes—Section 1123(a)(2).

33. Article III of the Plan specifies that Class 1—Other Priority Claims and Class 2—Other Secured Claims are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

        (iii)     Specified Treatment of Impaired Classes—Section 1123(a)(3).

34. Article III of the Plan specifies that Class 3—Prepetition Lender Secured Claims, Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests are Impaired (holders of Claims or Interests in Classes 5 and 6 are either Unimpaired or Impaired) under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

        (iv)     No Discrimination—Section 1123(a)(4).

35. Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Adequate Means for Plan Implementation—Section 1123(a)(5).

36.     The Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation: (a) the restructuring of the Debtors' balance sheet and other financial transactions provided for by the Plan; (b) the adoption, filing, and implementation of the New Organizational Documents; (c) the consummation of the Restructuring Transactions in accordance with the Plan; (d) the general authority for the Debtors to take all actions necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate Plan, as set forth more fully in Article IV of the Plan; (e) the issuance of securities, including the New Common Stock; (f) the cancellation of certain existing agreements, obligations, instruments, and Interests; (g) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors; (h) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents in furtherance of the Plan, including those certain Consulting Agreements filed in the Plan Supplement and any other Definitive Documentation; and (i) provisions governing distributions under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)     Voting Power of Equity Securities—Section 1123(a)(6).

37.     The New Organizational Documents, as applicable, of each Debtor have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities.  In addition, the New Common Stock is being issued pursuant to the Plan and does not constitute non-voting equity securities within the meaning of section 1123(a)(6).  As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)     Designation of Directors and Officers—Section 1123(a)(7).

38.     The Debtors' initial director and officer, to the extent known, has been disclosed in the Plan Supplement and, to the extent not known, will be determined in accordance with the New Organizational Documents and the Plan, which is consistent with the interests of creditors and equity holders and with public policy, and, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

(viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1).

39.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix)     Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

40.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V.A of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, (a) except as otherwise provided in the Plan or this Confirmation Order and (b) except for those Executory Contracts or Unexpired Leases: (1) that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (2) that have been previously rejected by a Final Order.

(x)     Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

41.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of

all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan, including the Committee Settlement, are in the best interests of the Debtors, the Estates, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

42. Article VIII.E of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***"). The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, such releases are a necessary and integral part of the Plan, and are fair and equitable and in the best interests of the Debtors, the Estates, and the holders of Claims and Interests. The Debtor Releases are "fair and equitable" and "in the best interests of the estate" considering the (i) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (ii) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; and (iii) the arm's-length negotiations which produced the settlement embodied in the Plan. Additionally, the Debtor Releases are: (a) a good-faith settlement and compromise of the Claims and Causes of Action released by Article VIII.E of the Plan; (b) given, and made, after due notice and opportunity for hearing; and (c) a bar to any of the Debtors or the Reorganized Debtors asserting any Claim or Cause of Action released by Article VIII.E of the Plan.

43. Article VIII.F of the Plan describes certain consensual releases granted by the Releasing Parties (the "***Third-Party Releases***"). The Third-Party Releases provide finality for the

Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Ballot sent to all holders of Claims entitled to vote on the Plan unambiguously stated that the Plan contains the Third-Party Releases and set forth the terms of the Third-Party Releases.  The Combined Notice sent to holders of Claims and Interests included the terms of the Third-Party Releases and an explanation of how to object to the Plan, including the Third-Party Release provisions thereof.  In addition, the Combined Notice advised careful review of the release, exculpation, and injunction provisions and emphasized in bold and capitalized typeface that any party should file a timely objection if they oppose the Plan, including the Third-Party Releases.  And, the Combined Notice published in the each of *USA Today* (National Edition) and the *Dallas Morning News* similarly highlighted the Third-Party Releases and provided an explanation of how to object to the Plan, including the Third-Party Release provisions thereof.

44.    The Third-Party Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; and (e) given for consideration and not violative of the bankruptcy Code.  The Third-Party Releases are fully consensual because all parties in interest, including all Releasing Parties, were provided with extensive notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan, and were properly informed that the Plan contained release provisions that could affect such parties' rights.

45.    The Third-Party Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Third-Party Releases are conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Ballot, and the Combined Notice.

46. Like the Debtor Releases, the Third-Party Releases are integral to the Plan because they facilitated participation in both the formation of the Plan and the chapter 11 process generally and were critical in incentivizing the parties to support the Plan. The Third-Party Releases were an important point of negotiation in connection with the Restructuring Support Agreement that formed the basis for the Plan, which equitizes a significant portion of the Debtors' prepetition indebtedness and maximizes value for, and is overwhelmingly supported by, all of the Debtors' key stakeholders. As such, the Third-Party Releases offer certain protections to parties, including Taco Supremo, that participated constructively in the Debtors' restructuring process by, among other things, supporting the Plan and the Restructuring Transactions.

47. The Third-Party Releases are given in exchange for good and valuable consideration provided by the Released Parties. Each of the Released Parties provided for a corresponding release under the Plan and provided other benefits to these Chapter 11 Cases, such as providing, or agreeing to provide, valuable services or financing to the Debtors during these Chapter 11 Cases and upon emergence. The Consenting Equity Holders, the Committee and its members, and Taco Supremo provided further consideration by consenting to their treatment under the Plan. Further, the Consenting Equity Holders, Taco Supremo, and certain members of the Debtors' senior management team that are entering into Consulting Agreements are waiving any recovery from the GUC Cash Pool on account of their TPG Claim, Prepetition Lender Deficiency Claim, and Employee Claims, respectively, in connection with the Committee Settlement, constituting additional consideration to support the Third-Party Releases.

48. The Third-Party Releases are therefore: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims and Causes of Action released thereby; (c) in the best interests of the Debtors, their Estates,

and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases. The Third-Party Releases are consistent with established practice in this jurisdiction and others.

49. The exculpation, described in Article VIII.G of the Plan (the "**_Exculpation_**"), is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party is appropriately released and exculpated from any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, liability or remedy for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan (including the Committee Settlement embodied therein), the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in- or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property

under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission by such Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carve-out for actual fraud, gross negligence, and willful misconduct, is consistent with established practice in this jurisdiction and others.

50. The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Releases, and the Exculpation and by extension the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

51. Article IV.L of the Plan appropriately provides that in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action other than the Avoidance Actions, whether arising before or after the Petition Date. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

52. The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.D of the Plan (the "*Lien Release*") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

(xi)     Modification of Rights—Section 1123(b)(5).

53.     The Plan modifies the rights of holders of Claims or Interests, as applicable, in Class 3—Prepetition Lender Secured Claims, Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests (holders of Claims or Interests in Classes 5 and 6 are either Unimpaired or Impaired), and leaves Unimpaired the rights of holders of Claims in Class 1—Other Priority Claims and Class 2—Other Secured Claims, and as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)     Additional Plan Provisions—Section 1123(b)(6).

54.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to holders of Claims and Interests, (b) allowance of certain Claims, (c) Indemnification Obligations, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)     Cure of Defaults—Section 1123(d).

55.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter in the amounts set forth on the Cure Notice or as otherwise agreed by the Debtors and any non-Debtor counterparty to any assumed Executory Contract or Unexpired Lease.  Any disputed Cure Claims will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to

assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**P.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

56.      The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b.   has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.   complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Q.      Plan Proposed in Good Faith—Section 1129(a)(3).**

57.      The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, and the process leading to Confirmation, including the overwhelming support from the Voting Class, the Committee, and other stakeholders for the Plan. The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from chapter 11 with a financially deleveraged capital structure, which will allow them to conduct their businesses and satisfy their

ongoing obligations with adequate liquidity and capital resources. The Plan (including all documents necessary to effectuate the Plan), the Plan Supplement, and the Plan Documents (as defined below) were negotiated in good faith and at arm's length among the Debtors, Taco Supremo, and the Committee. Additionally, the deal that the Debtors negotiated with Taco Supremo and the Committee that is embodied in the Plan, including the Committee Settlement and support for the Consulting Agreements, reflects the best possible compromise that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful reorganization.

**R.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

58.     The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

59.     All payments to be made by the Reorganized Debtors on the Effective Date pursuant to the Consulting Agreements are hereby approved as reasonable.

**S.      Directors, Officers, and Insiders—Section 1129(a)(5).**

60.     The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement discloses the identity and affiliations of the individual proposed to serve as the initial director and officer of the Reorganized Debtors, to the extent such

information is available, and the identity, title, and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The proposed director and officer for the Reorganized Debtors is qualified, and the appointment to such offices by the proposed director and officer is consistent with the interests of the holders of Claims and Interests and with public policy. Such person shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor. Additionally, the Debtors have filed Consulting Agreements as **Exhibit A** to the Plan Supplement wherein the Debtors disclosed the identities of, and described the nature of compensation for, certain members of the Debtors' existing senior management team who have agreed to provide post-Effective Date consulting services to the Reorganized Debtors.

**T.     No Rate Changes—Section 1129(a)(6).**

61.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**U.     Best Interest of Creditors—Section 1129(a)(7).**

62.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not

less than the amount that such holder would receive or retain if such Debtors were liquidated under chapter 7 of the Bankruptcy Code.

## V. Acceptance by Certain Classes—Section 1129(a)(8).

63. The Unimpaired Classes are Unimpaired by the Plan and, accordingly, holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Voting Class is Impaired and has voted to accept the Plan, as established by the Voting Certification. The Unimpaired or Deemed Rejecting Classes are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated), pursuant to section 1126(f) of the Bankruptcy Code, or are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and, in either event, are not entitled to vote to accept or reject the Plan. Holders of Claims or Interests of the Deemed Rejecting Classes will not receive or retain any property on account of their Claims or Interests and, accordingly, such holders are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan. Therefore, the Plan does not satisfy the requirements of section 1129(a)(8), solely with respect to the Deemed Rejecting Classes. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and, with respect to the Deemed Rejecting Classes, 1129(b) of the Bankruptcy Code.

## W. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

64. The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**X.** **Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

65. The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Certification, the Voting Class, which is Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**Y.** **Feasibility—Section 1129(a)(11).**

66. The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections filed with the Plan Supplement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**Z.** **Payment of Fees—Section 1129(a)(12).**

67. The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.E of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**AA.** **Continuation of Employee Benefits—Section 1129(a)(13).**

68. The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.N of the Plan provides that, on and after the Effective Date, all retiree benefits, as

defined in section 1114 of the Bankruptcy Code, shall continue to be paid in accordance with applicable law.

