

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 23, 2019**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11** |
| | § | |
| **TACO BUENO RESTAURANTS, INC.,** *et al.*,[†] | § | **CASE NO. 18-33678-sgj** |
| | § | |
| **Reorganized Debtors.**[*] | § | **(Jointly Administered)** |

### MEMORANDUM OPINION AND ORDER REGARDING
### REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE
### CLAIM OF THOMAS GOODNER ESTATE AND FALLIS A. BEALL,
### DBA ELK PLAZA SHOPPING CENTER [ECF NO. 361]

---

[†]    The "Reorganized Debtors" are the debtor entities that emerged from the above-styled Chapter 11 cases upon confirmation of the **Plan** (as defined herein), which entities, along with the last four digits of each entity's federal tax identification number, are as follows:   CBI Restaurants, Inc. (3490);   Taco Bueno Equipment Company (0677);   Taco Bueno Franchise Company L.P. (2397);   Taco Bueno Restaurants, Inc. (8214);   Taco Bueno Restaurants L.P. (6189);   Taco Bueno West, Inc. (6200);   TB Corp. (8535);   TB Holdings II, Inc. (7703);   TB Holdings II Parent, Inc. (3347);   and TB Kansas LLC (6158).

[*]    Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the Objection or, where applicable, the meaning as set forth in the Plan.   The rules of interpretation set forth in Article I.B of the Plan apply unless otherwise indicated.

Before the Court is a contested matter regarding a request for payment of an administrative-expense claim filed by Thomas Goodner Estate and Fallis A. Beall, dba Elk Plaza Shopping Center [ECF No. 361] ("**Elk Plaza**") that the **Reorganized Debtors** objected to [ECF No. 363] as untimely under the Chapter 11 plan, which the Court confirmed on December 20, 2019. For the reasons set forth below, the Court denies Elk Plaza's request entirely and sustains the Reorganized Debtors' objection. This memorandum opinion encompasses the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9013.

## I.
## JURISDICTION

Bankruptcy subject matter jurisdiction exists in this matter pursuant to 28 U.S.C. § 1334(b). This bankruptcy Court has authority to exercise bankruptcy subject-matter jurisdiction pursuant to 28 U.S.C. § 157(a), (b), and (c) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33) for the Northern District of Texas dated August 3, 1984. This is a core proceeding in which this Court has statutory authority to issue final orders pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II.
## FINDINGS OF FACT

### A. BACKGROUND

By way of background, each of the above-referenced debtors ("**Debtors**"), Taco Bueno Restaurants, Inc., *et al.* ("**Taco Bueno**"), filed voluntary petitions commencing these cases for relief under Chapter 11 of the Bankruptcy Code on November 6, 2018 (the "**Chapter 11 Cases**"). Taco Bueno sought "to preserve the legacy of its brand and regional tradition, to protect thousands of jobs for its local and loyal employees, and to transition ownership as part of a comprehensive

deleveraging transaction"[1] by restructuring its lease footprint and renegotiating existing leases to optimize profitability.[2]  Prior to commencing these Chapter 11 Cases, Taco Bueno faced pressure from the prospect of approximately 140 landlords exercising remedies against the Debtors by threatening to evict Taco Bueno from profitable stores[3]  In addition to these landlords, Taco Bueno relies on various vendors to provide them with the perishable goods necessary to operate their business and serve their customers.[4]  For these reasons and others, time was of the essence to ensure that Taco Bueno could quickly emerge from this bankruptcy to reduce administrative costs, enable the Reorganized Debtors and Taco Supremo, LLC to implement their business strategy going forward, and reduce the uncertainty for Taco Bueno's stakeholders.[5]  Time was also of the essence for these vendors and landlords to request payment to maximize the recoveries of all administrative and priority creditors.[6]

## B.    TACO BUENO REJECTS ITS LEASE WITH ELK PLAZA.

As part of Taco Bueno's need to close underperforming stores not providing any benefit to the estates, the Court entered the *Order Authorizing and Approving Expedited Procedures for the Debtors to Reject Unexpired Lease* [ECF No. 154] (the "**Lease-Rejection Order**") on November 30, 2018.[7]  Then, Taco Bueno filed and served on December 3, 2018 the *Debtors' First Notice*

---

[1]    Decl. Haywood Miller in Support of Ch. 11 Pets. & First Day Pleadings ¶ 7, at 3 (Nov. 6, 2018), ECF No. 5.

[2]    *Id*. ¶ 9, at 4.

[3]    *Id*. ¶¶ 14, 31, 42, at 6, 15, 19;   Disclosure Statement art. I, pt. A, ¶ 2, at 8 (Nov. 7, 2018), ECF No. 22;   *id*. art. II, pt. C, ¶ 2, at 23.

[4]    Decl. Miller First Day Pleadings ¶¶ 41, 77, at 18–19, 58.

[5]    *Id*. ¶ 57, at 26–27;   *see* Decl. Haywood Miller in Support of Confirmation Debtors' Joint Prepack. Ch. 11 Plan Reorg.¶ 57, at 23 (Dec. 17, 2018), ECF No. 213.

[6]    Disclosure Statement art. II, pt. D, ¶ 10, at 27.

[7]    Debtors' Mot. Entry Order Authorizing & Approving Expedited Procedures Reject Unexpired Leases ¶ 6, at 2–3 (Nov. 7, 2018), ECF No. 23.

*of Rejection of Certain Unexpired Leases of Nonresidential Real Property* [ECF No. 171] ("**Lease-Rejection Notice**") wherein Taco Bueno provided notice of their intent to reject a lease with Elk Plaza according to the Court's Lease-Rejection Order. Elk Plaza's lease with Taco Bueno was deemed rejected as of December 3, 2018.