**BB.  Non-Applicability of Certain Sections— 1129(a)(14), (15), and (16).**

69.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**CC.  "Cram Down" Requirements—Section 1129(b).**

70.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class 4—General Unsecured Claims, Class 5—Intercompany Claims, Class 6—Intercompany Interests, and Class 7—TB Holdings Interests have been or may be deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code.  The evidence in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to such Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim.  *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class.  Accordingly, the Plan satisfies the

requirement of section 1129(b)(1) and (2) of the Bankruptcy Code. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**DD.    Only One Plan—Section 1129(c).**

71.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**EE.    Principal Purpose of the Plan—Section 1129(d).**

72.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**FF.    Not Small Business Cases—Section 1129(e).**

73.    The Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**GG.    Good Faith Solicitation—Section 1125(e).**

74.    Based on the record before the Court in these Chapter 11 Cases, including evidence proffered or adduced at or prior to the Confirmation Hearing, the Debtors and the other Exculpated Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the

solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article VIII.G of the Plan.

**HH.** **Satisfaction of Confirmation Requirements.**

75. Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**II.** **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

76. Without limiting or modifying the rights of any party set forth in Article IX.B or Article IX.C of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**JJ.** **Implementation.**

77. The terms of the Plan, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order. Consummation of each such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and holders of Claims and Interests, and such Plan Documents are hereby approved. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length,

are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**KK.** **Binding and Enforceable.**

78.     The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**LL.** **New Organizational Documents.**

79.     The New Organizational Documents are necessary for Confirmation and Consummation of the Plan, and are critical to the overall success and feasibility of the Plan.  Entry into the New Organizational Documents is in the best interests of the Debtors, their Estates, and all holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the New Organizational Documents and have provided sufficient and adequate notice of the material terms of the New Organizational Documents, which material terms were filed in the Plan Supplement.  The terms and conditions of the New Organizational Documents are fair and reasonable, and were negotiated in good faith and at arm's-length.

**MM.   Consulting Agreements.**

80.     The Debtors have provided sufficient and adequate notice of the terms of the Consulting Agreements.  The terms and conditions of the Consulting Agreements have been negotiated in good faith and at arm's length.  The Consulting Agreements are essential elements of the Plan, and the terms of the Consulting Agreements and the payments contemplated therein are reasonable and comparable or better than terms otherwise available in the market.  The Consulting Agreements (which shall be effective as executed on the Effective Date of the Plan) are hereby approved in their entirety.

**NN.   Employment Agreement.**

81.     On the Effective Date, the Debtors will reject Tony Darden's employment agreement, and Tony Darden will enter into a new employment agreement with Sun Holdings, Inc.

**OO.   Issuance of the New Common Stock.**

82.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock, whether on the Effective Date or any other date of a distribution thereafter, pursuant to the terms of the Plan and/or in accordance with this Confirmation Order, comply with section 1145 of the Bankruptcy Code and shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  The issuance of the New Common Stock is or was in exchange for a portion of an Allowed Claim.

83.     In addition, under section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Common Stock shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code

relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

**PP.    Executory Contracts and Unexpired Leases.**

84.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article V of the Plan. Each assumption of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan, including any amendments to each such Executory Contract or Unexpired Lease, shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order. The Cure Notice constituted good, proper, and sufficient notice to Non-Debtor counterparties to Executory Contracts and Unexpired Leases that are being assumed by the Debtors, including notice of the deadline to object to the assumption of such Executory Contracts or Unexpired Leases and the Proposed Cure Amounts. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan.

**QQ.    Good Faith.**

85.    The Debtors and the Released Parties have been acting in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

**RR.    Disclosure of Facts.**

86.    The Debtors have disclosed all material facts regarding the Plan, the Plan Documents, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**SS.    Retention of Jurisdiction.**

87.    The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

88.    **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

89.    **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement and Plan Documents, are hereby

authorized and approved.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

90.    **Objections**.  All objections to Confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order. To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan or other responses, comments, statements, or reservation of rights with respect to Confirmation of the Plan have not been withdrawn prior to entry of this Confirmation Order, such objections or other responses, comments, statements, or reservations of rights shall be, and hereby are, overruled on the merits.

91.    **Combined Notice**.  The Combined Notice complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

92.    **Solicitation**.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and applicable nonbankruptcy law.  To the extent that the Debtors' solicitation was deemed to constitute an offer of new securities, such solicitation was exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act. Specifically, section 4(a)(2) and Regulation D of the Securities Act create an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."  15 U.S.C. § 77d(a)(2).  The Debtors have complied with the requirements of section

4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances was made in a manner that would not constitute a public offering. The solicitation was made only to holders of Class 3—Prepetition Lender Secured Claims, and the sole such holder was understood to be a sophisticated investor as of the Voting Record Date. *See* Regulation D, 17 C.F.R.

93. **Solicitation of Disclosure Statement**. The Disclosure Statement (a) contains adequate information of a kind that is consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects.

94. **Plan Modifications**. The modifications, amendments, and supplements made to the Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the treatment of any Claims or Interests. After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing of the amended Plan and this Confirmation Order with the Court on December 18, 2018, which contain such modifications, and the disclosure of such modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof. Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that Taco Supremo, as the sole holder of a Class 3—Prepetition Lender Secured Claim be afforded an opportunity to change its previously cast vote on the Plan. Taco Supremo, as the sole holder of a Class 3—Prepetition Lender Secured Claim, who voted to accept the solicitation version of the Plan is deemed to accept the Plan as modified. The Plan, as modified, is, therefore,

properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

95.    **Binding Effect**.  On the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all holders of Claims or Interests and such holder's respective successors and assigns (regardless of whether or not (a) the holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Article VIII of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.   All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.   The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.   Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

96.    **No Action Required**.  No action of the respective directors, boards of directors, equity holders, managers, officers, or members of the Debtors or the Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtors, as applicable, to enter into, execute,

deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

97.     **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

98.     **Plan Implementation**.

(a)     In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "***Reorganization Effectuation Statutes***"), without further action by the Court or the equity holders, managers, officers, or directors of any of the Debtors or Reorganized Debtors, the Debtors and the Reorganized Debtors, as well as the managers and officers of the Debtors or Reorganized Debtors are authorized to:  (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Supplement, the Plan Documents, this Order, and the transactions contemplated thereby or hereby, including the transactions identified in Article IV of the Plan, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and

consummate the Plan, the Plan Supplement, and the Plan Documents, including those contracts, instruments, releases, agreements, and documents identified in Article IV of the Plan.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the adoption or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, (ii) issuances and distributions of the New Common Stock, and (iii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, including, without limitation, those contracts, instruments, releases, agreements, and documents identified in Article IV of the Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of this Court, or further action by the respective managers, officers, directors, members, or equity holders of the Debtors or Reorganized Debtors.

(c)     To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, members, and equity holders of the appropriate Debtors or Reorganized Debtors, as applicable.

(d)     All such transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

99.      **Vesting of Assets in the Reorganized Debtors**.  Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Plan Documents), on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property in each Estate, including all Causes of Action, and any property acquired by any of the Debtors shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  To the extent that the retention by the Debtors of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Reorganized Debtors (a) is or shall be a legal, valid and effective transfer, (b) vests or shall vest the Reorganized Debtors with good title to such property, free and clear of all Liens, Claims, changes or other encumbrances, except as provided in the Plan or this Confirmation Order, (c) does not and shall not constitute an avoidable or fraudulent transfer under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) does not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under nonbankruptcy law, including by laws relating to successor or transferee liability.

100.      **Cancellation of Existing Securities and Agreements**.  On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or Interest, including the obligation of the Debtors under the Prepetition Credit Agreement and all TB Holdings Interests,

shall be deemed cancelled and the obligations of the Debtors or Reorganized Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding the releases set forth in Article VIII.F of the Plan, Confirmation, or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided therein; *provided*, *however*, that nothing in the Plan or Confirmation Order shall effectuate a cancellation of any New Common Stock.

101. **New Organizational Documents**. The New Organizational Documents are approved in all respects. The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court, to make modifications to the New Organizational Documents in accordance with the Plan and the Restructuring Support Agreement, and to execute and deliver all agreements, documents, instruments, and certificates relating to the New Organizational Documents and take such other actions as deemed reasonably necessary and appropriate to perform their obligations thereunder. Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the New Organizational Documents will be governed by the choice of law and jurisdictional provisions therein.

102. **Directors and Officers of Reorganized Debtors**. In accordance with Article IV.H of the Plan and the Plan Supplement, the New Board shall consist of one member, composed of Guillermo Perales as the Chairman. The identity of the director of the New Board has been disclosed prior to the Confirmation Hearing. The director of the New Board shall be deemed elected or appointed, as applicable, and authorized to serve as the director of Reorganized Taco

48

Bueno pursuant to the terms of the applicable New Organizational Documents of Reorganized Taco Bueno. Mr. Perales shall also be the sole director of each of the subsidiaries of Reorganized Taco Bueno as of the Effective Date. Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such director and officer hereby is deemed elected and appointed, as applicable, to serve in such capacity as of the Effective Date without further action of the Court, the Reorganized Debtors, or their equity holders.

103. **Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of

any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

104. **Exemption from Registration Requirements**.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution of the New Common Stock, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  The issuance of the New Common Stock is or was in exchange for a portion of an Allowed Claim.

105.  Pursuant to section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Common Stock, shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

106. **Preservation of Rights of Action.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized

Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the List of Retained Causes of Action, as set forth in the Plan. The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. For the avoidance of doubt, the Debtors' failure to specify a Cause of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as an indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

107. Notwithstanding the foregoing, the Debtors shall retain and release all Avoidance Actions. For the avoidance of doubt, the Avoidance Actions shall be released and waived on the Effective Date by the Debtors and shall not vest in the Reorganized Debtors, and the Debtors and the Plan Administrator shall not pursue or prosecute any Avoidance Actions; *provided*, *however*, that notwithstanding anything to the contrary, neither the Debtors nor the Plan Administrator shall waive Avoidance Actions as a defense to any General Unsecured Claims asserted against the Debtors, their Estates, or the Reorganized Debtors, pursuant to section 502(d) of the Bankruptcy Code.

108. **Professional Compensation**. The provisions governing compensation of Professionals set forth in Article II.B and Article IX.B of the Plan are approved in their entirety.

All final requests for Professional Fee Claims through and including the Effective Date shall be Filed no later than 45 days after the Effective Date.  Any objections to Professional Fee Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Fee Claims.