Thereafter, the noticing agent for Taco Bueno, Prime Clerk LLC ("**Prime Clerk**"), served Elk Plaza with a copy of this Lease-Rejection Notice by first-class mail and email on December 3rd.[8] Elk Plaza, through its attorney Michael A. Bickford at Fuller Tubb & Bickford, PLLC, then filed a *Notice of Appearance and Request for Service of Papers* [ECF No. 176] ("**Notice of Appearance**") on December 5, 2018.[9] As a registered CM/ECF user, Elk Plaza consented, by and through Bickford as its counsel, to electronic service for all documents electronically filed by the notice of electronic filing generated by CM/ECF.[10]

**C.    ELK PLAZA RECEIVED NOTICE OF THE ADMINISTRATIVE CLAIMS BAR DATE.**

On December 18, 2018, Taco Bueno filed their *Debtors' Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [ECF No. 219] ("**Plan**"). Pursuant to the Plan,

---

[8]    Aff. Service at 1, 10, (Dec. 6, 2018), ECF No. 179.

[9]    Subsequently, Applicant, by and through its counsel James N. Richard at Ferguson & Associates, LLC, filed a second *Notice of Appearance and Request for Service of Papers* [ECF No. 360] on May 1, 2019.

[10]    *See* ECF Administrative Procedures Manual art. III, pt. E, ¶ 2 (last revised Dec. 1, 2016).

Administrative Claims[11] were required to be filed by the Administrative Claims Bar Date.[12] The Administrative Claims Bar Date, in turn, was set as "(a) with respect to Administrative Claims other than Professional Fee Claims,. . . 30 days after the Effective Date; and (b) with respect to Professional Fee Claims . . . 45 days after the Effective Date."[13]

Article II.A. of the Plan provides, in pertinent part, as follows regarding the timing of Administrative Claims:

> Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash . . . as soon as reasonably practicable after the date such Administrative Claim is Allowed . . . ; *provided that* Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

> Except as otherwise provided in this Article II.A., requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against

---

[11] Article I of the Plan defines the term "Administrative Claim" in pertinent part as follows:

> [A] Claim (other than Secured Lender Adequate Protection Claims and DIP Facility Claims) for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

("**Administrative Claims**"). Ex. A to Confirmation Order art. I, pt. A, no. 1, at 72, ECF No. 242.

[12] *See id*. art. II, pt. A, at 85.

[13] *Id*. art. I, pt. A, no. 2, at 72.

the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.[14 & 15]

In addition to service by the Court's automatic CM/ECF notice, Prime Clerk served Elk Plaza with the Plan on December 18th by first-class mail and e-mail.[16]

On December 19, 2018, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Debtors' Disclosure Statement and (II) Confirming the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [ECF No. 242] ("**Confirmation Order**")[17] approving the Disclosure Statement and confirming the Plan. The Confirmation Order attached the Plan as Exhibit A, which contained the same Article II.A. of the Plan that ordered that "requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the

---

[14] *Id*. art. II, pt. A, at 85 (second emphasis added).

[15] Article I of the Plan defines the term "Allowed" in pertinent part as follows:

> [W]ith respect to any Claim: (a) any Claim, proof of which is timely Filed on or before the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Court (including pursuant to any stipulation approved by the Court); *provided that* with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court or such an objection is so interposed and the Claim has been Allowed by a Final Order; . . . .

> *Id*. art. I, pt. A, no. 4, at 72–73.

[16] Ex. A to Aff. Serv. at 5 (Dec. 21, 2018), ECF No. 249.

[17] Earlier versions of the Confirmation Order were entered on December 19 and 20, 2018. *Compare* Findings Fact, Conclusions Law, & Order (I) Approving Debtors' Disclosure Statement & (II) Confirming the Debtors' Joint Prepackaged Chapter 11 Plan Reorganization (entered Dec. 19, 2018), ECF No. 235, *with* Findings Fact, Conclusions Law, & Order (I) Approving Debtors' Disclosure Statement & (II) Confirming the Debtors' Joint Prepackaged Chapter 11 Plan Reorganization (entered Dec. 20, 2018 at 13:06:37), ECF No. 241, *and* Findings Fact, Conclusions Law, & Order (I) Approving Debtors' Disclosure Statement & (II) Confirming the Debtors' Joint Prepackaged Chapter 11 Plan Reorganization (entered Dec. 20, 2018 at 13:13:03), ECF No. 242. For purposes of this Objection, the Reorganized Debtors will refer to the Confirmation Order with the CM/ECF number 242.

---

Confirmation Order no later than the Administrative Claims Bar Date."[18]   Again, in addition to service by the Court's automatic CM/ECF notice,[19] Prime Clerk served Elk Plaza on December 20th by first-class mail and e-mail.[20]

On January 2, 2019, the Debtors filed the *Notice of (I) Entry of Order Confirming the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization and (II) Occurrence of the Effective Date* [ECF No. 264] ("**Notice of Plan Confirmation and Effective Date**").   The Notice of Effective Date notified creditors and parties in interest that (a) the Effective Date of the Plan "occurred on **December 31, 2018**" ("**Effective Date**"), (b) "the deadline for filing requests for payment of Administrative Claims shall be **Monday, January 31, 2019**," ("**Administrative Claims Bar Date**") and (c) "the deadline for filing requests for payment of Professional Fee Claims shall be **Thursday, February 14, 2019**."[21]

Elk Plaza was served with the Notice of Plan Confirmation and Effective Date four times: (i) to Elk Plaza's counsel on January 2nd by the Court's automatic CM/ECF notice,[22] (ii) to Elk Plaza's counsel on January 3rd by first-class mail from Prime Clerk, (iii) to Elk Plaza's counsel on January 3rd by e-mail from Prime Clerk,[23] and (iv) to Elk Plaza directly on January 3rd by first-class mail from Prime Clerk.[24]   Accordingly, under the Plan, the Confirmation Order, and the Notice of Plan Confirmation and Effective Date, Elk Plaza received notice that requests for

---

[18]   Ex. A to Confirmation Order art. II, pt. A, at 85, ECF No. 242.