109.    **Subordination.**    Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court: (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

110.    **Release of Liens.**    Except  as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors.  In addition, on or after the Effective Date, the Agent shall execute and deliver all documents reasonably requested by the Reorganized Debtors to

evidence the release of all mortgages, deeds of trust, Liens, pledges, and other security interests, and authorize the Reorganized Debtors to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.

111.   **Assumption of Contracts and Leases.**  Pursuant to Article V of the Plan, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtors are party shall be deemed rejected (a) except as otherwise provided in the Plan or this Confirmation Order or (b) except for any Executory Contract or Unexpired Lease that (i) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (ii) has been previously rejected by a Final Order, in each case of (i) and (ii), subject to the consent of Taco Supremo.  Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Court shall constitute approval of the assumptions provided for in the Plan, including any amendments agreed to by the Debtors during these Chapter 11 Cases to any Executory Contracts or Unexpired Leases being assumed by the Debtors, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Court that the Reorganized Debtors have provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan, as each such Executory Contract and Unexpired Lease may have been amended by agreement of the Debtors during these Chapter 11 Cases, shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, this Confirmation Order, or any Final Order of the Court authorizing and providing for its assumption, or applicable law.

112.   Subject to resolution of any dispute regarding any Cure Claims and except as otherwise provided herein, all Cure Claims shall be satisfied by the Debtors or Reorganized

Debtors, as the case may be, upon assumption or assignment, as applicable, of the underlying contracts and unexpired leases. Except as otherwise provided herein, assumption or assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, if any, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assigned shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

113.    Executory Contracts or Unexpired Leases entered into by the Debtors after the Petition Date remain enforceable after the Effective Date by all parties pursuant to their terms.

114.    **Indemnification**. Pursuant to Article V.D of the Plan, the Indemnification Obligations shall apply only following the prior exhaustion or unavailability of all D&O Insurance Policies, including any Side A coverage thereunder. For purposes of such D&O Liability Insurance Policies, any claims or causes of action against the Debtors' directors and officers shall be deemed to be "Non-Indemnifiable Loss" until all limits, including any Side A excess limits, have been exhausted through payment by the insurers of such D&O Liability Insurance Policies. For the avoidance of doubt, any claims or causes of action against any of the Debtors' directors and/or officers shall not give rise to any Indemnification Obligations unless and until the limits under all Side A coverage of all D&O Liability Insurance Policies have been exhausted or are otherwise unavailable; *provided*, *however*, that to the extent such coverage under such D&O Liability Insurance Policies has been exhausted or is otherwise unavailable, such claims or causes

of action shall constitute Indemnification Obligations, and the Indemnification Obligations shall not be discharged or impaired by Confirmation of the Plan, and, notwithstanding anything in the Plan to the contrary, the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Debtors under the Plan effective as of the Effective Date and shall continue as obligations of the Reorganized Debtors.   No assumption of an Indemnification Obligation shall in any way extend the scope or term of any Indemnification Obligation beyond that contemplated in the applicable agreement governing such Indemnification Obligation.

115.   **Insurance**.  As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (including all D&O Liability Insurance Policies) shall be deemed to be assumed by the Reorganized Debtors under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be Executory Contracts.  Such insurance policies and any agreements, documents, and instruments related thereto shall be assumed by the applicable Debtors or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.

116.   **Distributions**.  All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved.  For the avoidance of doubt, except as otherwise provided in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall affect the Debtors' or the Reorganized Debtors' rights regarding any Claim or Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Claim or Unimpaired Claim, and the right to dispute or object to any such Claim or Unimpaired Claim.

117.   **Issuance of New Common Stock**.  On the Effective Date, Reorganized Taco Bueno is authorized to and shall issue the New Common Stock in accordance with the terms of

the Plan and without the need for any further corporate or shareholder action. All of the New Common Stock when so issued, shall be duly authorized, validly issued, enforceable, and fully paid and non-assessable.

118. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the Committee Settlement, constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies (including the Committee Settlement), as well as a finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

119. **Opt-In Procedures**. The procedures for holders of Allowed Class 4—General Unsecured Claims to elect to opt-in to the Committee Settlement, including the election to opt-in to certain third-party releases as set forth in the Opt-In Procedures in the form attached as **Exhibit G** to the Plan Supplement, the form used to effectuate such process, and the notice of such Opt-In Procedures in the form attached as **Exhibit H** to the Plan Supplement (the "*Opt-In Notice*") are hereby approved in all respects. The Opt-In Notice and the Opt-In Procedures shall be served by the Reorganized Debtors upon the Debtors' known holders of General Unsecured Claims, which service will occur within three (3) Business Days following the Effective Date. The Reorganized Debtors shall cause the Opt-In Notice to be published in *USA Today* (National Edition), and *The*

*Dallas Morning News* in Dallas, Texas, within five (5) Business Days following the Effective Date, and shall make all reasonable payments required for such publication. The provision of notice in accordance with this paragraph shall be deemed good and sufficient notice of the Opt-In Procedures.

120. **Release, Exculpation, Discharge, and Injunction Provisions**. All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Articles VIII.B, VIII.C, VIII.D, VIII.E, VIII.F, VIII.G, and VIII.H of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein, and as if fully set forth herein.

121. **Discharge of Claims and Termination of Interests**. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy

Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

122. **Tax Withholding**. Pursuant to the Plan, including Article VI.C thereof, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors or Reorganized Debtors, as applicable, are authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors or the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

123. **Payment of Statutory Fees**. On the Effective Date and thereafter as may be required, the Reorganized Debtors shall pay all fees incurred pursuant to sections 1911 through

1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Chapter 11 Cases.

124. **Documents, Mortgages and Instruments**. Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

125. **Return of Deposits**. All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "***Deposits***"), whether pursuant to the *Order (I) Approving Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (III) Approving Debtors' Proposed Procedures Resolving Additional Assurance Requests* [Docket No. 155] (the "***Utilities Order***") or otherwise, including, but not limited to, gas, electric, telephone, data, cable, trash, freight, and waste management services, are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, within thirty (30) days following the Effective Date or as otherwise specifically provided in the Utilities Order. Additionally, the Debtors or Reorganized Debtors, as applicable, are hereby authorized to close the Adequate Assurance Account (as defined in the Utilities Order) and utilize such funds in the operation of their businesses.

126. **Committee Objections Withdrawn**. All objections filed by the Committee in these Chapter 11 Cases are hereby deemed withdrawn with prejudice.

127. **Filing and Recording**. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

128. **Continued Effect of Stays and Injunctions**. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

129. **Debtors' Actions Post-Confirmation Through the Effective Date**. During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

130. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan and the Restructuring Transactions at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article IX.C of the Plan, of the conditions precedent to Consummation set forth in Article IX of the Plan.

131. **Nonseverability of Plan Provisions Upon Confirmation**. Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed mutually nonseverable and mutually dependent.

132. **Post-Confirmation Modifications**. Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and the Restructuring Support Agreement, in each case, subject to any applicable consultation and approval rights and conditions set forth therein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve their respective rights prior to the Effective Date to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor or Reorganized Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

133. **Conditions to the Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied pursuant to Article IX.C of the Plan.

134. **Plan Administrator**. Upon the Effective Date, the Plan Administrator shall be appointed to reconcile General Unsecured Claims, effectuate distributions on account thereof from the GUC Cash Pool, and conduct all related services. The Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) make distributions from the GUC Cash Pool as contemplated in the Plan, (b) establish and administer any necessary reserves from the GUC Cash Pool for Disputed Claims that may be required; and (c) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Court such Disputed Claims. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court. For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Allowed General Unsecured Claims. The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid solely from the GUC Cash Pool. The Reorganized Debtors shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties. For the avoidance of doubt, the Plan Administrator may not pursue any Claims or Causes of Action against any of the Released Parties.

135. **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

136. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

137. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

138. **Governmental Agencies.** Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or

operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected.

139. **Waiver of Filings**. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

140. **Waiver of Stay.** This Confirmation Order is a Final Order. For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court. The Debtors and the Reorganized Debtors are authorized to consummate the Plan at any time.

141. **Notice of Entry of the Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>** to all parties who hold a Claim or Interest in these cases, the U.S. Trustee, and other parties in interest. Such notice is

hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

142. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

143. **Termination of Restructuring Support Agreement**. On the Effective Date, the Restructuring Support Agreement will terminate in accordance with sections 11 and 12 thereof.

144. **References to and Omissions of Particular Plan Provisions**. References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

145. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

146. **Effect of Conflict**. This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

147. **Closure of Chapter 11 Cases**. As soon as practicable after the Effective Date, the Reorganized Debtors are authorized to submit an order to the Court that closes and issues a final decree for each of the Chapter 11 Cases.

148.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

149.    **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Court may properly, and upon the Effective Date shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

Submitted by:

**VINSON & ELKINS LLP**

*/s/ Paul E. Heath*
Paul E. Heath (TX 09355050)
Garrick C. Smith (TX 24088435)
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com; gsmith@velaw.com;

- and -

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com

**COUNSEL FOR THE DEBTORS**

## Exhibit A

**Plan of Reorganization**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 18-33678** |
| | § | |
| **TACO BUENO RESTAURANTS, INC., et al.,** | § | **(Chapter 11)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |

## DEBTORS' AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

Paul E. Heath (TX 09355050)
Garrick C. Smith (TX 24088435)
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040

**VINSON & ELKINS LLP**
**COUNSEL FOR THE DEBTORS**

**Dated: December 18, 2018**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677); Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189); Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158). The location of the Debtors' corporate headquarters and the Debtors' service address is: 300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

# TABLE OF CONTENTS

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ............................................................................ 1

    A.    *Defined Terms* .................................................................................. 1
    B.    *Rules of Interpretation* ................................................................... 12
    C.    *Computation of Time* ..................................................................... 12
    D.    *Governing Law* ............................................................................... 13
    E.    *Reference to Monetary Figures* ..................................................... 13
    F.    *Reference to the Debtors or the Reorganized Debtors* ................... 13
    G.    *Consent Rights of the Restructuring Support Parties* ..................... 13
    H.    *Controlling Document* .................................................................... 13

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS** ..................................................................................... 14

    A.    *Administrative Claims* ................................................................... 14
    B.    *Professional Compensation* ........................................................... 14
    C.    *DIP Facility Claims* ........................................................................ 16
    D.    *Priority Tax Claims* ......................................................................... 16
    E.    *Statutory Fees* ................................................................................ 16