[19]   Cert. Not. at 131, 303 (Dec. 22, 2018), ECF No. 253.

[20]   Ex. A to Aff. Serv. at 4 (Dec. 26, 2018), ECF No. 257.

[21]   Notice of Effective Date at 1–2, ECF. No. 264.

[22]   BNC at 131 (Dec. 22, 2018), ECF No. 253.

[23]   Ex. A to Aff. Serv. at 4 (Jan. 8, 2019), ECF No. 270.

[24]   Ex. B to Aff. Serv. at 101.

payment of an Administrative Claim were due on or before January 31, 2019—the Administrative Claims Bar Date.[25]

## D.   ELK PLAZA FILED A PROOF OF CLAIM BEFORE JANUARY 31ST.

As of the Administrative Claims Bar Date, several creditors filed request for payment of Administrative Claims.[26]   Specifically, two other landlords—Vera Cruz Properties, LLC and Leaf Capital Funding, LLC—filed requests for payment of Administrative Claims on January 30, 2019.[27]   The creditors and the Reorganized Debtors resolved these Administrative Claims.[28] However, before the Administrative Claims Bar Date, Elk Plaza filed an entirely different claim than these other creditors.

Elk Plaza filed a *Proof of Claim* [Claim No. 36-1] on the Official Form 410 on January 18, 2019 (the "**Proof of Claim**").   The preface in the first paragraph of the Proof of Claim explicitly informed counsel for Elk Plaza as follows:

> **Read the instructions before filling out this form.   This form is for making a claim for payment in a bankruptcy case.   Do not use this form to make a request for payment of an administrative expense.   Make such a request according to 11 U.S.C. § 503.**[29]

---

[25]   *See* Ex. A to Confirmation Order art. II, pt. A, at 85;   *id.* art. I, pt. A, no. 2, at 72;   Notice of Effective Date at 2. Note that the *Chapter 11 Post–Confirmation Order* [ECF No. 247] designated the deadline for filing Administrative Claims and as February 19, 2019 "unless the confirmation order or plan provides otherwise."   As the Confirmation Order and Plan provide otherwise, those deadlines govern.

[26]   *E.g.*, Fireeye, Inc.'s Req. Allow. & Pay. Admin. Expense Claim at 1 (Jan. 30, 2019), ECF No. 282.

[27]   *See, e.g.*, Vera Cruz Properties, LLC's Appl. Admin. Expense Claim at 1 (Jan. 30, 2019), ECF No. 283;   Leaf Capital Funding, LLC's Appl. Admin. Expense Claim at 1 (Jan. 30, 2019, ECF No. 284.

[28]   *See, e.g.*, Order Granting Appl. Admin. Expense Claim of Vera Cruz Properties LP at 1–2 (Apr. 12, 2019), ECF No. 355;   Leaf Capital Funding, LLC's Withdr. Appl. Admin. Expense Claim at 1 (Apr. 18, 2019, ECF No. 356; Fireeye, Inc.'s Not. Withdr. Doc. at 1–2 (June 17, 2019), ECF No. 366.

[29]   Proof of Claim at 1 (Jan. 18, 2019), Claim No. 36-1.

In one section, counsel for Elk Plaza checked that part of this claim was entitled to a priority under subsection 507(a)(2).[30] In Exhibit A to the Proof of Claim, counsel for Elk Plaza indicated that $10,600.00 was entitled to § 507(a)(2) priority for "rent due while Taco Bueno was operating at the premises post-petition under Chapter 11."[31] It is this Proof of Claim that is at the heart of the current contested matter.

### E. ELK PLAZA FILED AN APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES ON MAY 1ST.

While already represented by counsel, Elk Plaza filed a second *Notice of Appearance and Request for Service of Papers* [ECF No. 360] on May 1, 2019, by and through different counsel James N. Richard at Ferguson & Associates, LLC. That same day, Elk Plaza filed its *Request for Allowance and Payment of Administrative Expense Claim of Thomas Goodner Estate and Fallis A. Beall, dba Elk Plaza Shopping Center* [ECF No. 361] ("**Application**"). In the Application, Elk Plaza sought payment pursuant to a certain lease agreement with Taco Bueno Restaurants, L.P. in total amount either of $8,600.00 or $10,600, depending on the rejection date (the "**Administrative Claim**").[32] Elk Plaza alleged that the Taco Bueno debtor did not pay rent whole operating at the premises after the commencement of the Chapter 11 Cases from November 7, 2018 to either December 19th or 31st.[33] Elk Plaza did not reference the Proof of Claim in the Application.[34]

---

[30] *Id*. at 3.

[31] Ex. A to *id*. at 4.

[32] Application ¶¶ 2, 4, at 1–2.

[33] *Id*. ¶ 4, at 2.

[34] *See id*. at 1–2.