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...................... 16

    A.    *Summary of Classification* .............................................................. 16
    B.    *Treatment of Claims and Interests* ................................................ 17
    C.    *Special Provision Governing Unimpaired Claims* .......................... 20
    D.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* ................... 20
    E.    *Elimination of Vacant Classes* ....................................................... 20
    F.    *Subordinated Claims* ...................................................................... 20

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN** ......................................................... 20

    A.    *Restructuring Transactions* ............................................................ 20
    B.    *Corporate Action* ........................................................................... 21
    C.    *Sources of Consideration for Plan Distributions* ........................... 21
    D.    *Continued Corporate Existence* ..................................................... 22
    E.    *Vesting of Assets in the Reorganized Debtors* ............................... 22
    F.    *Cancellation of Existing Securities and Agreements* ...................... 23
    G.    *New Organizational Documents* ..................................................... 23
    H.    *Directors and Officers of the Reorganized Debtors* ....................... 24
    I.    *Effectuating Documents; Further Transactions* ............................. 24
    J.    *Exemption from Certain Taxes and Fees* ....................................... 24
    K.    *Exemption from Registration Requirements* .................................. 25
    L.    *Preservation of Causes of Action* ................................................... 25

i

M.    *Director and Officer Liability Insurance* .................................................26
N.    *Retiree Benefits* .............................................................................................26
O.    *Committee Settlement and GUC Cash Pool* .......................................26
P.    *Plan Administrator* ......................................................................................27

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............27**
   A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases* ..........27
   B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases* ...........28
   C.    *Cure of Defaults and Objections for Assumed Executory Contracts and Unexpired Leases* .....................................................................................28
   D.    *Indemnification Obligations* ....................................................................29
   E.    *Insurance Policies* .......................................................................................30
   F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements* ..................................................................................................30
   G.    *Reservation of Rights* .................................................................................30
   H.    *Nonoccurrence of Effective Date* ............................................................31
   I.    *Contracts and Leases Entered into After the Petition Date* ................31

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS ...................................................................31**
   A.    *Timing and Calculation of Amounts to Be Distributed* ......................31
   B.    *Delivery of Distributions and Unclaimed Property* ............................32
   C.    *Compliance with Tax Requirements* .......................................................33
   D.    *Allocations* ...................................................................................................34
   E.    *No Postpetition Interest on Claims* .........................................................34
   F.    *Setoffs and Recoupment* ............................................................................34
   G.    *Claims Paid or Payable by Third Parties* ...............................................34

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS ...........................................................................................................35**
   A.    *Allowance of Claims and Interests* .........................................................35
   B.    *Claims and Interests Administration Responsibilities* .........................35
   C.    *Estimation of Claims* ..................................................................................36
   D.    *Adjustment to Claims Without Objection* ..............................................36
   E.    *Disallowance of Claims* .............................................................................36
   F.    *No Distributions Pending Allowance* ......................................................37
   G.    *Distributions After Allowance* ..................................................................37
   H.    *Single Satisfaction of Claims* ....................................................................37

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...................37**
   A.    *Compromise and Settlement of Claims, Interests, and Controversies* ..................37
   B.    *Discharge of Claims and Termination of Interests* ..............................38
   C.    *Term of Injunctions or Stays* ....................................................................38

ii

D.     *Release of Liens* ...............................................................................38
E.     *Releases by the Debtors* ....................................................................39
F.     *Releases by Holders of Claims and Interests* ....................................40
G.     *Exculpation* .....................................................................................41
H.     *Injunction* .......................................................................................41
I.     *Protection Against Discriminatory Treatment* ...................................42
J.     *Recoupment* .....................................................................................42
K.     *Subordination Rights* .......................................................................42
L.     *Reimbursement or Contribution* .......................................................43

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN ................................................................**43**

A.     *Conditions Precedent to Confirmation* ..............................................43
B.     *Conditions Precedent to the Effective Date* .......................................43
C.     *Waiver of Conditions* .......................................................................44
D.     *Substantial Consummation* ...............................................................45
E.     *Effect of Non-Occurrence of Conditions to the Confirmation Date or the*
       *Effective Date* ...................................................................................45

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........................**45**

A.     *Modification and Amendments* ..........................................................45
B.     *Effect of Confirmation on Modifications* ...........................................45
C.     *Revocation or Withdrawal of the Plan* ...............................................45

## ARTICLE XI.
## RETENTION OF JURISDICTION ................................................................**46**

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS ................................................................**48**

A.     *Immediate Binding Effect* .................................................................48
B.     *Additional Documents* ......................................................................48
C.     *Reservation of Rights* .......................................................................48
D.     *Successors and Assigns* .....................................................................49
E.     *Service of Documents* .......................................................................49
F.     *Term of Injunctions or Stays* ............................................................50
G.     *Entire Agreement* .............................................................................50
H.     *Exhibits* ...........................................................................................50
I.     *Nonseverability of Plan Provisions* ..................................................50
J.     *Votes Solicited in Good Faith* ...........................................................51
K.     *Dissolution of any Committee* ...........................................................51
L.     *Closing of Chapter 11 Cases* ............................................................51
M.     *No Stay of Confirmation Order* .........................................................51
N.     *Waiver or Estoppel* ...........................................................................51

# INTRODUCTION

Taco Bueno Restaurants, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases jointly propose this prepackaged chapter 11 plan of reorganization. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in Article I.A hereof or the Bankruptcy Code or Bankruptcy Rules. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, projections of future operations, and prepetition sale process, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claim*" means a Claim (other than Secured Lender Adequate Protection Claims and DIP Facility Claims) for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

2.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date. For the avoidance of doubt, the U.S. Trustee shall not be subject to the Administrative Claims Bar Date.

3.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means with respect to any Claim: (a) any Claim, proof of which is timely Filed on or before the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as of the Effective

Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Court (including pursuant to any stipulation approved by the Court); *provided that* with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Rules, or the Bankruptcy Code, or the Court or such an objection is so interposed and the Claim has been Allowed by a Final Order; *provided further* that any Claim described in clauses (a), (b), and (c) above shall not include any Claim on account of a right, option, warrant, right to convert, or other right to purchase an Interest. Except as otherwise specified in the Plan or an order of the Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Any Claim that has been listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Court.

5.      "*Associated Entities*" means with respect to any Person or Entity, such Person's or Entity's Affiliates, current and former officers, managers, members, directors, shareholders, partners, general partners, limited partners, managed accounts and funds, predecessors, successors and assigns, and each of their (or such person's) respective professionals, advisors, accountants, attorneys, financial advisors, investment bankers, consultants, employees, principals, members, shareholders, partners, limited partners, general partners, agents and other representatives, each solely in its capacity as such.

6.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.      "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court other than the Local Rules.

9.      "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the General Bar Date, the Governmental Bar Date, and any other date or dates to be established by an order of the Court by which Proofs of Claim must be Filed.

10.      "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

12.     "*Causes of Action*" means any action, claim, cause of action, controversy, third-party claim, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law.  For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

13.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court; and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Court.

14.     "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

15.      "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Notice and Claims Agent.

16.     "*Class*" means a category of Claims against or Interests in the Debtors as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

17.     "*Committee*" means the Official Unsecured Creditors' Committee (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

18.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

19.     "*Confirmation Date*" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

20.     "*Confirmation Hearing*" means the hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

21.     "*Confirmation Order*" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.     "*Consenting Equity Holders*" means the partners of Tomatillo Holdings L.P., holding 100% of the equity interests in TB Holdings II Parent, Inc.

23. "*Consulting Agreements*" means those certain agreements between the Reorganized Debtors and certain members of the Debtors' management team for post-Effective Date consulting services, substantially in the form attached to the Plan Supplement.

24. "*Consummation*" means the occurrence of the Effective Date.

25. "*Court*" means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Northern District of Texas.

26. "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

27. "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

28. "*Debtors*" means, collectively, the following: CBI Restaurants, Inc.; Taco Bueno Equipment Company; Taco Bueno Franchise Company L.P.; Taco Bueno Restaurants, Inc.; Taco Bueno Restaurants L.P.; Taco Bueno West, Inc.; TB Corp.; TB Holdings II, Inc.; TB Holdings II Parent, Inc.; and TB Kansas LLC.

29. "*Definitive Documentation*" means the definitive documents and agreements governing the Restructuring Transactions and shall include, without limitation: (a) the Plan (and all exhibits thereto) and the Confirmation Order; (b) the Disclosure Statement; (c) the solicitation materials with respect to the Plan; (d) the Consulting Agreements; (e) the New Organizational Documents; and (f) any other documents included in the Plan Supplement. Any document that is included within this definition of "Definitive Documentation," including any amendment, supplement, or modification thereof, shall contain terms and conditions consistent with the Restructuring Support Agreement and shall otherwise be in form and substance reasonably satisfactory to the Debtors and Taco Supremo.

30. "*Description of the Transaction Steps*" means the description of the Restructuring Transactions as set forth in the Plan Supplement.

31. "*DIP Agent*" means Taco Supremo in its capacity as administrative agent and collateral agent under the DIP Facility.

32. "*DIP Facility*" means that certain Credit Agreement, dated as of December 1, 2015, among TB Corp., as borrower, TB Holdings II, Inc., as holding company guarantor, and the agents and lenders thereunder as amended by that certain Debtor in Possession Financing Amendment to Credit Agreement, dated as of November 6, 2018.

33. "**DIP Facility Claim**" means any Claim held by the DIP Lender arising under or related to the DIP Facility.

34. "**DIP Lender**" means the DIP Agent and the lender(s) party to the DIP Facility from time to time. Taco Supremo is the sole DIP Lender as of the Petition Date.

35. "**DIP Lender/Prepetition Lender Equity Distribution**" means 100% of the New Common Stock issued and outstanding as of the Effective Date.

36. "**Disallowed**" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed.

37. "**Disclosure Statement**" means the disclosure statement for the Plan, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, which is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

38. "**Disputed**" means, with respect to any Claim or Interest, that such Claim or Interest that is not yet Allowed.

39. "**Effective Date**" means the date that is a Business Day selected by the Debtors, in consultation with Taco Supremo, on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan becomes effective.

40. "**Employee Claim**" means any Claim against any Debtor arising from the rejection by the Debtors of the prepetition employment contract of any employee that enters into a Consulting Agreement with the Reorganized Debtors.

41. "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

42. "**Estate**" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

43. "**Exculpated Party**" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each Released Party; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entity's Associated Entities.

44. "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

45. "**Federal Judgment Rate**" means the federal judgment rate in effect as of the Petition Date, compounded annually.