In response, the Reorganized Debtors filed its *Objection of Reorganized Debtors to Thomas Goodner Estate and Fallis A. Beall, dba Elk Plaza Shopping Center's Application for Allowance and Payment of Administrative Expense Claim* [ECF No. 363] ("**Objection**") on May 23, 2019. The Objection can be summarized as seeking to enforce the Administrative Claims Bar Date in the Confirmation Order because Elk Plaza received several notices of the Administrative Claims Bar Date but filed the Application approximately three months after that bar date on January 31st.[35]

## F.    ELK PLAZA'S ARGUMENT AT THE HEARING ON THE CONTESTED MATTER.

At the hearing, Elk Plaza argued that Elk Plaza's Administrative Claim was timely filed because it filed the Proof of Claim before the Administrative Claims Bar Date.    Elk Plaza relied on *In re Sage Richmond, L.L.C.*, 285 B.R. 364, 365–66 (Bankr. E.D. Va. 2002) to support its proposition that a creditor may characterize a proof of claim as a request for an administrative-expense claim.    Further, Elk Plaza argued that the Application filed after the Administrative Claims Bar Date should be deemed to relate back to the Proof of Claim filed before the Administrative Claims Bar Date.    Elk Plaza did not argue that it did not receive notice.    It also did not argue that the Court should accept its late-filed request for payment on its Administrative Claim where the failure to timely act was the result of excusable neglect.    *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).

The Reorganized Debtors contended that the Court should sustain the Objection and deny the Application because Elk Plaza received notice on numerous occasions of the Administrative Claims Bar Date, Elk Plaza filed the Application requesting payment of the Administrative Claim after that bar date on January 31st, and no "cause" existed to permit Elk Plaza to tardily file the Application.    The Reorganized Debtors also argued that a proof of claim is not a request for

---

[35]    *See* Objection ¶ 2, at 2;    *see also id.* ¶¶ 16–21, at 6–8.

payment of an administrative claim. For that proposition, the Reorganized Debtors relied on the instructions in the Proof of Claim that a creditor "[d]o[es] not use this form to make a request for payment of an administrative expense."[36] The Reorganized Debtors also relied upon *In re Jack Kline Co*., 440 B.R. 712, 734–735 (Bankr. S.D. Tex. 2010) and *NL Industries, Inc.* v. *GHR Energy Corp*., 940 F.2d 957, 966 (5th Cir. 1991) to support the proposition that a party must timely file a request for payment of an administrative expense by filing a separate application under § 503(a), which is not done by timely filing a proof of claim even if the creditor explicitly labels the proof of claim as an administrative expense.

## III.
## CONCLUSIONS OF LAW

### A. ELK PLAZA DID NOT TIMELY FILE ITS APPLICATION REQUESTING ALLOWANCE AND PAYMENT OF THE ADMINISTRATIVE EXPENSES.

The first issue the Court must address is whether Elk Plaza timely filed the Application by the Administrative Claims Bar Date. If all other requirement of the statute are met, § 507(b) grants super-priority status to claims otherwise allowable as an administrative expense under § 507(a)(2). *In re Bailey Tool & Mfg. Co*., No. 16-30503-BJH, 2018 WL 550581, at *5 (Bankr. N.D. Tex. Jan. 23, 2018). Section 507(a)(2), in turn, requires that the claim be allowed as an administrative expense under § 503(b). *Id*. For allowance of administrative expenses, § 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). Generally, the administrative expenses allowable under § 503(b) are the "actual, necessary costs and expenses of preserving the estate . . . ." *Id*. § 503(b)(1)(A). This provision requires the actual use of the creditor's property by the debtor or trustee that confers a concrete benefit to the

---

[36] Proof of Claim at 1 (emphasis omitted).

estate. *Bailey Tool & Mfg. Co.*, 2018 WL 550581, at *5 (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865–66 (4th Cir. 1994)). Section 1141(a), however, provides that the provisions of a confirmed plan bind the debtor and any creditor. *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170–71 (5th Cir. 1992).

The confirmed Plan in these Chapter 11 Cases expressly required the filing of an application within a limited period of time, and Elk Plaza failed to do so within that period. Under the Plan, the Confirmation Order, and the Notice of Plan Confirmation and Effective Date, the Court set the Administrative Claims Bar Date as January 31, 2019. Elk Plaza did not file a request for payment of an administrative claim by January 31st. Instead, Elk Plaza filed the Application on May 1st—approximately three months after the deadline. Thus, this Court concludes Elk Plaza did not timely file a request for payment of an administrative expense.

Based on the foregoing, the Court concludes that Elk Plaza's Application is untimely. Thus, unless the Court permits the tardily filed Application for "cause," Elk Plaza's request for payment of its Administrative Claim is barred and cannot be allowed. *See* 11 U.S.C. § 503(a).

## B. ELK PLAZA'S PROOF OF CLAIM DOES NOT CURE ITS UNTIMELY APPLICATION.

Having determined that Elk Plaza did not timely file the Application, the Court now makes its substantive conclusions and ruling. Specifically, the first issue is whether a creditor may file a request for allowance and payment on an administrative-expense claim by filing a proof of claim stating that part of the claim within constitutes an administrative-expense claim. The second issue is whether a creditor that timely files a proof of claim may tardily file a request for payment on the administrative claim without any evidence supporting a finding of "cause." The answer to both issues is no.

1. **Elk Plaza's Proof of Claim Was Not a Timely § 503(b) Application for Allowance and Payment of an Administrative Expense.**

The Court concludes that Elk Plaza filing the Proof of Claim containing a request for payment of an administrative expense was not and does not constitute an application for allowance and payment of an administrative-expense claim. Thus, Elk Plaza filing the Proof of Claim does not support a finding that the Application containing the Administrative Claim is timely.