46. "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Court or, with respect to the filing of a Proof of Claim or proof of Interest, with the Notice and Claims Agent or the Court through the PACER or CM/ECF website.

47. "**Final DIP Order**" means the *Final Order Authorizing the Debtors to Utilize Cash Collateral, Obtain Postpetition Credit Secured by Senior Liens, Granting Adequate Protection to Prepetition Secured Parties, and Granting Related Relief* [Docket No. 160].

48. "**Final Order**" means (a) an order or judgment of the Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Cases (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

49. "**General Bar Date**" means the date to be set by the Court as the last date for Filing a Proof of Claim.

50. "**General Unsecured Claim**" means any Unsecured Claim against any Debtor (including, for the avoidance of doubt, any Claim arising from the rejection of an Executory Contract or Unexpired Lease) that is not otherwise paid in full or otherwise satisfied during the Chapter 11 Cases pursuant to an order of the Court, other than a Professional Fee Claim, an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim, the Prepetition Lender Deficiency Claim, the TPG Claim, and the Employee Claims.

51. "**Governmental Bar Date**" means the date that is the 180th day after the Petition Date.

52. "**Governmental Unit**" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

53. "**GUC Cash Pool**" means an amount of (a) $900,000 to be distributed Pro Rata to holders of Allowed General Unsecured Claims who opt in to the releases in accordance with the Opt-In Procedures, minus (b) the reasonable and documented fees and expenses of the Plan Administrator.

54. "**GUC Cash Pool Account**" means an interest bearing account with a banking institution of the Committee's choosing established no later than two (2) Business Days prior to the Effective Date and funded by the Debtors on the Effective Date in accordance with Article IV.O of the Plan.

55. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

56. "*Indemnification Obligations*" means each of the Debtors' indemnification obligations for the current and former directors, managers, and officers of the Debtors, whether set forth in the Debtors' bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, remaining after exhaustion or the unavailability of coverage under any and all D&O Liability Insurance Policies, including any Side A coverage thereunder.

57. "*Initial Lender Group*" means those lenders party to the Prepetition Credit Agreement as of December 1, 2015, and who sold their Prepetition Lender Claims to Taco Supremo on the terms set forth in the Disclosure Statement.

58. "*Intercompany Claim*" means any Claim held against one Debtor by another Debtor.

59. "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor.

60. "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests or units of any Debtor, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

61. "*Interim Compensation Order*" means the *Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 150].

62. "*Internal Revenue Code*" means title 26 of the United States Code, 26 U.S.C. §§ 1–9834.

63. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

64. "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

65. "*List of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall be included in the Plan Supplement. For the avoidance of doubt, the List of Retained Causes of Action shall not include any Causes of Action against any Released Parties or any Avoidance Actions.

66. "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas.

67.     "**New Board**" means the initial board of directors, members, or managers, as applicable, of Reorganized Taco Bueno.

68.     "**New Common Stock**" means the common stock of Reorganized Taco Bueno to be issued to Taco Supremo pursuant to the Plan on the Effective Date.

69.     "**New Organizational Documents**" means the form of the certificates or articles of incorporation, certificates of formation, bylaws, operating agreements, or such other applicable formation, organizational, and governance documents of each of the Reorganized Debtors.

70.     "**Notice and Claims Agent**" means Prime Clerk, LLC, the notice, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases, or its successor in that capacity.

71.     "**Opt-In Procedures**" means the procedures set forth on **Exhibit G** of the Plan Supplement for a potential holder of an Allowed General Unsecured Claim to opt-in to certain releases as a condition precedent to receiving a distribution on account of an Allowed General Unsecured Claim from the GUC Cash Pool.

72.     "**Other Priority Claim**" means any Claim against a Debtor other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such claim has not already been paid during the Chapter 11 Cases.

73.     "**Other Secured Claim**" means any Secured Claim other than the Prepetition Lender Secured Claims.

74.     "**Person**" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

75.     "**Petition Date**" means the date on which each Debtor Filed its voluntary petition for relief commencing the Chapter 11 Cases, which date was November 6, 2018.

76.     "**Plan**" means this chapter 11 plan of reorganization, as it may be altered, amended, modified, or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices, and schedules to the Plan.

77.     "**Plan Administrator**" means a plan administrator selected by the Committee on or prior to the Effective Date, in consultation with the Debtors and Taco Supremo, who shall be responsible for reconciling General Unsecured Claims after the Effective Date, effectuating distributions on account thereof from the GUC Cash Pool, and all related services.

78.     "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement), each of which shall be in form and substance reasonably acceptable to the Debtors, and Taco Supremo, to be Filed by the Debtors no later than three Business Days before the deadline to File objections to the Plan, including the following, as

applicable: (a) the Consulting Agreements; (b) the New Organizational Documents of Reorganized Taco Bueno; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) the Description of the Transaction Steps; (e) the identity of the members of the New Board and the officers of Reorganized Taco Bueno as of the Effective Date; (f) the List of Retained Causes of Action; and (g) any other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date consistent with the Restructuring Support Agreement.

79. "***Prepetition Agent***" means Taco Supremo, in its capacity as successor administrative agent under the Prepetition Credit Agreement.

80. "***Prepetition Credit Agreement***" means that certain Credit Agreement, dated as of December 1, 2015, among TB Corp., as borrower, TB Holdings II, Inc., as holding company guarantor, and the agents and lenders thereunder (as amended, restated, modified, or supplemented from time to time prior to the Petition Date).

81. "***Prepetition Lender***" means the lender(s) party to the Prepetition Credit Agreement. Taco Supremo is the sole Prepetition Lender as of the Petition Date.

82. "***Prepetition Lender Claim***" means, any Claim against the Debtors arising under the Prepetition Credit Agreement.

83. "***Prepetition Lender Deficiency Claim***" means any Unsecured deficiency Claim arising under the Prepetition Credit Agreement.

84. "***Prepetition Lender Secured Claim***" means any Secured Claim arising under the Prepetition Credit Agreement.

85. "***Priority Tax Claim***" means any Claim, whether Secured or Unsecured, against a Debtor of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

86. "***Pro Rata***" means, unless indicated otherwise, the proportion that an Allowed Claim in a particular Class that is entitled to a distribution in such Class bears to the aggregate amount of Allowed Claims in that respective Class that are entitled to a distribution in such Class.

87. "***Professional***" means an Entity employed pursuant to a Final Order of the Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

88. "***Professional Fee Claims***" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Court. To the extent the Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Professional Fee Claim.

89.     "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.B.

90.     "*Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated in accordance with Article II.B.3.

91.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

92.     "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

93.     "*Released Party*" means each of the following solely in its capacity as such:  (a) the Debtors and the Debtors' current officers, directors, and managers as of the Petition Date; (b) the Reorganized Debtors; (c) the Prepetition Agent and the Prepetition Lender; (d) Taco Supremo; (e) the DIP Agent and the DIP Lender; (f) the Consenting Equity Holders; (g) the Committee and each of its members; and (h) with respect to each of the foregoing parties under (a) through (g), such Entity and its Associated Entities.

94.     "*Releasing Party*" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Prepetition Agent and the Prepetition Lender; (d) Taco Supremo; (e) the DIP Agent and the DIP Lender; (f) the Consenting Equity Holders; (g) the Committee and each of its members; and (h) with respect to each of the foregoing parties under (a) through (g), such Entity and its Associated Entities.

95.     "*Reorganized Debtors*" means the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

96.     "*Reorganized Taco Bueno*" means TB Holdings or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

97.     "*Reorganized Taco Bueno Equity*" means the New Common Stock.

98.     "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated November 6, 2018, by and among the Debtors and the Restructuring Support Parties, as amended, modified, or supplemented, from time to time.

99.     "*Restructuring Support Parties*" is used as defined in the Restructuring Support Agreement.

100.     "*Restructuring Transactions*" means all actions that may be necessary or appropriate to effectuate the transactions described in, approved by, or contemplated by the Restructuring Support Agreement and the Plan, including the Plan Supplement.

101.     "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed  by the Debtors pursuant to

the Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Effective Date.

102. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified, or supplemented from time to time.

103. "*Secured*" means when referring to a Claim, a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

104. "*Secured Lender Adequate Protection Claims*" means all adequate protection claims arising in favor of the Prepetition Lender under applicable law or pursuant to the Final DIP Order.

105. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

106. "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

107. "*Store 3177 Adversary Proceeding*" means the adversary proceeding commenced or to be commenced by one or more of the Debtors against Rosebriar/Caruth Haven, L.P. seeking, among other things, a declaratory judgement that the Store 3177 Lease was not terminated before the Petition Date.

108. "*Store 3177 Lease*" means the Net Land and Building Lease between Rosbriar/Caruth Haven, L.P., as landlord, and Taco Bueno Restaurants, L.P., as tenant.

109. "*Taco Supremo*" means a special purpose entity created by Affiliates of Sun Holdings, Inc. to purchase all Prepetition Lender Claims of the Initial Lender Group, all as described in the Disclosure Statement.

110. "*TB Holdings*" means debtor TB Holdings II Parent, Inc., a Delaware corporation.

111. "*TB Holdings Interest*" means all Interests in TB Holdings.

112. "*TPG Claim*" means any General Unsecured Claim that TPG Growth III Management, LLC and any of its Affiliates (other than the Debtors) may assert against any of the Debtors.

113.    "**_Unexpired Lease_**" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

114.    "**_Unimpaired_**" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are "unimpaired" within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash or Reinstatement.

115.    "**_Unsecured_**" means, with respect to a Claim, not Secured.

116.    "**_U.S. Trustee_**" means the Office of the United States Trustee for the Northern District of Texas.

117.    "**_U.S. Trustee Fees_**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

118.    "**_Voting Deadline_**" means November 6, 2018 at 1:00 p.m. Central Time.

119.    "**_Voting Record Date_**" means October 31, 2018.

B.    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan and the Restructuring Support Agreement; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Cases.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a

transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* corporate, partnership, or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Consent Rights of the Restructuring Support Parties*

Notwithstanding anything herein to the contrary, any and all consent rights of the Restructuring Support Parties set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.

H.      *Controlling Document*

In the event of an inconsistency between the Plan, the Restructuring Support Agreement, the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,
## AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the latest of:  (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided that* Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date or such other date fixed by the Court.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

B.    *Professional Compensation*

1.    <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through and including the Effective Date, shall be Filed and served on the Reorganized Debtors no later than 45 days after the Effective Date. Each such final request will be subject to approval by the Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, and once approved by the Court, shall be promptly paid from the Professional Fee Escrow Account up to its full Allowed amount.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of all Professional Fee Claims, remaining

unpaid Allowed Professional Fee Claims shall be promptly paid by the Reorganized Debtors without any further action or order of the Court.

Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

2.      Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall not be subject to any Lien and shall be maintained in trust solely for the benefit of the Professionals, including with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order. The funds in the Professional Fee Escrow Account shall not be considered property of the Estates or of the Reorganized Debtors. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be turned over to the Reorganized Debtors without any further action or order of the Court.

3.      Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims before and as of the Effective Date, and shall deliver such estimate to the Debtors and Taco Supremo in writing via email no later than five Business Days before the Effective Date, *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and Taco Supremo shall be entitled to contest the estimated amount of the Professional Fee Claims by initiating a contested matter in the Chapter 11 Cases on or before two (2) Business Days before the Effective Date, and the affected Professional and Taco Supremo shall consent to an emergency hearing before the Court in order to resolve the same. If a Professional does not timely provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or Reorganized Debtors shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred on or after the Effective Date by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Court.

C.    *DIP Facility Claims*

Notwithstanding anything to the contrary herein, on the Effective Date each holder of a DIP Facility Claim shall voluntarily receive, together with its recovery on account of its Allowed Prepetition Lender Secured Claim, the DIP Lender/Prepetition Lender Equity Distribution in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of its DIP Facility Claim.

D.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

E.    *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors or Reorganized Debtors, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or a final decree is issued, whichever occurs first.  All such fees incurred by the Debtors prior to the Confirmation Date shall be paid on or before the Effective Date.  The Reorganized Debtors shall continue to File quarterly-post confirmation operating reports in accordance with the U.S. Trustee's Region 6 Guidelines for Debtors-in-Possession.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

Claims and Interests, except for Administrative Claims, Professional Fee Claims, Cure Claims, DIP Facility Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and the classifications set forth in Classes 1 through 7 shall be deemed to apply to each Debtor.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be seven Classes for each Debtor); *provided that* any Class that is vacant as to a particular Debtor will be treated in accordance with Article III.E below.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Lender Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Deemed to Reject |
| 5 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote |
| 6 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote |
| 7 | TB Holdings Interests | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Interests*

1.    <u>Class 1 – Other Priority Claims</u>

a.    *Classification*:  Class 1 consists of Other Priority Claims.

b.    *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each holder thereof shall receive (i) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (ii) such other treatment as may otherwise be agreed to by such holder, the Debtors, and Taco Supremo.

c.    *Voting*:  Class 1 is Unimpaired under the Plan.  Each holder of an Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Priority Claims will not be entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Secured Claims</u>

a.    *Classification*:  Class 2 consists of Other Secured Claims.

b.    *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each such holder shall receive, at the Debtors' election, either (i) Cash equal to the full Allowed amount of its Claim, (ii) Reinstatement of such holder's Allowed Other Secured Claim, (iii) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such holder, or (iv) such other treatment as may otherwise be agreed to by such holder, the Debtors, and Taco Supremo.

c.    *Voting*:  Class 2 is Unimpaired under the Plan.  Each holder of an Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders

of Other Secured Claims will not be entitled to vote to accept or reject the Plan.

3.    Class 3 – Prepetition Lender Secured Claims

    a.    *Classification*:  Class 3 consists of the Prepetition Lender Secured Claims.

    b.    *Allowance*:  On the Effective Date, the Prepetition Lender Claims shall be deemed Allowed in the aggregate principal amount of $130,912,500 plus any accrued interest, fees, and costs under the Prepetition Credit Agreement as of the Petition Date.

    c.    *Treatment*: On the Effective Date, each holder of an Allowed Prepetition Lender Secured Claim shall receive, together with its recovery on account of the DIP Facility Claims, the DIP Lender/Prepetition Lender Equity Distribution in exchange for and in full and final satisfaction, compromise, settlement, release, and discharge of its Prepetition Lender Secured Claim and any Secured Lender Adequate Protection Claim.

    d.    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Prepetition Lender Secured Claims will be entitled to vote to accept or reject the Plan.

4.    Class 4 – General Unsecured Claims

    a.    *Classification*:  Class 4 consists of all Allowed General Unsecured Claims.

    b.    *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall be eligible to receive its Pro Rata share of the GUC Cash Pool in accordance with the Committee settlement described in Article IV.O of the Plan.

    c.    *Voting*:  Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Intercompany Claims

    a.    *Classification*:  Class 5 consists of all Intercompany Claims.

    b.    *Treatment*:  Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, with the consent of Taco Supremo, shall be cancelled.  No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable.

    c.    *Voting*:  Intercompany Claims are either Unimpaired, in which case the holders of such Intercompany Claims are conclusively presumed to have

accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the holders of such Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Claim will not be entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Interests

a.    *Classification*:  Class 6 consists of all Intercompany Interests.

b.    *Treatment*:  Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, with the consent of Taco Supremo, shall be cancelled.  No distribution shall be made on account of any Intercompany Interests.

To the extent Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the holders of the Reorganized Taco Bueno Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.  For the avoidance of doubt: (i) to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date; and (ii) except as set forth in the Description of the Transaction Steps and in Class 7, no Interests in a Debtor, or Affiliate of a Debtor, held by a Non-Debtor Affiliate of a Debtor will be affected by the Plan.

c.    *Voting*:  Intercompany Interests are either Unimpaired, in which case the holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, in which case the holders of such Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

7.    Class 7 – TB Holdings Interests

a.    *Classification*:  Class 7 consists of all TB Holdings Interests.

b.    *Treatment*:  On the Effective Date, all TB Holdings Interests shall be cancelled, released, discharged, and extinguished.  Holders of TB Holdings Interests shall not receive any distribution on account of such Interests.

c.    *Voting*:  TB Holdings Interests are Impaired under the Plan.  Each holder of a TB Holdings Interest will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each

holder of TB Holdings Interests will not be entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D.      *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests, and the filing of the Plan shall constitute a motion for such relief.

E.      *Elimination of Vacant Classes*

Any Class of Claims that does not contain an Allowed Claim or a Claim temporarily Allowed by the Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.      *Subordinated Claims*

Except as may be the result of the settlement described in Article VIII.A of the Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, with the consent of Taco Supremo, such consent not to be unreasonably withheld, the Reorganized Debtors shall undertake the Restructuring Transactions, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, sale, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates

or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) the issuance of securities, including the New Common Stock, which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (5) the execution and delivery of Definitive Documentation not otherwise included in the foregoing, if applicable; and (6) all other actions that the Debtors determine, in consultation with Taco Supremo, to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

B.     *Corporate Action*

Upon the Effective Date, all actions (whether to occur before, on, or after the Effective Date) contemplated by the Plan shall be deemed authorized and approved by the Court in all respects.  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or (as applicable) before the Effective Date, the appropriate officers or managers of the Debtors or the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Court.  The authorizations and approvals contemplated by this Article IV.B shall be effective notwithstanding any requirements under non-bankruptcy law.

C.     *Sources of Consideration for Plan Distributions*

The Reorganized Debtors shall fund distributions under the Plan as follows:

1.     Cash on Hand

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with Cash on hand, including Cash from operations and the proceeds of the DIP Facility.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors.  The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

2.     Issuance and Distribution of New Common Stock

On the Effective Date, Reorganized Taco Bueno shall be authorized to and shall issue the New Common Stock in accordance with the terms of the Plan without the need for any further corporate action.  All of the New Common Stock, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of the New Common Stock

under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

D.     *Continued Corporate Existence*

Except as otherwise provided in the Plan, the Plan Supplement (including the Description of the Transaction Steps), or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the New Organizational Documents.

On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law and the New Organizational Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing:  (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial, and federal or foreign law).

E.     *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Plan Supplement (including the Description of the Transaction Steps), or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Description of the Transaction Steps), on the Effective Date, all property in each Estate, including all Causes of Action, and any property acquired by any of the Debtors shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Except as otherwise provided for in the Plan, any holder of a Secured Claim, or any agent for such holder that has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, as soon as practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary to cancel and/or extinguish such Liens and/or security interests.  After the Effective Date, the Reorganized Debtors may present Court order(s) or assignment(s) suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors.  The Court order(s) or assignment(s) may

US 5868674

designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred, assigned and/or vested free and clear of. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by this Plan, shall be given prior to the presentation of such Court order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

F.      *Cancellation of Existing Securities and Agreements*

Except as otherwise provided in the Plan, on the Effective Date: (1) the obligations of the Debtors under the Prepetition Credit Agreement, all TB Holdings Interests, and each certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument, agreement, or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be cancelled or extinguished and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; *provided that* notwithstanding the releases set forth in Article VIII.F of the Plan, Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided, further,* that nothing in this section shall effectuate a cancellation of any New Common Stock (if issued), Intercompany Interests, Intercompany Claims, or Indemnification Obligations.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article IV.F shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of a Debtor or any of its counterparties under any Executory Contract or Unexpired Lease to the extent such executory contract or unexpired lease has been assumed by such Debtor or Reorganized Debtor, as applicable, pursuant to the Plan or a Final Order of the Court.

G.      *New Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, the Reorganized Debtors will, on or as soon as practicable after the Effective Date, file their respective New Organizational Documents, as applicable, with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or organization in accordance with the corporate laws of the respective states, provinces, or countries

of incorporation or organization. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities and will comply with all other applicable provisions of section 1123(a)(6) of the Bankruptcy Code regarding the distribution of power among, and dividends to be paid to, different classes of voting securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents, as permitted by the laws of their respective states, provinces, or countries of incorporation and their respective New Organizational Documents. On the Effective Date, the New Organizational Documents, as expressly approved by Taco Supremo, substantially in the forms set forth in the Plan Supplement, shall be deemed to be valid, binding, and enforceable in accordance with their terms and provisions.

H.    *Directors and Officers of the Reorganized Debtors*

As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire automatically, and the New Boards and the officers of each of the Reorganized Debtors shall be appointed in accordance with this Plan, the New Organizational Documents, and the other constituent documents of each Reorganized Debtor. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent known, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Board. To the extent any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

I.    *Effectuating Documents*; *Further Transactions*

On and after the Effective Date, the Reorganized Debtors, the Reorganized Debtors' officers, and the members of the New Boards, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any Securities issued pursuant to the Plan, including the New Common Stock, in the name of and on behalf of Reorganized Taco Bueno or the other Reorganized Debtors, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

J.    *Exemption from Certain Taxes and Fees*

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a Security (including, without limitation, of the New Common Stock) or transfer of property, in each case, pursuant to, in contemplation of, or in connection with, the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and

US 5868674

recordation any instruments of transfer or other relevant documents without the payment of any such tax, recordation fee, or governmental assessment.