The way for a creditor to make a request on an administrative claim is to file an application requesting allowance and payment of an administrative-expense claim in the court's docket. But a creditor filing a proof of claim containing an administrative expense in the court's claims register is not and cannot constitute a request for allowance and payment on an administrative claim. Filing a proof of claim containing an administrative expense request is simply insufficient for a creditor to satisfy its obligation under § 503(a) to timely file and serve a request for payment of an administrative claim by an Administrative Claims Bar Date.

Elk Plaza argues that the Proof of Claim, characterizing part of that claim as a post-petition administrative claim, indeed constitutes a request for payment under the first clause of § 503(a) or *at least* should support a finding of "cause" to allow the tardily filed Application under the second clause of § 503(a). Elk Plaza relies upon *In re Sage Richmond, L.L.C.*, 285 B.R. 364, 365–66 (Bankr. E.D. Va. 2002) in support of its propositions.

In *Sage Richmond*, the bankruptcy court overruled an objection by the designated disbursing agent to a proof of claim filed by The Fire and Casualty Insurance Company of Connecticut ("FIC"). *Id.* at 364. The debtor Sage Richmond filed a chapter 11 case with the confirmed plan designating Robert W. Hansen as the disbursing agent to analyze and object to proofs of claim. *Id.* at 364–65. The bankruptcy court set January 3, 2000 as the deadline to file proofs of claim on September 5, 1999. *Id.* at 365. Notice of the bar date was sent to FIC. *Id.*

Approximately three months after the bar date, FIC filed a proof of claim in the amount of $18,096 for post-petition workers' compensation premiums and asserted that it was entitled to treatment as an administrative claim under 11 U.S.C. §§ 503(b) and 507(a). *Id.* On January 24, 2001, the court then set the deadline for filing requests for payment of administrative claims as February 16, 2001. *Id.*

Similar to this contested matter, FIC argued that its administrative claim was timely because its proof of claim described it as a post-petition administrative expense and that it filed the proof of claim on April 26, 2000 well before deadline on administrative claims set as February 16, 2001. *Id.* Also somewhat similar, the disbursing agent argued that the claim should be disallowed as untimely because it was filed as a proof of claim, requests for administrative claims have different procedures, and FIC failed to timely amend the claim to the proper type of request. *Id.* The bankruptcy court agreed with the disbursing agent that a proof of claim is not a proper request for administrative claims because "[a]n 'application for payment filed under section 503(a) is all that is required.' " *Id.* (quoting 4 COLLIER ON BANKRUPTCY ¶ 503.02 [1] (Lawrence P. King ed., 15th ed. rev. vol. 2001)). However, the bankruptcy court noted that while there was "little case authority on the issue raised," that "there is some authority for the court to allow a creditor to characterize a proof of claim as a request for administrative expense." *Id.* (citing 4 COLLIER ON BANKRUPTCY ¶ 503.02[1][a]).[37]

The *Sage Richmond* court concluded that FIC's administrative claim would be allowed. *Id.* at 365–66. The first basis for the court's conclusion implies without expressly stating that the

---

[37] "The prudent practice, however, for a creditor unsure of the status of its claim is to timely file both a proof of claim and a separate request for payment of an administrative expense or to caption a single document in the alternative as a proof of claim or request for payment." 4 COLLIER ON BANKRUPTCY ¶ 503.02[1][a] (Lawrence P. King ed., 15th rev. ed. 2000), *quoted in In re FAMCO, Inc.*, No. 99-51952C-11W, 2001 WL 1700023, at *2 n.4 (Bankr. M.D.N.C. Apr. 2, 2001).

request for payment on the administrative claim was timely because its proof of claim "was plainly labeled as a post-petition administrative expense." *Id*. The second basis for the court's conclusion was that "[m]oreover, even if FIC's request is 'tardily' filed, the court may allow it for cause under § 503(a)" and analogized to a creditor timely submitting an informal proof of claim but untimely filing it. *Id*. Thus, the court held that FIC's claim would be allowed as "a request for allowance of administrative expense" noting that "the disbursing agent's position makes too much of the form of the claim." *Id*. at 366.

In response to Elk Plaza's arguments, the Reorganized Debtor argues that the Proof of Claim cannot be characterized as a timely request for payment of an administrative expense under the first clause of § 503(a) because a proof of claim only includes pre-petition amounts as also reflected on the Official Form 410. To support this proposition, the Reorganized Debtor relied upon *In re Jack Kline Co*., 440 B.R. 712, 734–735 (Bankr. S.D. Tex. 2010) and *NL Industries, Inc.* v. *GHR Energy Corp*., 940 F.2d 957, 966 (5th Cir. 1991). In *NL Industries, Inc*., the Fifth Circuit decided a similar issue based on facts in a chapter 11 case comparable to those in this contested matter and in *Sage Richmond*. *See NL Indus., Inc.*, 940 F.2d at 963. The Fifth Circuit concluded that where a creditor seeks to recover an administrative expense from the debtor's estate, the creditor "should have requested 'payment of an administrative expense' under section 503(a) of the Bankruptcy Code, rather than filing a proof of claim under section 501." *Id*. at 966.

In *Jack Kline Co.*, the Bankruptcy Court in the Southern District of Texas held that "a creditor has an obligation to affirmatively request its post-petition interest by filing a § 506(b) application." *Jack Kline Co*., 440 B.R. at 734. The court provided several rationales for this holding. *See id*. at 733–78. First, the court relied on the fact that "from a due process standpoint, this obligation ensures proper notice to the debtor, the trustee, the other creditors, and

the court to test whether the creditor is, in fact, over-secured, to establish the extent of the over-securedness, and to determine the proper rate of post-petition interest to be applied." *Id*. The court then explained that "[m]erely referencing post-petition interest in a proof of claim outside a § 506 application is insufficient to entitle an over-secured creditor to collect post-petition interest" and that such creditors will "only receive what they expressly request . . . in an application filed under § 506(b)." *Id*.