K.      *Exemption from Registration Requirements*

The offering, issuance, and distribution of the New Common Stock pursuant to the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without any further act or action by any Entity, from registration under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  Pursuant to section 1145 of the Bankruptcy Code, the New Common Stock issued under the Plan will be freely transferable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

L.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the List of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, including, pursuant to Article VIII hereof, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.L include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of

Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. Notwithstanding to the foregoing, the Debtors shall retain and release all Avoidance Actions. For the avoidance of doubt, the Avoidance Actions shall be released and waived on the Effective Date by the Debtors and shall not vest in the Reorganized Debtors, and the Debtors and the Plan Administrator shall not pursue or prosecute any Avoidance Actions; *provided*, *however*, that notwithstanding anything to the contrary, neither the Debtors nor the Plan Administrator shall waive Avoidance Actions as a defense to any General Unsecured Claims asserted against the Debtors, their Estates, or the Reorganized Debtors, pursuant to section 502(d) of the Bankruptcy Code.

M. *Director and Officer Liability Insurance*

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all D&O Liability Insurance Policies (including tail coverage liability insurance) pursuant to section 365(a) of the Bankruptcy Code to the extent such D&O Liability Insurance Policies are found to be Executory Contracts.[2] Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtors' assumption of each such D&O Liability Insurance Policies, to the extent they are Executory Contracts. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be Filed, and shall survive the Effective Date.

N. *Retiree Benefits*

Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

O. *Committee Settlement and GUC Cash Pool*

No later than two (2) Business Days prior to the Effective Date, the Debtors shall establish the GUC Cash Pool Account and shall fund such account on the Effective Date with $900,000 in Cash to (i) fund a distribution to holders of Allowed General Unsecured Claims in Class 4 who opt in to the releases in accordance with the Opt-In Procedures, attached as **Exhibit G** to the Plan Supplement, and (ii) pay the reasonable and documented fees and expenses of the Plan Administrator. Holders of Allowed General Unsecured Claims in Class 4 shall receive their Pro Rata distribution on the applicable distribution date as calculated by taking into account the aggregate Allowed General Unsecured Claims in dollar amount that opt-in to the releases in

---

[2]    The Debtors anticipate that the Reorganized Debtors shall have no premium or similar costs associated with such assumed policies because the premiums have been prepaid.

accordance with the Opt-In Procedures and after taking into account the Plan Administrator's fees and expenses as outlined in section (ii) of the above sentence. For the avoidance of doubt, the costs and expenses associated with mailing the Opt-In Procedures to holders of General Unsecured Claims shall be paid by the Debtors' Estates and not the GUC Cash Pool.

Any holder of an Allowed General Unsecured Claim who does not timely opt-in to the release in accordance with the Opt-In Procedures shall not be entitled to any distribution from the GUC Cash Pool. Additionally, and for the avoidance of doubt, Allowed General Unsecured Claims shall not include the Prepetition Lender Deficiency Claim, the TPG Claim, or the Employee Claims, and such Claims shall not be entitled to any distribution from the GUC Cash Pool, and the holders of the Prepetition Lender Deficiency Claim, the TPG Claim, and the Employee Claims shall be deemed to waive any right to any such distribution on account of such Claims without any further action on the Effective Date. Notwithstanding the foregoing or anything else in the Plan to the contrary, and for the avoidance of doubt, each holder of an Employee Claim and TPG Growth III Management, LLC and its Affiliates shall each retain any and all of their respective rights and Claims under Article IV. M. and Article V. D. of the Plan.

P.      *Plan Administrator*

Upon the Effective Date, the Plan Administrator shall be appointed to reconcile General Unsecured Claims, effectuate distributions on account thereof from the GUC Cash Pool, and conduct all related services. The Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including the right to (a) make distributions from the GUC Cash Pool as contemplated in the Plan, (b) establish and administer any necessary reserves from the GUC Cash Pool for Disputed Claims that may be required; and (c) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such Disputed Claims. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.

For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Allowed General Unsecured Claims. The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid solely from the GUC Cash Pool. The Reorganized Debtors shall provide the Plan Administrator with reasonable access to all relevant books and records so as to enable the Plan Administrator to carry out its duties.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to reject Executory

Contracts and Unexpired Leases, and all Executory Contracts or Unexpired Leases shall be rejected by the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code without the need for any further notice to or action, order, or approval of the Court, other than: (1) those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; or (2) those that have been previously rejected by a Final Order, in each case, subject to the consent of Taco Supremo.

Entry of the Confirmation Order shall constitute the Court's order approving the assumptions or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to, with the consent of Taco Supremo, alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than three (3) days' notice to the applicable non-Debtor counterparties.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Court within 30 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in any Proof of Claim to the contrary**. Claims arising from or related to the rejection of an Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

C.      *Cure of Defaults and Objections for Assumed Executory Contracts and Unexpired Leases*

The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure Claims that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be filed and served on the Reorganized Debtors on or before 30 days after the Effective Date. If such Cure Claim dispute is not resolved within 7

days of the Reorganized Debtors' receiving such Cure Claim dispute, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Court within 7 days. **Any such request and/or objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Court.** Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure Claim; *provided, however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, order, or approval of the Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Court on or before 30 days after the Effective Date. Any such objection will be scheduled to be heard by the Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure Claim, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the Cure Claim shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy or insolvency-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.    *Indemnification Obligations*

The Indemnification Obligations shall apply only following the prior exhaustion or unavailability of all D&O Liability Insurance Policies, including any Side A coverage thereunder. For purposes of such D&O Liability Insurance Policies, any claims or causes of action against the Debtors' directors and officers shall be deemed to be "Non-Indemnifiable Loss" until all limits, including any Side A excess limits, have been exhausted through payment by the insurers of such D&O Liability Insurance Policies. For the avoidance of doubt, any claims or causes of action against any of the Debtors' directors and/or officers shall not give rise to any Indemnification Obligations unless and until the limits under all Side A coverage of all D&O

Liability Insurance Policies have been exhausted or are otherwise unavailable; *provided, however,* that to the extent such coverage under such D&O Liability Insurance Policies has been exhausted or is otherwise unavailable, such claims or causes of action shall constitute Indemnification Obligations, and the Indemnification Obligations shall not be discharged or impaired by Confirmation of the Plan, and, notwithstanding anything in the Plan to the contrary, the Indemnification Obligations shall be deemed and treated as Executory Contracts assumed by the Reorganized Debtors under the Plan effective as of the Effective Date and shall continue as obligations of the Reorganized Debtors. No assumption of an Indemnification Obligation shall in any way extend the scope or term of any Indemnification Obligation beyond that contemplated in the applicable agreement governing such Indemnification Obligation.

E.    *Insurance Policies*

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be deemed to be assumed by the Reorganized Debtors under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be Executory Contracts and entry of the Confirmation Order shall constitute approval of the Reorganized Debtors' assumption of each such insurance policy and any agreements, documents, or instruments relating thereto; *provided, however,* from and after the Effective Date, such insurance policies may be replaced or modified in Taco Supremo's discretion. For the avoidance of doubt, D&O Liability Insurance Policies are provided for in Article IV.M hereof.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases, with the consent of Taco Supremo, shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.    *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.    Accordingly, such contracts and leases that have not been rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
# PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class; *provided, however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan.    To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.    If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.    Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Delivery of Distributions and Unclaimed Property*

    1.    <u>Delivery of Distributions</u>

        a.    Delivery of Distributions in General

Except as otherwise provided herein, distributions to holders of an Allowed Claim or Interest shall be made as follows:  (1) at the address set forth in the Debtors' or Reorganized Debtors' books and records; (2) at the address set forth in any written notice of address changes delivered to the Reorganized Debtors after the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors and the Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

In the event that any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until the Debtors or the Reorganized Debtors, as applicable, are notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Debtors or the Reorganized Debtors to attempt to locate holders of undeliverable distributions.

        b.    Delivery of Distributions to Prepetition Lender

The Prepetition Agent shall be deemed to be the holder of all Prepetition Lender Secured Claims for purposes of distributions to be made under the Plan, and all distributions on account of the Prepetition Lender Secured Claims shall be made to the Prepetition Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, the Prepetition Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of Allowed Prepetition Lender Secured Claims in accordance with the terms of the Prepetition Credit Agreement and the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition Agent shall not have any liability to any Person with respect to distributions made or directed to be made by the Prepetition Agent.  For the avoidance of doubt, on the Effective Date, the Prepetition Lender Deficiency Claim shall be waived and not entitled to any distribution on account of such Claim without any further action.

        c.    Delivery of Distributions on DIP Facility Claims

The DIP Agent shall be deemed to be the holder of all DIP Facility Claims for purposes of distributions to be made under the Plan, and all distributions on account of such DIP Facility Claims shall be made to the DIP Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of DIP Facility Claims in accordance with the terms of the DIP Facility, subject to any modifications to such distributions in accordance with the terms of the Plan.  Notwithstanding anything in the Plan to the contrary,

and without limiting the exculpation and release provisions of the Plan, the DIP Agent shall not have any liability to any Person with respect to distributions made or directed to be made by the DIP Agent.

        d.      Delivery of Distributions from GUC Cash Pool

The Plan Administrator shall be solely responsible for all distributions to holders of Allowed General Unsecured Claims entitled to any distribution from the GUC Cash Pool and the GUC Cash Pool Account.

        2.    <u>Minimum Distributions</u>

No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

Holders of Allowed Claims entitled to distributions of $50.00 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder shall be forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or their property.

        3.    <u>Unclaimed Property</u>

In the event that any distribution is returned as undeliverable or is unclaimed, such distribution shall remain in the Debtors' possession until such time as a distribution becomes deliverable or such holder accepts distribution, or such distribution reverts back to the Debtors or Reorganized Debtors, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the date of attempted distribution. After such date all unclaimed property or interest in property shall revert to the Reorganized Debtors, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

C.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors or the Reorganized Debtors, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient

funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors or the Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

D.      *Allocations*

The aggregate consideration to be distributed to each holder of an Allowed Claim will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claims, if any.  Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

E.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

F.      *Setoffs and Recoupment*

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off against, or recoup from, any Claim against a Debtor of any nature whatsoever that the applicable Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim against a Debtor hereunder shall constitute a waiver or release by the applicable Debtor of any such Claim it may have against the holder of such Allowed Claim.