Second, the *Jack Kline* court—relying on the plain-meaning doctrine—concluded that "a proof of claim includes only pre-petition amounts because those are the words set forth in Official Form 10." *Id*. at 734–35 (citing *In re Endeavour Highrise L.P.*, 425 B.R. 402, 419 (Bankr. S.D. Tex. 2010)). The court expounded on this rationale by noting that "Forms govern procedure in cases under title 11 of the United States Code." FED. R. BANKR. P. 1001, *quoted in Jack Kline Co.*, 440 B.R. at 735 n.22. The court also found the Fifth Circuit's conclusion in *NL Industries* persuasive for post-petition interest and disagreed with Collier's distinction on characterizing a proof of claim to include post-petition amounts because "the Fifth Circuit has found that administrative expenses, which are post-petition claims, may not be requested by merely filing a proof of claim." *Id*. at 735 & n.23. In passing, the court noted that Congress also allowed two types of post-petition claims to be included in a proof of claim against a debtor in Chapter 13 cases under § 1305, but that Congress omitting that language in §§ 501 and 502 "evidenced an intent to exclude post-petition claims in a proof of claim under § 501." *Id*. at 735 n.21.

Third, the court reasoned that § 506(b) places the burden of proof on the creditor and requires a court to determine that the creditor is over-secured. *Id*. at 735–36. The court stated that over-secured creditors "ultimately bear" the burden that their claim is over secured. *Id*. at 736 (citing *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans, Ltd.*

*P'ship*), 116 F.3d 790, 798 (5th Cir. 1997)). Requiring a § 506(b) application "allows a court to consider a creditor's over-secured status by motion pursuant to Rule 3012." *Id.* Further, the court reasoned that a § 506(b) application "properly places the burden on the creditor to file in accordance with who bears the ultimate burden of proof." *Id.* (citing *T-H New Orleans, Ltd. P'ship*, 116 F.3d at 798). In contrast, the court stated that "a proof of claim is prima facie evidence of the debt owed"—placing the burden on the party challenging the claim to object and overcome the presumption of validity. *See id.* at 735–37. To ensure the burden of proof on the proper party and to ensure the court ultimately determines the validity of the claim, the court reasoned that a § 506(b) application accomplishes those requirements. *See id.* at 735–37.

Finally, the *Jack Kline* court reasoned that requiring an application is a good public policy. *Id.* at 737. The court indicated that an application "ensures that the bankruptcy court will have an opportunity to pass judgment on the rate of post-petition interest charged to the estate and prevent any excessive charging that is inequitable to lower tier creditors." *Id.* at 737. The court reasoned that an application prevents creditors from "bury[ing] post-petition interest rates in their proofs of claim." *Id.* Further, the court added that an application allows a court to balance the equities after holding a hearing, which "is necessary to fulfill the Fifth Circuit's holding in *Laymon.*" *Id.* (citing *Bradford v. Crozier* (*In re Laymon*), 958 F.2d 72, 75 (5th Cir. 2010)). For these reasons, the court concluded that the creditor was not entitled to recover on the post-petition interest because it filed a proof of claim—rather, the creditor had to file a § 506 application. *Id.* at 738.

The Court believes that the reasoning in *Jack Kline* has some relevance and appeal in this situation.[38] While *Jack Kline* dealt with a bankruptcy case under Chapter 7 instead of a Chapter

---

[38] Transcript Ruling Elk Plaza's Application at 3:22 to 4:4:1 (filed Aug. 16, 2019), ECF No. 385.

11 like this contested matter, the Court does not believe that this fact makes any material difference.

First, the national Official Form 410 for all proofs of claim, by its own instructions, states that this form does not apply to administrative-expense claims and only deals with pre-petition amounts.[39]   The Official Form 410 for proofs of claim provides "[r]**ead the instructions before filling out this form**."[40]   Further, the Official Form 410 then provides the conspicuous warning to "**not use this form to make a request for payment of an administrative expense**" and an affirmative directive to "[m]**ake such a request according to 11 U.S.C. § 503**."[41]   All of these instructions are right there at the very top of the Official Form 410, right underneath the title, and in conspicuously bold font.[42]   The Court is persuaded that these instructions cannot be ignored by creditors—especially, as is the case here, where an attorney acting for Elk Plaza disregarded these instructions and purported to put a $10,600 administrative-expense claim in an attachment to the Proof of Claim.[43]

Second, while at risk of stating the obvious, a proof of claim only deals with pre-petition claims of a creditor.[44]   As indicated in *Jack Kline*, "[t]he Fifth Circuit requires an application for post-petition administrative claims."   *Jack Kline Co*., 440 B.R. at 732 (citing *NL Indus., Inc.*, 940 F.2d at 966).   Requiring a § 503(b) application for post-petition administrative expenses is congruent with the Fifth Circuit's ruling in *NL Industries*.

---

[39]   *Id*. at 3:8–21.

[40]   *Id*.;   Proof of Claim at 1.

[41]   Transcript Ruling Elk Plaza's Application at 3:8–21;   Proof of Claim at 1.

[42]   Transcript Ruling Elk Plaza's Application at 3:8–21.

[43]   *Id*. at 3:17–21.

[44]   *Id*. at 4:4–5.