G.      *Claims Paid or Payable by Third Parties*

1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full an Allowed Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided that* the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the holder prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to Debtors or the Reorganized Debtors, as applicable, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the Petition Date.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount

owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

      2.    <u>Claims Payable by Insurers</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court; *provided that* the Debtors or the Reorganized Debtors, as applicable, shall provide 21 days' notice to the holder of such Claim prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.

      3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS**

A.    *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.    *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtors or Reorganized Debtors, as applicable, by order of the Court, shall together have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle or

compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection.  In the event that the Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

D.    *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

E.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY**

**NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

F.      *No Distributions Pending Allowance*

No payment or distribution provided under the Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in Article VII, unless and until such Disputed Claim becomes an Allowed Claim; *provided that* any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

G.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals shall be paid to the holder of such Allowed Claim on account of such Allowed Claim unless required under applicable bankruptcy law or as otherwise provided herein.

H.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim plus applicable interest.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, which distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair,

US 5868674

equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B. *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in any contract, instrument, or other agreement or document created pursuant to the Plan and the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C. *Term of Injunctions or Stays*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D. *Release of Liens*

**Except as otherwise specifically provided in the Plan, or in any other contract, instrument, agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors.**

E.      *Releases by the Debtors*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors, that the Debtors, their Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.E do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.E shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best

interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such releases.

F.     *Releases by Holders of Claims and Interests*

     As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Estate, Reorganized Debtor, and Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the Prepetition Credit Agreement, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that except as expressly provided under the Plan, the foregoing releases shall not release obligations arising under agreements among the Releasing Parties and the Released Parties other than the Debtors. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Article VIII.F do not release any post-Effective Date obligations of any party or Entity under the Plan, including under any of the Restructuring Transactions; and (ii) nothing in this Article VIII.F shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

     Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1)

in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

G.    *Exculpation*

        Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, liability, or remedy for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in- or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission by such Exculpated Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    *Injunction*

        Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized

Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin (x) any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan or (y) any holder of a General Unsecured Claim who does not opt in to the releases as set forth in the Opt-In Procedures from bringing an action against any non-Debtor Released Party.

I.     *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.     *Recoupment*

In no event shall any holder of an Allowed Claim be entitled to recoup against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

K.     *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination

rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

L.      *Reimbursement or Contribution*

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.      the Restructuring Support Agreement shall not have been breached or terminated and shall remain in full force and effect;

2.      an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Court;

3.      the Confirmation Order shall have been entered by the Court in form and substance reasonably acceptable to the Debtors, Taco Supremo, and the Consenting Equity Holders (solely to the extent the Confirmation Order adversely impacts the Consenting Equity Holders' rights and treatment under the Plan); and

4.      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, shall have been Filed subject to the terms hereof.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.      the Confirmation Order shall have been entered and the Confirmation Order shall have become a Final Order that has not been stayed, modified, or vacated on appeal;

2.      the Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or

supplements made after the Confirmation Date but prior to the Effective Date, shall be in form and substance reasonably acceptable to the Debtors, Taco Supremo, and the Consenting Equity Holders (solely to the extent such document adversely impacts the Consenting Equity Holders' rights and treatment under the Plan);

3.      all other Definitive Documentation shall have been effected or executed in accordance with the terms hereof and in accordance with the Restructuring Support Agreement;

4.      all conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

5.      the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions;

6.      all required governmental and third-party approvals and consents, including Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

7.      all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements;

8.      the Store 3177 Adversary Proceeding shall have resulted in a Final Order declaring that the Store 3177 Lease was not terminated before the Petition Date, that any purported termination of the Store 3177 Lease was ineffective, and that Taco Bueno Restaurants, L.P.'s tenancy under the Store 3177 Lease became property of the Estate of Taco Bueno Restaurants, L.P. on the Petition Date;

9.      the GUC Cash Pool Account shall have been funded in the amount of $900,000; and

10.      all Allowed Professional Fee Claims approved by the Court shall have been paid in full and the Professional Fee Escrow Account shall have been funded in the Professional Fee Reserve Amount.

C.      *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by the Debtors, with the consent of Taco Supremo (such consent not to be unreasonably withheld), without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan; *provided*, *however*, that the conditions precedent in Article IX.B.9 may not be waived.

D.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

E.      *Effect of Non-Occurrence of Conditions to the Confirmation Date or the Effective Date*

If the Confirmation Date and/or the Effective Date do(es) not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity in any respect; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, those restrictions on modifications set forth in the Plan, and the terms of the Restructuring Support Agreement, the Debtors expressly reserve their rights to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Notwithstanding the foregoing, the Debtors may not alter, amend or modify Article IV.L, Article IV.O, Article IV.P or Article IX.B.9 of the Plan without the express written consent of the Committee or the Plan Administrator, as applicable.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of

Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections relating to any of the foregoing;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.    resolve any matters related to: (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, any Cure Claims, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Debtors (with the consent of Taco Supremo) or the Reorganized Debtors, as applicable, amending, modifying, or supplementing, pursuant to Article V hereof, the Schedule of Assumed Executory Contracts and Unexpired Leases; and (c) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.    ensure that distributions to holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor;

7.    adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and the Restructuring Support Agreement, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Restructuring Support Agreement;

9.      enter and enforce any order for the sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Restructuring Support Agreement;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.I.1 hereof;

14.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.      determine any other matters that may arise in connection with or relate to the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring Transactions;

17.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.      hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.     enforce all orders previously entered by the Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code;

23.     enter an order concluding or closing the Chapter 11 Cases;

24.     enforce the Committee settlement described in Article IV.O hereof; and

25.     enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all holders of Claims or Interests (regardless of whether the holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs.  Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

D.    *Successors and Assigns*

    The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

E.    *Service of Documents*

    Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtors shall be served on:

| | |
|---|---|
| **Debtors or Reorganized Debtors** | **Taco Bueno Restaurants, Inc.** <br> 300 East John Carpenter Freeway, Suite 800 <br> Irving, Texas 75062 <br> Attn:  President |
| **Counsel for the Debtors** | **Vinson & Elkins LLP** <br> 666 Fifth Avenue, 26th Floor <br> New York, New York  10103-0040 <br> Attn:  David S. Meyer <br>        Jessica C. Peet <br><br> -and- <br><br> **Vinson & Elkins LLP** <br> Trammell Crow Center <br> 2001 Ross Avenue, Suite 3900 <br> Dallas, Texas 75201 <br> Attn:  Paul E. Heath <br>        Garrick C. Smith |
| **Counsel to Taco Supremo** | **Scheef & Stone, L.L.P.** <br> 500 N. Akard, Suite 2700 <br> Dallas, Texas 75201 <br> Attn:  Peter C. Lewis <br><br> -and- <br><br> **Sun Holdings, Inc.** <br> 4055 Valley View Ln, Suite 500 <br> Dallas, Texas 75244 <br> Attn: Tim Comer |
| **Counsel to the Committee** | **Kilpatrick Townsend & Stockton LLP** <br> 1114 Avenue of the Americas |

New York, New York  10036
Attn:  David M. Posner
        Gianfranco Finizio

-and-

**Kilpatrick Townsend & Stockton LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Attn:  Patrick J. Carew

F.     *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.     *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.     *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://Cases.primeclerk.com/tacobueno or the Court's website at www.txn.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

I.     *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided that* any such alteration or interpretation shall be acceptable to the Debtors and Taco Supremo.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it

may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' and Taco Supremo's consent; and (3) nonseverable and mutually dependent.

J.  *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Prepetition Agent, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.  *Dissolution of any Committee*

On the Effective Date, any Committee shall automatically dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any Committee after the Effective Date, save and except for any amounts reasonably necessary for preparing fee applications for the Committee's Professionals or expense reimbursement applications for members of such Committee, which amounts shall be provided in such fee applications.

L.  *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

M.  *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

N.  *Waiver or Estoppel*

Except with respect to the Restructuring Support Agreement and the parties thereto, each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors or Reorganized Debtors' right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court or the Notice and Claims Agent prior to the Confirmation Date.

* * * *

Respectfully submitted, as of the date first set forth above,

Dated: December 18, 2018                    Taco Bueno Restaurants, Inc.
                                          on behalf of itself and all other Debtors


/s/   *Haywood Miller*
Haywood Miller
Chief Restructuring Officer
1800 M Street NW, Second Floor
Washington, D.C. 20036

## **Exhibit B**

**Proposed Confirmation Order Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 18-33678** |
| **TACO BUENO RESTAURANTS, INC.,** | § | **(Chapter 11)** |
| ***et al.*,** | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |
| | § | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING
THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN
OF REORGANIZATION AND (II) OCCURRENCE OF THE EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on December [•], 2018, the Honorable Stacey G. C. Jernigan , United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "**Court**"), entered the order [Docket No. __] (the "**Confirmation Order**") confirming the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 21] (as amended, modified, or supplemented, the "**Plan**") and approving the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 22].[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____], 201[8].

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in the Chapter 11 Cases can be found on the docket of the Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at https://cases.primeclerk.com/tacobueno.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Reorganized Debtors, any holder of a Claim against or Interest in the Debtors and such holder's respective successors, assigns, and designees,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: CBI Restaurants, Inc. (3490); Taco Bueno Equipment Company (0677); Taco Bueno Franchise Company L.P. (2397); Taco Bueno Restaurants, Inc. (8214); Taco Bueno Restaurants L.P. (6189); Taco Bueno West, Inc. (6200); TB Corp. (8535); TB Holdings II, Inc. (7703); TB Holdings II Parent, Inc. (3347); and TB Kansas LLC (6158). The location of the Debtors' corporate headquarters and the Debtors' service address is: 300 East John Carpenter Freeway, Suite 800, Irving, Texas 75062.

[2] Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Claims shall be 30 days after the Effective Date and the deadline for filing requests for payment of Professional Fee Claims shall be 45 days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Court and serve a copy of such request for notice on counsel to the Reorganized Debtors, listed below.  You must do this even if you filed such a notice prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: December [__], 2018
Dallas, Texas

**VINSON & ELKINS LLP**
*/s/*
Paul E. Heath (TX 09355050)
Garrick C. Smith (TX 24088435)
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
pheath@velaw.com; gsmith@velaw.com;

- and -

David S. Meyer (admitted *pro hac vice*)
Jessica C. Peet (admitted *pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com

**COUNSEL FOR THE DEBTORS**

US 5969520