Third, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure also provide that a proof of claim has *prima facie* validity.[45] By completing the Official Form 410 and properly filing such claim, such proof of claim is deemed to be an allowed claim unless the debtor or another objects.[46] A proof of claim thus shifts the burden to the Reorganized Debtor or objector to prove why the claim asserted is not something that the Court should allow.[47] However, Congress made the rules and burdens for an administrative-expense claim very different from those for a proof of claim.[48] Section 503 governs an administrative-expense claim.[49] Under § 503, the burden at the beginning is on the claimant to show reasonableness, necessity, and benefit to the estate.[50] The Bankruptcy Code and the Bankruptcy Rules put a claimant in a completely different posture for an administrative-expense claim compared to a proof of claim.[51] Requiring that a § 503 administrative expense be in an application also ensures that the bankruptcy court will have an opportunity to pass judgment on the administrative expense and prevent any unreasonable, unnecessary, and non-beneficial claims from being charged to the estate.

---

[45] *Id*. at 4:6–7.

[46] *Id*. at 4:7–9.

[47] *Id*. at 4:9–11.

[48] *Id*. at 4:12–14.

[49] *Id*. at 4:14.

[50] *Id*. at 4:14–16. In bankruptcy, administrative expenses—such as the "actual and necessary costs and expenses of preserving the estate"—are given priority over other non-secured claims in the distribution of the estate. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001). "In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefi[t]ed the estate." *Id.* (citing *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992)). Such claims "generally stem from voluntary transactions with third parties who lend goods or services necessary to the successful reorganization of the debtor's estate." *Id.* "Crucial to satisfying the § 503 test is that the estate receive a 'discernible benefit' as a result of the expenditure." *In re ASARCO LLC*, 441 B.R. 813, 824 (S.D. Tex. 2010) (quoting *Jack/Wade Drilling*, 258 F.3d at 387), *aff'd*, 650 F.3d 593 (5th Cir. 2011).

[51] Transcript Ruling Elk Plaza's Application at 4:16–17.

Creditors, like Elk Plaza, ultimately bear the burden of persuasion and production to establish that their claims are in fact an administrative expense.    Allowing creditors to satisfy their burden of production by burying an administrative expense in a proof of claim circumvents their statutory burdens.    Allowing creditors to then indirectly satisfy their burden of persuasion—by preventing the Court from having an opportunity to rule on the nature of the administrative expense and forcing the trustee or some other interest-party to affirmatively raise this administrative expense as objectionable—directly contradicts § 503(b)'s express requirement for allowance of an administrative expense "[a]fter notice and a hearing."

Fourth, debtors and reorganized debtors have a keen interest in obtaining finality sooner rather than later with regard to administrative-expense claims.[52]    The reason debtors have an interest in such finality derives from the special treatment afforded to administrative expenses.[53] An administrative-expense claimant is generally entitled to cash in full on the effective date of a plan.[54]    It is a very important event in the bankruptcy case for the debtor and reorganized debtor to have a deadline for administrative-expense claims[55] because administrative claims pose a significant feasibility issue for plans.[56]    Most business entities—such as large retail businesses and restaurant retail business like Taco Bueno in these Chapter 11 Cases—have many vendors and many landlords.[57]    The debtor and reorganized debtor need to be able to ascertain an amount such entities must have in cash due to pay administrative expenses and must ensure the availability of

---

[52]    *Id.* at 4:18–20.

[53]    *Id.* at 4:18–21.

[54]    *Id.* at 4:21–22.

[55]    *Id.* at 4:23 to 5:2.

[56]    *Id.* at 5:4.

[57]    *Id.* at 4:23–25.

an amount in cash to pay existing creditors on the effective date of the plan or soon thereafter.[58]

By having a different place on the docket than proofs of claim, companies may quickly look at a

docket from the time of the effective date until after the administrative claims bar date, find those

requests for payment of administrative-expense claims, and ascertain their potential administrative

exposure.[59]

Prejudice would befall debtors if the Court were to find that filing a proof of claim on the

claims register is sufficient to constitute a request for an administrative expense.[60]   Here, the

Reorganized Debtor was entitled to look at the court's ***docket*** (not the claims register) and see

what administrative-expense claims had been filed thereon as of January 31, 2019, and know "here

is our universe of potential expenses that have to be paid in cash in full."[61]   Because Elk Plaza

did not file the Application by the deadline, Elk Plaza's Proof of Claim containing a request for

payment of an administrative expense was not and does not make the Application timely.   Elk

Plaza's Proof of Claim also was not and does not constitute a § 503(b) application for allowance

and payment of an administrative-expense claim.

Thus, the Court concludes that Elk Plaza's Proof of Claim characterizing part of that claim

as a post-petition administrative claim does not constitute a request for payment under the first

clause of § 503(a).   Further, the Court concludes that Elk Plaza's Proof of Claim being timely

filed is insufficient on its own to support a finding of "cause" to allow Elk Plaza to tardily file the

Application under the second clause of § 503(a).

---

[58]   *Id*. at 5:1–4.

[59]   *Id*. at 5:7–12.

[60]   *Id*. at 5:13.

[61]   *Id*. at 5:15–19.

## 2. Elk Plaza Failed to Establish Cause Under § 503(a) for the Court to Allow Payment of the Tardily Filed Application.

The Court concludes that Elk Plaza failed to establish "cause" for the tardily-filed Application requesting payment on its Administrative Claim. Elk Plaza cannot establish "cause" without presenting the Court with sufficient evidence to overcome the undisputed record in this contested matter.

First, the Court finds that the fact "that there were no notice problems here"[62] defeats any equitable argument that Elk Plaza might have raised.[63] In fact, the Court relies on the record that Elk Plaza does not dispute that the Debtor sent approximately ten notices to Elk Plaza regarding the relevant deadlines, including many notices about the January 31, 2019 deadline as the Administrative Claims Bar Date.[64] Amongst other things, Elk Plaza received several notices of the January 31st deadline in Article II.A. of the Plan and in the Confirmation Order confirming that Plan.[65] The Debtor, through its noticing agent Prime Clerk, provided service of those pleadings containing notice of the Administrative Claims Bar Date.[66]

Thereafter, the record proves that Elk Plaza received notice of the January 31st deadline being the specific date for the Administrative Claims Bar Date.[67] In the Notice of Plan Confirmation and Effective Date, the Debtors expressly provided notice about the occurrence of

---

[62]   *Id*. at 2:8–9.

[63]   *See id*. at 3:4–7.

[64]   *Id*. at 2:9–13.

[65]   Id. at 2:13–15.

[66]   *Id*. at 2:15–16;   *see, e.g*., Ex. A to Aff. Serv. at 5 (Dec. 21, 2018), ECF No. 249;   Cert. Not. at 131, 303 (Dec. 22, 2018), ECF No. 253;   Ex. A to Aff. Serv. at 4 (Dec. 26, 2018), ECF No. 257.

[67]   *Id*. at 2:16–20.

the Effective Date on December 31, 2018 and the January 31st deadline.[68] Elk Plaza also received the Notice of the Plan Confirmation and Effective Date through several different methods and directly through counsel and to Elk Plaza. The Debtor provided plenty of notice that signaled to the world that January 31, 2019 was the deadline and the bar date for creditors to file requests for payment on administrative-expense claims.[69] Thus, an extension of time based on lack of notice is not warranted.

Second, Elk Plaza also failed to demonstrate that cause existed because there are no equitable arguments that it was an unsophisticated party that might not have appreciated the content of the notices. A significant fact defeating any equitable argument is that Elk Plaza had an attorney involved here at all relevant times.[70] Michael A. Bickford at Fuller Tubb & Bickford, PLLC filed the Notice of Appearance on behalf of Elk Plaza on December 5, 2018.[71] On behalf of Elk Plaza, Mr. Bickford filed the Proof of Claim at issue in this contested matter.[72]

Prior to hearing the arguments on the contested matter, the Court was unsure about the arguments that Elk Plaza would raise.[73] The Court was unsure if Elk Plaza would argue lack of notice.[74] That was not the case.[75] The Court was also not sure whether Elk Plaza would argue

---

[68] *Id.* at 2:16–20; *see, e.g.*, Notice of Effective Date at 1–2, ECF. No. 264; BNC at 131 (Dec. 22, 2018), ECF No. 253; Ex. A to Aff. Serv. at 4 (Jan. 8, 2019), ECF No. 270; Ex. B to Aff. Serv. at 101.

[69] Transcript Ruling Elk Plaza's Application at 2:21–24.

[70] *Id.* at 2:25 to 3:4.

[71] *Id.* at 3:1–3. Subsequently, Applicant, by and through its counsel James N. Richard at Ferguson & Associates, LLC, filed a second *Notice of Appearance and Request for Service of Papers* [ECF No. 360] on May 1, 2019.

[72] Transcript Ruling Elk Plaza's Application at 3:3–4; *see, e.g.*, Proof of Claim at 1, 3 (Jan. 18, 2019), Claim No. 36-1; Ex. A to *id.* at 4.

[73] *Id.* at 6:2–3.

[74] *Id.* at 6:3–5.

[75] *Id.* at 6:2–6.

that its failure to timely act was the result of excusable neglect.    *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).[76]    In *Pioneer Investment*, the Supreme Court provided a multi-factor test to potentially excuse a claimant for a late-filed proof of claim if such claimant shows by evidence the list of factors establishing excusable neglect.[77]    However, Elk Plaza made no argument of excusable neglect and did not address any of the factors from *Pioneer Investment*.[78]

Because Elk Plaza failed to demonstrate any potential "cause" for the tardily-filed Application requesting payment on its Administrative Claim under the second clause of § 503(a), the Court concludes that § 503(a) and the confirmed Plan bar the Application.

## IV.
## CONCLUSION

Based on the foregoing, the Court sustains the Reorganized Debtors' Objection to Elk Plaza's Application, disallows the Administrative Claim, and deems the Administrative Claim fully discharged as of the Effective Date.    **THEREFORE**:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Court incorporates by reference the above-referenced findings of fact and conclusions of law as though fully set forth herein and that, to the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such;

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Court hereby **SUSTAINS** the Objection of the Reorganized Debtors and that the Administrative Claim in the alleged amount of either $8,600.00 or $10,600 is barred as tardily filed in the Application;

---

[76]    *Id*. at 6:5–6.

[77]    *Id*. at 6:10–13.

[78]    *Id*. at 6:14–17.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Court hereby **DENIES** the Application of Elk Plaza.

**IT IS SO ORDERED.**

#   #   #   **END OF ORDER**   #   #   #

Respectfully submitted,

By: /s/ *Peter C. Lewis*
    Peter C. Lewis
    Texas State Bar No. 12302100
    Christian Cowart
    Texas State Bar No. 24105748
    SCHEEF & STONE, L.L.P.
    500 N. Akard, Suite 2700
    Dallas, Texas 75201
    (214) 706-4200 Phone
    (214) 706-4242 Fax
    peter.lewis@solidcounsel.com

    ATTORNEYS FOR
    REORGANIZED DEBTORS